Charles L. Howard (admitted *pro hac vice*)
KEENAN COHEN & HOWARD P.C.
One Pitcairn Place
165 Township Line Rd.
Jenkintown, PA 19046
(215) 609-1110

*Attorneys for Defendant*
*Yang Ming Marine Transport Corporationi*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, and SOMPO JAPAN INSURANCE, INC. | **NO.: 07 CIV. 11276** |
| *Plaintiffs,* | JUDGE CHIN |
| - against - | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION, PURSUANT TO FED. R. CIV. 12(b)(3) and (6), TO DISMISS COUNTS ONE, THREE, FOUR, FIVE, SEVEN, EIGHT, NINE, ELEVEN AND TWELVE OF PLAINTIFFS' COMPLAINT** |
| YANG MING MARINE TRANSPORT CORPORATION | |
| *Defendant.* | |

Defendant, Yang Ming Transport Corporation ("Yang Ming") hereby respectfully submits this memorandum of law in support of its Motion to Dismiss nine of the twelve counts pled by plaintiffs, Sompo Japan Insurance Company of America and Sompo Japan Insurance Inc. ("Plaintiffs") against it.

## INTRODUCTION

Plaintiffs have filed a twelve-count complaint against Yang Ming asserting claims for damage to three shipments of freight which allegedly resulted from a rail derailment which occurred on April 18, 2006. For each of the three shipments, Plaintiffs seek damages based on

(1) remedies available under 49 U.S.C. § 11706, (Counts One, Five, and Nine; "the Carmack Claims")[1], (2) common law negligence (Counts Three, Seven and Eleven; "the Negligence Claims"), and (3) common law breach of bailment (Counts Four, Eight and Twelve; "the Bailment Claims").

In a separate action ("the Related Case"), plaintiffs have asserted claims based on the Carmack Amendment, negligence and breach of bailment against three different entities, two of which are Class I railroads, seeking damages for the same freight at issue in the instant case as a result of the same derailment.[2]  The two defendants in the Related Case which operate railroads are the Norfolk Southern Railway Company ("NSRC") and the Kansas City Southern Railway Company ("KCS").

In this case, Plaintiffs have alleged that Yang Ming was the "delivering rail carrier" of the freight.  In the Related Case, Plaintiffs have alleged that NSRC was the "delivering rail carrier" of the freight.  It is factually and legally impossible for both NSRC and Yang Ming to be the delivering carriers of the same freight and, therefore, Plaintiffs' Carmack Claims must be dismissed.

It is well-settled that claims brought pursuant to the Carmack Amendment or to COGSA preempt claims based on common law remedies such as negligence or breach of contract. Accordingly, both the Negligence Claims and the Bailment Claims must be dismissed on preemption grounds.

---

[1]     Defendant assumes that plaintiffs' reference to 49 U.S.C. § 14706, which provides remedies for freight loss and damage caused by motor carriers, and which appears in paragraph one of their Complaint, was in error.

[2]     The Related Case is captioned as *Sompo Japan Ins. Co. of America, et al. v. Norfolk Southern Railway Company, et al.*, Civil Action No. 07-cv-2735(DC).

## STATEMENT OF FACTS

The following facts are undisputed and contained within the pleadings, or in documents incorporated by reference in the pleadings, or are matters of which this Court may take judicial notice: [3]

1.    The claims which at issue in this case as well as in the case captioned and docketed as *Sompo Japan Ins. Co. of America, et al., v. Norfolk Southern Railway Company, et al.*, U.S.D.C. for the S.D.N.Y., 07 Civ. 2735 ("the Related Case"), are the same.  *See Statement of Relatedness* submitted in this case, attached as Exhibit A to the Declaration of Charles L. Howard ("Howard Decl.") submitted herewith.

2.    Both this case and the Related Case involve the same plaintiffs and freight, which was allegedly damaged as a result of a train derailment which occurred in Texas.  *Id.*

3.    In both this case and the Related Case, Plaintiffs base their claims on various causes of action including, but not limited to remedies available pursuant to 49 U.S.C. § 11706 ("the Carmack Amendment").

4.    The Carmack Amendment imposes liability for the actual loss or injury to property which is caused by

> (1) the receiving rail carrier;
> (2) the delivering rail carrier; or
> (3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading.

---

[3]    When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a Court may only consider facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the court may take judicial notice.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 – 1018 (5th Cir. 1996); *see also Cortec Indus. Inc., v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)(if plaintiff's claims are predicated on a document, defendant may attach document to Fed. R. Civ. P. 12(b)(6) motion even if plaintiff's complaint does not explicitly refer to it); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992), cert. denied, 506 U.S. 821 (1992) (supporting affirmative defense of res judicata, court considered previously dismissed complaint whose dismissal was affirmed on appeal).

49 U.S.C. § 11706 (a)(1) – (3).

5.      The Carmack Amendment defines a "delivering rail carrier" as "the rail carrier performing the line-haul transportation nearest the destination but does not include a rail carrier providing only a switching service at the destination."  *Id.*

6.      In the Complaint filed by the plaintiffs in the Related Case, plaintiffs alleged, and defendants admitted that the Norfolk Southern Railway Company ("NSRC") was the delivering rail carrier for the freight at issue.  Complaint filed and Answer thereto in Related Case at ¶ 4; relevant excerpts from which are attached as Exhibit B to the Howard Decl.

7.      In response to a motion to transfer venue, which the defendants filed in the Related Case, the plaintiffs argued that venue was proper in the Southern District of New York because NSRC was the delivering rail carrier, and the Carmack Amendment provides for venue in any judicial district in which the delivering carrier operates a rail line.  Plaintiffs' response to motion to transfer venue in Related Case at 6; relevant excerpts from which are attached hereto as Exhibit C to Howard Decl.; *see also* 49 U.S.C. § 11706(d)(2)(ii).

8.      In this case, Plaintiffs allege that Yang Ming was the "delivering rail carrier." Complaint at ¶ 4.

9.      In addition to their Carmack Claims, plaintiffs have also asserted claims based on negligence ("the Negligence Claims") and on breach of bailment ("the Bailment Claims"). Complaint at Counts Three, Four, Seven, Eight, Eleven and Twelve.

## ARGUMENT

**I.     Standard for Considering a Motion To Dismiss for Failure to State a Claim Upon Which Relief can be Granted.**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.), *cert. denied*, 498 U.S. 867, 111 S. Ct. 182, 112 L. Ed. 2d 145 (1990). A Complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L.Ed.2d 80 (1957)). A judge may not grant a motion to dismiss pursuant to Federal Civil Rule 12(b)(6) based on a disbelief of a Complaint's factual allegations. *Id*.

While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Id*. (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S. Ct. 1758, 84 L. Ed. 2d 821 (1985) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. 1981)). However, "the court does not give the presumption of truthfulness to any legal conclusions, opinions, or deductions, even if they are couched as factual allegations." *Sexton v. Barry*, 233 F.2d 220, 223, 75 Ohio Law Abs. 71 (6th Cir. 1956); *Western Mining Council v. Watt*, 643 F.2d 618, 629 (9th Cir. 1980); *Mitchell v. Archibald & Kendall, Inc.*, 573 F.2d 429, 432 (7th Cir. 1978).

"A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the Complaint.  However, a court may consider matters of public record, orders, exhibits attached to the Complaint and items appearing in the record of the case without converting a Rule 12(b)(6) motion into a motion for summary judgment."  *Calabria v. Newmar Corp., et al.,* 1999 U.S. Dist. LEXIS 1933, No. 98-4026, *2 - 3 (May 27, 2005, E.D.Pa.), *citing Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n. 2 (3d Cir. 1994); *see* note 3, *supra*.

## II.  Plaintiffs Have Not Identified an Entity Which Would Be Liable for Plaintiffs' Damage Under the Carmack Amendment.

The Carmack Amendment imposes liability for loss and damage to freight which has been transported *via* rail on a "receiving rail carrier," a "delivering rail carrier", or on a rail carrier on whose line the subject freight was transported under a through bill of lading.  Plaintiffs have alleged that Yang Ming is liable under Carmack because it was the "delivering rail carrier." As discussed more fully below, Yang Ming was not the delivering rail carrier for the freight at issue, nor was it a "rail carrier" for any purpose which would subject it to Carmack-based liability.

### A.  The "delivering carrier" of the freight at issue has already been judicially determined, and it is not Yang Ming.

The railroad defendants in the Related Case moved to transfer that case on the ground that a more convenient forum existed in the Northern District of Georgia.  The railroad defendants did, however, acknowledge that venue of that action was proper in this Court because NSRC was the "delivering carrier" of the freight and operates a rail line in this judicial district, thus satisfying the requirements of 49 § 11706(a)(2).  Plaintiffs similarly argued that section 11706(a)(2) applied.  This Court denied the railroad defendants' motion to transfer venue in the Related Case.  Transcript of Hearing on Motion to Transfer ("Tr."), at 1 – 20, pertinent excerpts

of which are attached as Exhibit D to Howard Decl.  Implicit in the Court's denial of the motion to transfer is a "finding" that NSRC was the delivering rail carrier of the freight at issue in that case.  *See* Tr. At 20: 5 – 8.  In fact, absent such a "finding", whether implicit or express, there is no basis for venue in this Court for plaintiffs' Carmack claims in the Related Case.  *See* 49 U.S.C. § 11706(d)(2)(A).  As discussed above, this Court may take judicial notice of the admissions and findings in prior judicial proceedings when deciding a motion to dismiss pursuant to Rule 12(b)(6) without converting the motion to a Rule 56 motion.

Since the claims, freight, and the plaintiffs are the same in this case as they are in the Related Case, and since it has been judicially determined – both by admission and by implication – that NSRC was the delivering rail carrier of the freight at issue, plaintiffs should be estopped from pursuing the same Carmack-based claim against Yang Ming on the specious ground that Yang Ming was the "delivering rail carrier."  Unless and until plaintiffs can allege that Yang Ming was either the "receiving rail carrier" or "another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading", *see* 49 U.S.C. § 11706(a)(1) & (3)*, plaintiffs are without a Carmack remedy.  Accordingly, plaintiffs' Carmack claims must be dismissed.

**B.      Yang Ming did not provide the line-haul transportation nearest the intended destination, nor did it ever receive actual or constructive possession of the freight at issue for delivery to the consignee.**

It is clear from the statute that whether or not a rail carrier is the "delivering rail carrier" is determined by whether or not that rail carrier performs a service which is specifically identified in the statute, i.e., "the line-haul transportation nearest the destination…".  49 U.S.C. § 11706(a)(3).  In the Related Case, both parties produced copies of the rail bills of lading which

governed the rail segment of the shipments. Every one of those bills of lading identifies NSRC as the destination, or "delivering" rail carrier.[4] As discussed above, this Court may take judicial notice of documents such as exhibits attached to pleadings submitted in prior judicial proceedings when deciding a motion to dismiss pursuant to Rule 12(b)(6) without converting the motion to a Rule 56 motion.

Moreover, it is well-settled that "under the Carmack Amendment the delivering carrier is one who receives actual or constructive possession of a shipment in Interstate commerce for delivery to the consignee…". *Riss & Company v. U.S.A.,* 213 F. Supp. 791, 798 (W.D. Mo. 1962). The *Riss* case is instructive in that it involves facts which are substantially similar to what occurred in the instant case. In *Riss*, the defendant did nothing more than arrange for the transportation of the subject freight and supply an intermodal container in which the freight was loaded and transported. *Id.*, at 795. A motor carrier, which was not a party to the lawsuit, performed the initial transportation of the freight, moving it from origin to a rail yard. There, the container was loaded onto a train for transport to its intended destination. Shortly thereafter, the contents of the container were totally destroyed as a result of a train wreck. *Id.,* at 795. The court found that the defendant never had either actual or constructive possession of the freight. id., at 797, and, therefore concluded, as a matter of law, that the defendant was not the delivering carrier under the Carmack Amendment. *Id.,* at 798.

In the instant case, all of the bills of lading which governed the shipment of the subject freight identify various locations in Georgia as the ultimate destination. None of the bills of lading, however, identify Yang Ming as the rail carrier with the responsibility for delivering the

---

[4]    *See* Declaration of Thomas M. Eagan in Support of Plaintiffs' Motion for Partial Summary Judgment ("Eagan Decl."), filed in the Related Case, at ¶12 and Exhibit 12 thereto, and Declaration of Charles L. Howard in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, filed in the Related Case, at ¶ 1 and Exhibit A thereto.

freight to those destinations.   To the contrary, and as discussed above, all of the rail bills of lading identify NSRC as the rail carrier with that responsibility.

There is simply no basis in either fact or law on which to conclude that Yang Ming was the delivering rail carrier.  Accordingly, plaintiffs' Carmack claims must be dismissed.

**III.    Plaintiffs Cannot Establish Proper Venue in This Judicial District Under the Carmack Amendment and, Therefore, This Court Must Dismiss Counts I, V, and IX of the Complaint.**

In the unlikely event that Plaintiffs' Carmack claims survive Defendants' 12(b)(6) motion set forth in Section II, *supra*, then those claims must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(3), on the ground that venue is improper in this judicial district.

The Carmack Amendment contains a special venue provision, which is set forth at 49 U.S.C. § 11706(d)(2)(A).  COGSA does not contain a special venue provision and, therefore, the general venue statute at 28 U.S.C. § 1391(b) would determine proper venue for Plaintiffs' COGSA claims.  The general venue statute at 28 U.S.C. § 1391(a) would similarly govern the determination of proper venue for Plaintiffs' common law claims.

"[W]here a special venue provision lays venue of a claim in certain specified districts, such provision controls venue for all claims arising out of the same nucleus of facts."  *Pacer Global Logistics, Inc., v. National Passenger Railroad Corp. et al.,* 272 F. Supp. 2d 784, 790 – 91  (E.D. Wis. 2003).  There can be no doubt that all of Plaintiffs' claims are based "on the same nucleus of facts".  Therefore, as long as Plaintiffs' Carmack claims remain viable, venue of this action must be controlled by the Carmack Amendment's special venue provision.

Plaintiffs have alleged that Yang Ming was "the delivering rail carrier" and, therefore, Yang Ming is liable under the Carmack Amendment. If that were true (and the defendants do not concede that it is), then venue in this district would be proper only if Yang Ming "operates a railroad or a route through [this] judicial district." 49 U.S.C. § 11706 (d)(2)(A)(ii). Plaintiffs' Complaint is devoid of any such allegation. Accordingly, this Court must dismiss Counts One, Five, and Nine of Plaintiffs' Complaint, all of which are based on the Carmack Amendment.

Defendants recognize that Plaintiffs could cure their pleading through amendment by alleging that Yang Ming operates a railroad through this judicial district. Such an allegation would, of course, be subject to the scrutiny provided for under Fed. R. Civ. P. 11(b)(3). The Defendants would certainly pursue those sanctions which are available under Fed. R. Civ. P. 11(c) for having to expend their resources in rebutting an allegation which Plaintiffs and their counsel know full has no basis in fact.

## IV.   Plaintiffs' Common Law Claims are Preempted by Federal Statute

Both the Carmack Amendment and COGSA preempt common law remedies for freight loss and damage regardless of whether those remedies are based on state or federal common law. Therefore, this Court must dismiss plaintiffs' tort claims, which are set forth at Counts Three, Seven and Eleven as well as plaintiffs' bailment claims, which are set forth at Counts Four, Eight and Twelve.

### A.    The Carmack Amendment preempts plaintiffs' Negligence and Bailment Claims.

Rail carriers providing freight transportation services do so under federal statutes.[5] *See* 49 U.S.C. §§ 10101 *et seq.* As a result, any party whose goods are transported by an interstate rail carrier has a specific and exclusive federal remedy for claims that the cargo was lost or

---

[5]     Yang Ming does not concede that it is a rail carrier.

damaged.  The shippers' exclusive remedy is set forth under the Carmack Amendment to the

Interstate Commerce Act, 49 U.S.C. § 11706.

Congress intended that the Carmack Amendment create a uniform national rule

determining the liability of common carriers under bills of lading for "loss, damage or injury to

property transported."  *Adams Express Co. v. Kroninger*, 226 U.S. 491, 503-05 (1913).  Prior to

the passage of the Carmack Amendment, the diversity of then existing state laws often resulted

in a carrier "being held liable in one court when under the same set of facts he would be exempt

from liability in another."  *Id.* at 505.  As a result,

> It was practically impossible for a shipper engaged in business that
> extended beyond the confines of his own state, or for a carrier
> whose lines were extensive to know without considerable
> investigation and trouble and even then often times with but little
> certainty what would be the carriers actual responsibility as to
> good delivered.

Id.  The Carmack Amendment, "[s]ubstitutes a paramount and national law as to the rights and

liabilities of interstate carrier subject to the Amendment."  *Air Prods. and Chemicals v. Illinois*

*CNT Gulf RR*, 721 F.2d 483, 486 (5th Cir. 1983), *cert. denied,* 469 U.S. 832 (1984).

The Carmack Amendment preempts all state law causes of action for "damages resulting

from any failure to discharge a carrier's duty with respect to any part of the transportation to the

agreed destination," *Southeastern Express Co. v. Pasttime Amusement Co.*, 299 U.S. 28, 29

(1936), including claims arising out of damage or loss to goods during shipment, delivery or

untimely delivery of goods, improper rate charges, and the carrier's failure to fulfill duties

related to its duty of delivery.  *See, e.g., North American Phillips Corporation v. Energy Air*

*Freight Corp.*, 579 F.2d 229, 234 (2nd Cir. 1978); *Rini v. United Van Lines, Inc.,* 104 F.3d 502

(1st Cir. 1997); *Kansas City Fire & Marine Ins. v. Consolidated Rail Corp.,* 80 F. Supp. 2d 447,

449 (E.D. Pa. 1999); *Construction Servs., Inc. v. Watkins Motor Lines, Inc.*, 1998 U.S. Dist.

LEXIS 22818 at *9-13 (M.D. Ala. May 6, 1998)(and the cases cited therein); *see also Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 344-45 (D.N.J. 2001).  "[C]ourts have been nearly uniform in holding that the Carmack Amendment preempts state law remedies for loss or damage to goods shipped by common carriers." *Roberts et al., v. North American Van Lines, Inc.*, 394 F. Supp. 2d 1174, 1179 (N.D. Ca. 2004).

Numerous courts have held that negligence and breach of contract claims are preempted by the Carmack Amendment.  *See e.g., Shao v. Link Cargo Ltd.*, 986 F.2d 700, 705-07 (4th Cir. 1993)(Carmack Amendment preempted state law claims of negligence and breach of contract claims); *Hughes v. United Van Lines*, 829 F.2d 1407, 1415 (7th Cir. 1987)(Carmack Amendment preempted state law claims of negligence, breach of contract, intentionally and negligent misrepresentation), *cert. denied*, 45 U.S. 913 (1998); *Duerrmeyer v. Alamo Moving and Storage One Corp.*, 49 F. Supp. 2d 934, 935-37 (W.D. Tex. 1999)(Carmack Amendment preempted claims of breach of contract, fraud, negligence misrepresentation, negligence and promissory estoppel).

The Carmack Amendment also preempts claims which are based on "federal common law." *Cleveland et al., v. Beltman North American Co., Inc.,* 30 F.3d 373, 381 (2d. Cir. 1994); *Morris et al., v. Covan World Wide Moving, Inc., et al.*, 144 F.3d 377, 381 – 384 (5th Cir. 1998); *Calka v. North American Van Lines, Inc.*, 2001 U.S. Dist. LEXIS 5157, *5 (April 27, 2001 Southern District of New York).

Plaintiffs allege that their insureds' freight was damaged as a result of Yang Ming's alleged negligence and also as a result of a breach of a bailment agreement.  Both theories arise from the common law.  In the unlikely event that plaintiffs can establish a foundation for their Carmack Claims, i.e., that Yang Ming was a rail carrier, their common law claims must be dismissed as they are preempted by application of the Carmack Amendment.

**B.    COGSA preempts plaintiffs' Negligence and Bailment Claims.**

The bills of lading which Yang Ming issued, which governed the movement of plaintiffs' insured's freight, and which are referenced in paragraphs six (6), twelve (12), and seventeen (17) of plaintiffs' complaint expressly incorporate COGSA as the governing law for the shipments at issue.[6]  It is well-settled in this Court that a remedy for freight loss and damage under COGSA preempts all state common law causes of action.  *Junior Gallery LTD., et al., v. Neptune Orient Lines, LTD, et al.,* 1998 U.S. Dist. LEXIS 17354, *13 – 15 (November 13, 1998 S.D.N.Y)(Judge Denny Chin); *Miller Export Corp. v. Hellenic Lines, LTD,* 534 F. Supp. 707, 710 – 711 (S.D.N.Y. 1982)

In this Circuit, COGSA also preempts claims for freight loss or damage which are based on "federal common law."  *Hartford Fire Ins. Co. a/s/o Trek Bicycle Corp., v. Orient Overseas Containers Lines (UK) LTD., et al.,* 230 F.3d 549 (2d. Cir. 2000).  In the *Orient Overseas* case, plaintiff's insured arranged for the intermodal shipment of bicycles from Wisconsin to The Netherlands pursuant to a through bill of lading.  The container in which the bicycles were loaded was trucked from Wisconsin to Chicago, where it was loaded onto a rail carrier for transport to Montreal.  There, the container was loaded onto an ocean vessel and transported by

---

[6]      *See* Eagan Decl. (filed in the Related Case) at ¶ 9 and Exhibit 9 thereto, which is a copy of the terms and conditions which govern freight shipped pursuant to a Yang Ming ("Yang Ming Terms and Conditions") bill of lading.  Paragraph 7(1) of the Yang Ming Terms and Conditions expressly incorporate COGSA.

sea to Antwerp, Belgium. In Antwerp, the container was loaded onto a truck. Shortly thereafter, thieves stole the truck along with the container.

The district court concluded that COGSA applied, but refused to apply COGSA's limitation-of-liability provision because doing so would, *inter alia*, violate "the fair opportunity doctrine", which is a federal common law doctrine developed in admiralty. *Orient Overseas*, 230 F.3d at 553. On appeal, the plaintiff argued that application of federal common law to its COGSA claim was not error in light of the fact that its claim fell within the court's admiralty jurisdiction. The defendant argued that no admiralty jurisdiction existed and, therefore, it was error to apply federal common law.

In resolving the dispute, the Second Circuit first noted that "[t]he general rule for exercising admiralty jurisdiction in a contract case is that 'jurisdiction arises only when the subject-matter of the contract is '*purely*' or '*wholly*' maritime in nature.'" *Id.*, at 555 (citations omitted; emphasis added). "'Mixed contracts', which involve obligations for both sea and land carriage, generally do not fall within a federal court's admiralty jurisdiction." *Id.* The Second Circuit then addressed exceptions to the general rule that would allow for the exercise of admiralty jurisdiction in a case involving such a "mixed contract" if (1) a breach of maritime obligations was severable from the non-maritime obligations of the contract or (2) the land-based portion of the contract was "merely incidental" to the sea-based portion. The Court found that neither exception applied. *Id.*, at 555 – 556. The Court concluded that, because the through bill of lading involved land carriage which was more than "incidental" to sea carriage[7], the dispute was "outside of [its] admiralty jurisdiction," *Id.*, at 556, and held that federal common law was not applicable. *Id.*, at 559.

---

[7]      The Court took judicial notice of the fact that the sum of the miles covered in the three land segments of the shipment at issue was "at least 850 miles." *Id.*, at 556.

Here, the Court may certainly take judicial notice of the fact that the land-based segment of the movement of plaintiffs' insured's freight was well in excess of 850 miles.[8]  The bills of lading which governed the shipments at issue are clearly "mixed contracts" where the land carriage was much more than "incidental" to the sea carriage.  Therefore, this Court cannot exercise its admiralty jurisdiction over the parties' dispute.  If this Court is without admiralty jurisdiction over plaintiffs' claims, then plaintiffs' claims based on federal common law must be dismissed.

The Second Circuit also addressed COGSA preemption of federal common law claims in *Senator Linie GMBH & Co., v. Sunway Line, Inc., et al.*, 291 F.3d 145 (2d Cir. 2002).  In *Sunway Lines*, an ocean carrier sued the shipper for damage which was allegedly caused by the shipper's "inherently dangerous goods."  Plaintiff based its claim on "federal maritime common law."  The shipper argued that its liability for any such damage must be determined by applicable provisions of COGSA.

In rejecting the application of "federal common law", the Second Circuit first noted that "'[w]hile federalism concerns create a presumption against preemption of state law, including state common law, separation of powers concerns create a presumption *in favor of preemption of federal common law* whenever it can be said that Congress has legislated on the subject." *Sunway Line,* 291 F.3d at 166 (citations omitted)(emphasis added).  The Court then identified several factors which are traditionally examined when determining "whether the presumption in favor of statutory displacement of general maritime law has been overcome." *Id.*, at 167.  Those factors are as follows:

---

[8]    The Court can take judicial notice of the fact that the distance between Long Beach, California, where the freight began its transport by rail, and Austell, Georgia, which was the intended destination, is more than 2,000 road miles.

1.  whether statutory language explicitly preserves or pre-empts judge-made law, or whether evidence of Congressional intent to achieve such results may be found in the legislative history;
2.  the scope of the legislation;
3.  whether applying judge-made law would fill a gap left left by Congress; and
4.  whether the judge-made law at issue represents a "long-established and familiar principle of the common law or the general maritime law."

*Id.*

With respect to the first factor, the statute does not contain any language which could be characterized as "explicitly preserving judge-made law" such as the tort or bailment theories pled by plaintiffs herein.  In fact, and as the *Sunway Line* Court correctly pointed out, "[w]here COGSA does exclude or qualify the reach of its provisions, its intention to do so is made expressly clear in the statute."  *Id.*, at 167.  The Second Circuit has also indicated that the second factor weighs heavily in favor of preemption in that "COGSA extensively governs the relations of carriers and shippers with respect to 'all contracts of carriage of goods by sea to or from ports of the United States in foreign trade.'"  *Id.* (citations omitted).  Finally, there are no "gaps" in the statutory scheme which governs freight loss and damage claims arising in maritime commerce which require "filling" by the application of common law negligence or bailment theories.  Plaintiffs simply cannot overcome the presumption which favors the application of COGSA over any theories which may arise from "federal common law", assuming, but only for the sake of argument, that there are federal common law theories of negligence or bailment.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, this Court should dismiss, with prejudice, Counts One,

Three, Four, Five, Seven, Eight, Nine, Eleven and Twelve of Plaintiffs' Complaint.

Respectfully submitted,

**KEENAN COHEN & HOWARD P.C.**

By:    /s/ Charles L. Howard
       Charles L. Howard
       One Pitcairn Place, Suite 2400
       165 Township Line Road
       Jenkintown, PA 19046
       Telephone:    (215) 609-1110
       Facsimile:    (215) 609-1117

       Attorneys for Defendant
       Yang Ming Marine Transport Corporation

Dated: February 25, 2008

17

## CERTIFICATE OF SERVICE

  I, the undersigned counsel, hereby certify that on February 25, 2008, a true and correct copy of the foregoing Defendant's Memorandum of Law In Support of Its Motion, Pursuant to Fed. R. Civ. 12(b)(3) and (6), to Dismiss Counts One, Three, Four, Five, Seven, Eight, Nine, Eleven and Twelve of Plaintiffs' Complaint was filed electronically.  Notice of this filing will be sent to the following party, listed below, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      David T. Maloff, Esquire
      Thomas M. Eagan, Esquire
      MALOFF BROWNE & EAGAN LLC
      411 Theodore Fremd Avenue, Suite 190
      Rye, New York 10580-1411

      *Attorneys for Plaintiffs*


    By:  /s/ Charles L. Howard
        Charles L. Howard