DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TM 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York  10580
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, and SOMPO JAPAN INSURANCE, INC., | : | **07 Civ. 11276 (DC)** |
| | : | |
| *Plaintiffs,* | : | **DECLARATION OF TODD A. BARTON IN** |
| - against - | | **SUPPORT OF PLAINTIFFS'** |
| | : | **MOTION FOR PARTIAL** |
| YANG MING MARINE TRANSPORT CORPORATION, | | **SUMMARY JUDGMENT** |
| | : | |
| *Defendant.* | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, Todd A. Barton, declare that I am an associate of Maloof Browne & Eagan

LLC, attorneys for Plaintiffs Sompo Japan Insurance Company of America and Sompo Japan

Insurance, Inc.

1.      I attach as Exhibit 1 true copies of the bills of lading issued by Yang Ming

Marine Transport Corporation ("Yang Ming") regarding the Kubota Tractor Shipment at issue in

this litigation.

2.      I attach as Exhibit 2 true copies of the waybills issued by Yang Ming

regarding the Unisia Autoparts Shipment at issue in the litigation (produced by Yang Ming in

response to subpoena).

3.      I attach as Exhibit 3 a true copy of the waybill issued by Yang Ming

regarding the Hozuki Sushi cases/Ice Maker Shipment at issue in this litigation (produced by

Yang Ming in response to subpoena).

4.    I attach as Exhibit 4 a true copy of the Yang Ming bill of lading terms and conditions from their website.

5.    I attach as Exhibit 5 a true copy of an "Intermodal Transportation Agreement" as produced by Norfolk Southern Railway Company in a related litigation.

6.    I attach as Exhibit 6 a true copy of Judge Castel's decision in *Nippon Express U.S.A. (Illinois), Inc. v. M/V Chang Jiang Bridge and Yang Ming Marine Transport Corporation*, No. 06 Civ. 694 (Castel, J., December 13, 2007).

7.    I attach as Exhibit 7 a true copy of Norfolk Southern's letters dated February 2, 2007 and February 14, 2007, respectively.

8.    I attach as Exhibit 8 a true copy of the Complaint.

I declare the foregoing is true and correct under penalty of perjury of the laws of the United States.

Dated: Rye, New York
      February 2 2 , 2008

                                        Todd A. Barton

TO: All Counsel

05/08/2006  18:07   8666483519    KUBOTA-カイカ" イ 使" ヨウムブ    ヘ°-シ" 15/24



# 陽明海運股份有限公司
### YANG MING MARINE TRANSPORT CORP.

**COPY NON-NEGOTIABLE**
**BILL OF LADING**

DEC 2005

| | |
|---|---|
| **Shipper** | **Booking No** / **B/L No.** |
| KUBOTA CORPORATION, OSAKA, JAPAN<br>2-47, SHIKITSUHIGASHI 1-CHOME,<br>NANIWA-KU, OSAKA, 556-8601 JAPAN<br>TEL:06-6648-3146<br>FAX:06-6648-3519 | OSAS2502885    WAYBILL<br>YMLUR251191404<br>**Export References** |
| **Consignee** | |
| MARUBENI AMERICA CORPORATION<br>515 SOUTH FIGUEROA STREET,<br>SUITE 2000<br>LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** |
| **Notify party** | **Point and Country of Origin of goods**  S02 |
| 1) KUBOTA TRACTOR CORPORATION<br>3401 DEL AMO BLVD.<br>TORRANCE, CA 90503 U.S.A. | **ALSO NOTIFY**  2) MARUBENI TRANSPORT SERVICE CORP.<br>444 WEST OCEAN BLVD, SUITE 1504,<br>LONG BEACH, CA 90802 U.S.A. |

| | |
|---|---|
| **Pre-carried by** | **Place of Receipt** TOKYO CY / **Onward inland routing** |
| **Vessel** Voy No. 18E<br>CHEROKEE BRIDGE | **Port of Loading** TOKYO, JAPAN |
| **Port of Discharge** LONG BEACH, CA | **Place of Delivery** JEFFERSON, GA DOOR / **Delivery status** Micro Bridge Door Service (JPT) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | PARTICULARS FURNISHED BY MERCHANT<br>DESCRIPTION OF PACKAGES AND GOODS | Measurement(M3)<br>Gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER<br><br><br>NO MARK | 3 CRATES | SHIPPER'S LOAD, COUNT AND SEALED.<br>KUBOTA NEW AGRICULTURAL TRACTORS<br>*******************************<br>INVOICE NO: T016081366<br>COUNTRY OF ORIGIN: JAPAN<br>3 I.CRATES(= 3 CRATES) [3 SETS] | 49.5270M3<br>7,158.0000KGS<br><br>FREIGHT PREPAID<br><br>LOADED ON BOARD<br>CHEROKEE BRIDGE<br>VOY: 18E<br>AT: TOKYO<br>ON: MAR/31/06<br>CRD: MAR/27/06 |
| YMLUR294100 40HQ | FCL/FCL    YML6766466 3CRATES 7,158.0000KGS | | 49.5270M3 |

| Declared value $<br>ad valorem rate. Carrier's package limitation shall not apply. See Clause 23 (2)4(3) hereof | | | **Place and Date of Issue** OSAKA    MAR/31/06 |
|---|---|---|---|

On Board Date  MAR/31/06

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H | USD | 1,385.00 | 1,385.00 | | YMLUR251191404 |
| | CY | 1.000 | C4H | USD | 240.00 | 240.00 | | |
| | OR | 1.000 | C4H | USD | 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H | USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H | USD | 6.00 | | 6.00 | |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff.
If required by the Carrier, this Bill of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order.
An endorsement on this Bill of Lading that the goods are "On Board" shall mean that the Goods are loaded On Board the Vessel stamped in this Bill of Lading, or loaded On Board the facilities of any Underlying Carrier or Sub-Contractor for carriage in accordance with the terms of this Bill of Lading.
IN WITNESS WHEREOF, the undersigned has signed Full set of Bills of Lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

| Rate of Exchange USD: 117.2400 | | | | |
|---|---|---|---|---|
| **Number of Original B(s)/L** ONE | | USD | 1,625.00 | 2,155.00 |

| | | | |
|---|---|---|---|
| TTLPPD (JPY):190,515 | **Total** | | YANGMING (JAPAN) CO., LTD. |
| | **payable at** OSAKA | JEFFERSON | |

*: Applicable only when used for multimodal or through transportation

By _____
as agent for Yangming Marine
Transport Corporation, as carrier

**EXHIBIT 1**

05/08/2006  16:07   8655483519          KUBOTA－カイカ"イキ"ュウムフ"              ぺ−ジ" 18/24



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

## COPY NON-NEGOTIABLE
## BILL OF LADING
DEC 2005

| Shipper | Booking No | B/L No. |
|---|---|---|
| KUBOTA CORPORATION, OSAKA, JAPAN<br>2-47, SHIKITSUHIGASHI 1-CHOME,<br>NANIWA-KU, OSAKA, 556-8601 JAPAN<br>TEL:06-6648-3146<br>FAX:06-6648-3519 | OSAS2602886 | WAYBILL<br>YMLUW2E1121400 |
| | Export References | |

| Consignee | Forwarding agent references |
|---|---|
| MARUBENI AMERICA CORPORATION<br>515 SOUTH FIGUEROA STREET,<br>SUITE 2000<br>LOS ANGELES, CA 90071 U.S.A. | |
| | Point and Country of Origin of goods<br>SOZ |

| Notify party | ALSO NOTIFY |
|---|---|
| 1) KUBOTA TRACTOR CORPORATION<br>3401 DEL AMO BLVD.<br>TORRANCE, CA 90503 U.S.A. | 2) MARUBENI TRANSPORT SERVICE CORP.<br>444 WEST OCEAN BLVD. SUITE 1504,<br>LONG BEACH, CA 90802 U.S.A. |

| *Received by | *Place of Receipt<br>TOKYO CY | Onward inland routing |
|---|---|---|
| Vessel           Voy No.   1agEsy<br>CHEROKEE BRIDGE | Port of Loading<br>TOKYO, JAPAN | |
| Port of Discharge<br>LONG BEACH, CA | *Place of Delivery<br>JEFFERSON, GA DOOR | Delivery status<br>Micro Bridge Door Service (IPI) |

PARTICULARS FURNISHED BY MERCHANT

| MKR & NOS/CONTAINER NOS. | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(cbm)<br>gross Weight(kgs) |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED.<br>3 UNITS<br>KUBOTA NEW AGRICULTURAL TRACTORS<br>*************************************<br>INVOICE NO: T016031367<br>COUNTRY OF ORIGIN: JAPAN<br>3 UNITS[3 SETS] | 49.5270M3<br>7,158.0000KGS<br>FREIGHT PREPAID |
| NO MARK | | | LOADED ON BOARD<br>CHEROKEE BRIDGE<br>VOY: 16E<br>AT: TOKYO<br>ON: MAR/31/06<br>CRD: MAR/27/06 |
| FSCU6904489 40HQ | FCL/FCL | YML5766451 3UNITS 7,158.0000KGS | 49.5270M3 |

| Declared value $ | | Place and Date of Issue | OSAKA | MAR/31/06 |
|---|---|---|---|---|
| ad valorem rate, Carrier's package limitation shall not apply. See Clause 23 (2)&(3) hereof | If Merchant enters value of Goods and pays the applicable | OHI04 | On-Board Date | MAR/31/06 |

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 520705 | OF | 1.000 | C4H | USD | 1,385.00 | 1,385.00 | | YMLUW2E1121400 |
| | CY | 1.000 | C4H | USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H | USD | 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H | USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H | USD | 6.00 | | 6.00 | |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff.
If required by the Carrier, this B/L of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order, on surrender on this B/L of Lading that the Goods are "On Board" shall mean that the Goods are loaded On Board the Vessel named in this B/L of Lading, or issued On Board the Vessel at any Un-derlying Carrier at Sub-Carrier(s) for Carriage in accordance with the terms of this B/L of Lading.
IN WITNESS WHEREOF, the undersigned has signed Full set of Bills of Lading, all of these tenor and date, one of which being accomplished, the others to stand void.

YANGMING (JAPAN) CO., LTD.

| Rate of Exchange | USD:117.2400 | | USD | 1,626.00 | 2,155.00 | |
|---|---|---|---|---|---|---|
| Number of Original Bill/L. | ONE | | Total | | | By _____ |
| TTLPPD (JPY):190,515 | | | payable at | OSAKA | JEFFERSON | As agent for Yangming Marine Transport Corporation, as carrier |

*:Applicable only when used for multimodal or through transportation

M B & E

189

05/08/2006  10:07   8666483519          KUBOTA-カイカ"イキ"ュウムフ"              ページ 21/24



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

### COPY NON-NEGOTIABLE
### BILL OF LADING DEC 2005

| | |
|---|---|
| **Shipper** KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | **Booking No** OSAS2602987    **B/L No.** WAYBILL YMLUW251121405  **Export References** |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** |
| | **Point and Country of Origin of goods** S02 |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. TORRANCE, CA 90503 U.S.A. | **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504, LONG BEACH, CA 90802 U.S.A. |

| | | |
|---|---|---|
| *Precarried by | *Place of Receipt TOKYO CY | Onward Inland routing |
| **Vessel** CHEROKEE BRIDGE    **Voy No.** 16E | Port of Loading TOKYO, JAPAN | |
| **Port of Discharge** LONG BEACH, CA | *Place of Delivery JEFFERSON, GA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

**PARTICULARS FURNISHED BY MERCHANT**

| MKG & NOS:CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(m) gross Weight(kg) |
|---|---|---|---|
| 1 CONTAINER | 3 CRATES | SHIPPER'S LOAD, COUNT AND SEALED. | 38.5170M3 7,314.0000KGS |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS ************************************ INVOICE NO: T016031368 COUNTRY OF ORIGIN: JAPAN 3 I.CRATES (= 3 CRATES) [3 SETS] | FREIGHT PREPAID LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/27/06 |
| CLHU8586100 4QHQ | FCL/FCL | YML5756493 3CRATES 7,314.0000KGS | 38.5170M3 |

| Declared value $ ad valorem rate, Carrier's package limitation shall not apply See Clause 23 (2)&(3) hereof | | If Merchant enters value of Goods and pays the applicable | Place and Date of Issue OSAKA | | MAR/31/06 |
|---|---|---|---|---|---|
| | | OHIO4 | On Board Date | | MAR/31/06 |

| ITEM NO | CHG | RATED AS | PER | RATE | | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H | USD | 1,385.00 | 1,385.00 | | YMLUW251121405 |
| | CY | 1.000 | C4H | USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H | USD | 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H | USD | 34.00 | 34.00 | | |
| | VS | 1.000 | C4H | USD | 6.00 | | 6.00 | |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff. If required by the Carrier, this Bill of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order. An endorsement on this Bill of Lading that the Goods are "On Board" shall mean that the Goods are loaded On Board the Vessel named in this Bill of Lading, or loaded On Board the feeding of any on-carrying Carrier or On-Carrier/craft or overland in accordance with one or more of one or more carrying IN WITNESS WHEREOF, the undersigned has signed Full set of Bills of Lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

YANGMING (JAPAN) CO., LTD.

| Date of Exchange | USD:117.2400 | | | USD | | 1,625.00 | 2,155.00 |
|---|---|---|---|---|---|---|---|
| Number of Original B(s)/L | | ONE | | | | | |

By _____
as agent for Yangming Marine Transport Corporation, as carrier

| TTLPPD (JPY):190,515 | | payable at | OSAKA | JEFFERSON |
|---|---|---|---|---|
| | Total | | | |

* Applicable only when used for multimodal or through transportation

M B & E                    188

05/08/2006  10:07  8666483519    KUBOTA-カイカ"イキ"ョウムフ"    ペーシ" 03/24



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING



| | |
|---|---|
| **Shipper** KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | **Booking No** QSAS2802879  **B/L No.** WAYBILL YMLUW251121387  **Export References** DEC2005 |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** |
| | **Point and Country of Origin of goods** S02 |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. TORRANCE, CA 90503 U.S.A. | **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504, LONG BEACH, CA 90802 U.S.A. |
| **Precarried by** | **Place of Receipt** TOKYO CY | **Onward inland routing** |
| **Vessel** CHEROKEE BRIDGE **Voy No.** 16E98 | **Port of Loading** TOKYO, JAPAN | |
| **Port of Discharge** LONG BEACH, CA | **Place of Delivery** JEFFERSON, GA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | PARTICULARS FURNISHED BY MERCHANT — DESCRIPTION OF PACKAGES AND GOODS | Measurement gross Weight(kg) |
|---|---|---|---|
| 1 CONTAINER | 3 UNITS | SHIPPER'S LOAD, COUNT AND SEALED, KUBOTA NEW AGRICULTURAL TRACTORS ************************************ INVOICE NO: T016031333 COUNTRY OF ORIGIN: JAPAN 3 UNITS[3 SETS] | 49.5270M3 7,176.0000KGS FREIGHT PREPAID LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/25/06 |
| NO MARK | | | |
| XINU8033402 40HQ   FCL/FCL   YML5756449 3UNITS 7,176.0000KGS | | | 49.5270M3 |

| ITEM NO | CMS | PAYED AS | PPD | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H USD | 1,385.00 | 1,385.00 | | YMLUW251121387 |
| | CY | 1.000 | C4H USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H USD | 2,115.00 | | 2,115.00 | |
| | AQ | 1.000 | C4H USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H USD | 6.00 | | 6.00 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Place and Date of Issue** OSAKA  MAR/31/06 **On Board Date** MAR/31/06 | | | | | | |
| **Rate of Exchange** USD:117.2400 | | USD | Total | 1,625.00 | 2,155.00 | YANGMING (JAPAN) CO., LTD. |
| **Number of Original B(s)/L** ONE | | | payable at | OSAKA | JEFFERSON | By ___ as agent for Yangming Marine Transport Corporation, as carrier |

TTLPPD (JPY):190,516

*:Applicable only when used for multimodal or through transportation

M B & E

200

05/08/2006  16:07  0555483519    KUBOTA-カイカ"イギ"ゴウムフ"    ペ-シ" 06/24



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

## COPY NON-NEGOTIABLE
## BILL OF LADING

DEC.2005

| Shipper | Booking No. | B/L No. |
|---|---|---|
| KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | OSAS2602880 Export References | WAYBILL YMLUW251121388 |

| Consignee | Forwarding agent references |
|---|---|
| MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | |

| Notify party | Point and Country of Origin of goods S02 |
|---|---|
| 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. TORRANCE, CA 90503 U.S.A. | ALSO NOTIFY  2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504, LONG BEACH, CA 90802 U.S.A. |

| *Precarried by | *Place of Receipt TOKYO CY | Onward Inland routing |
|---|---|---|
| Vessel          Voy No.  16W=s CHEROKEE BRIDGE | Port of Loading TOKYO, JAPAN | |
| Port of Discharge LONG BEACH, CA | *Place of Delivery JEFFERSON, GA DOOR | Delivery status Micro Bridge Door Service (IPI) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS PARTICULARS FURNISHED BY MERCHANT | Measurement gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT, AND SEALED. 3 UNITS | 49.5270M3 7,176.0000KGS |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS ************************************ INVOICE NO: TO16031334 COUNTRY OF ORIGIN: JAPAN 3 UNITS[3 SBTS] | FREIGHT PREPAID LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/25/06 |

YMLU8217882 40HQ          FCL/FCL    YML5756445 3UNITS 7,176.0000KGS          49.5270M3

| Declared value B ed valorem rate, Carrier's package limitation shall not apply See Clause 20 (2)A(c) hereof | If Merchant enters value of Goods and pays the applicable ORI04 | | Place and Date of Issue OSAKA | MAR/31/06 |
|---|---|---|---|---|
| | | | On Board date | MAR/31/06 |

| ITEM NO. | CHG | RATED AB | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 520705 | OF | 1.000 | C4H | USD | 1,385.00 | 1,385.00 | | This receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff. If required by the Carrier, this B/L of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order. An endorsement on this B/L of Lading and the Goods are "On Board" shall mean that the Goods are loaded On Board the vessel named in this Bill of Lading, or loaded On Board the facilities of any Underlying Carrier or Sub-Contractor for Carriage in accordance with the terms of this Bill of Lading. IN WITNESS WHEREOF the undersigned has signed Full set of Bills of Lading all of the same tenor and date, one of which being accomplished, the others to stand void. |
| | CY | 1.000 | C4H | USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H | USD | 2,115.00 | | 2,115.00 | |
| | A0 | 1.000 | C4H | USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4R | USD | 6.00 | | 6.00 | |

| Rate of Exchange USD:117.2400 | | | USD | 1,625.00 | 2,155.00 | YANGMING (JAPAN) CO., LTD. |
|---|---|---|---|---|---|---|
| Number of Original Bts/L.  ONE | | Total | | | | |

TTLPPD (JPY):190,615                          payable at      OSAKA      JEFFERSON

By _____ as agent for Yangming Marine Transport Corporation, as carrier

*:Applicable only when used for multimodal or through transportation

M B & E

201

05/23/2006 18:07   8666483519                  KUBOTA—カイカガ゛イキ゛ョウムフ゛              ﾍ゜ーシ゛ 09/24



**陽明海運股份有限公司**
**YANG MING MARINE TRANSPORT CORP.**

## COPY NON-NEGOTIABLE
## BILL OF LADING                    DEC2005

| | | |
|---|---|---|
| **Shipper** KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | **Booking No** OSAS2602881 **Export References** | **B/L No.** WAYBILL YMLUW251121389 |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** | |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD, TORRANCE, CA 90503 U.S.A. | **Point and Country of Origin of goods** S02 **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD, SUITE 1504, LONG BEACH, CA 90802 U.S.A. | |

| | | |
|---|---|---|
| **Pre-carried by** | **Place of Receipt** TOKYO CY | **Onward inland routing** |
| **Vessel** CHEROKEE BRIDGE   **Voy No.** 16E | **Port of Loading** TOKYO, JAPAN | |
| **Port of Discharge** LONG BEACH, CA | **Place of Delivery** JEFFERSON, CA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | PARTICULARS FURNISHED BY MERCHANT DESCRIPTION OF PACKAGES AND GOODS | Measurement(M3) Gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED. 3 CRATES | 38.5170M3 7,332.0000KGS |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS ************************************* INVOICE NO: TO16031335 COUNTRY OF ORIGIN: JAPAN 3 I.CRATES (= 3 CRATES) [3 SETS] | FREIGHT PREPAID LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/25/06 |
| YMLU8264472 40HQ | FCL/FCL | YML5756590 3CRATES 7,332.0000KGS | 38.5170M3 |

| ITEM NO | CNS | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 620705 | OF CY OF AO VS | 1.000 1.000 1.000 1.000 1.000 | C4H C4H C4H C4H C4H | USD USD USD USD USD | 1,385.00 240.00 2,115.00 34.00 6.00 | 1,385.00 240.00 | 2,115.00 34.00 6.00 | YMLUW251121389 |

Declared value $ ad valorem rate. Carrier's package limitation shall not apply. See Clause 2A (3)A(2) hereof   If Merchant enters value of Goods and pays the applicable   **Place and Date of Issue** OSAKA   **On Board Date**   MAR/31/06   MAR/31/06   OHI04

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff.

If required by the Carrier, this Bill of Lading duly endorsed must be surrendered in exchange for the goods or delivery Order. An endorsement on this Bill of Lading that the Goods are "On Board" shall mean that the Goods are loaded On Board the Vessel named in this Bill of Lading, or loaded On Board the facilities of any Underlying Carrier or Sub-Contractor for Carriage in accordance with this terms of this Bill of Lading.

IN WITNESS WHEREOF, the undersigned had signed full set of Bills of Lading all of the same tenor and date, one of which being accomplished, the others to stand void.

YANGMING (JAPAN) CO., LTD.

| Rate of Exchange USD :117.2400 | | USD | 1,825.00 | 2,155.00 |
| Number of Original B(s)/L ONE | Total | | | |

TTLPPD (JPY):190,515   **payable at.** OSAKA   JEFFERSON   or ___ as agent for Yangming Marine Transport Corporation, as carrier

* Applicable only when used for multimodal or through transportation

M B & E                                    202

05/08/2006  10:02    0555483519          KUBOTA-カイカ"イギ"コウムフ"              ペ-シ" 30/30



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING

DEC2005

| Shipper | |
|---|---|
| KUBOTA CORPORATION, OSAKA, JAPAN<br>2-47, SHIKITSUHIGASHI 1-CHOME,<br>NANIWA-KU, OSAKA, 556-8601 JAPAN<br>TEL:06-6648-3146<br>FAX:06-6648-3519 | Booking No OSAS2502879 · B/L No. WAYBILL YMLJN251121386<br>Export References |

| Consignee | |
|---|---|
| MARUBENI AMERICA CORPORATION<br>515 SOUTH FIGUEROA STREET,<br>SUITE 2000<br>LOS ANGELES, CA 90071 U.S.A. | Forwarding agent references |

| Notify party | |
|---|---|
| 1) KUBOTA TRACTOR CORPORATION<br>3401 DEL AMO BLVD.<br>TORRANCE, CA 90503 U.S.A. | Point and Country of Origin of goods S02<br>ALSO NOTIFY    2) MARUBENI TRANSPORT SERVICE CORP.<br>444 WEST OCEAN BLVD. SUITE 1504,<br>LONG BEACH, CA 90802 U.S.A. |

| *Procured by | *Place of Receipt TOKYO CY | Onward inland routing |
|---|---|---|
| Vessel    Voy No. 16Hag<br>CHEROKEE BRIDGE | Port of Loading TOKYO, JAPAN | |
| Port of Discharge LONG BEACH, CA | *Place of Delivery JEFFERSON, GA DOOR | Delivery status   Micro Bridge Door Service (IPI) |

| MKS & NOCONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER<br><br>NO MARK | 3 UNITS | SHIPPER'S LOAD, COUNT AND SEALED.<br>KUBOTA NEW AGRICULTURAL TRACTORS<br>*=*=*=*=*=*=*=*=*=*=*=*=*=*=*=*=*<br>INVOICE NO: T016031332<br>COUNTRY OF ORIGIN: JAPAN<br>3 UNITS[3 SETS] | 49.5270M3<br>7,176.0000KGS<br>FREIGHT PREPAID<br>LOADED ON BOARD<br>CHEROKEE BRIDGE<br>VOY: 16E<br>AT: TOKYO<br>ON: MAR/31/06<br>CRD: MAR/25/06 |

CRXU9841070 40HQ        FCL/FCL    YML5766427 3UNITS 7,176.0000KGS                    49.5270M3

| | | | | | | | Place and Date of Issue OSAKA | MAR/31/06 |
|---|---|---|---|---|---|---|---|---|
Declared value if ad valorem rate. Carrier's package limitation shall not apply. See Clause 23 (3)(4) hereof    If Merchant enters value of Goods and pays the applicable    OHIO4    On Board Date    MAR/31/06

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO YMLJN251121386 |
|---|---|---|---|---|---|---|---|
| 520705 | OF | 1.000 | C4H | USD | 1,385.00 | | |
| | CY | 1.000 | C4H | USD | 240.00 | | |
| | OF | 1.000 | C4H | USD | 2,115.00 | | 2,115.00 |
| | AQ | 1.000 | C4H | USD | 34.00 | | 34.00 |
| | VS | 1.000 | C4H | USD | 6.00 | | 6.00 |

(Right side paragraph block — standard bill of lading terms, illegible)

| Rate of Exchange | USD:117.2400 | | USD | | 1,625.00 | 2,155.00 | YANGMING (JAPAN) CO., LTD. |
|---|---|---|---|---|---|---|---|
| Number of Original B(s)/L | ONE | | Total | | | | |

TTLPPD (JPY):190,515                        Payable at    OSAKA          JEFFERSON        By    as agent for Yangming Marine Transport Corporation, as carrier

*:Applicable only when used for multimodal or through transportation

05/08/2006 18:02 8666483519 KUBOTA-カイガ イギ コウムブ ペ-ジ 27/



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABL
BILL OF LADING

| | |
|---|---|
| Shipper | KUBOTA CORPORATION, OSAKA, JAPAN<br>2-47, SHIKITSUHIGASHI 1-CHOME,<br>NANIWA-KU, OSAKA, 556-8601 JAPAN<br>TEL:06-6648-3146<br>FAX:06-6648-3519 |
| Consignee | MARUBENI AMERICA CORPORATION<br>515 SOUTH FIGUEROA STREET.<br>SUITE 2000<br>LOS ANGELES, CA 90071 U.S.A. |
| Notify party | 1) KUBOTA TRACTOR CORPORATION<br>3401 DEL AMO BLVD.<br>TORRANCE, CA 90503 U.S.A. |

Booking No OSAS2602862
B/L No. WAYBILL YMLUW251121382
Export References

Forwarding agent references

Point and Country of Origin of goods S02

ALSO NOTIFY 2) MARUBENI TRANSPORT SERVICE CORP.
444 WEST OCEAN BLVD, SUITE 1504,
LONG BEACH, CA 90802 U.S.A.

| Pre-carried by | Place of Receipt TOKYO CY | Onward Inland routing |
|---|---|---|
| Vessel Voy No. 16B<br>CHEROKEE BRIDGE | Port of Loading TOKYO, JAPAN | |
| Port of Discharge LONG BEACH, CA | Place of Delivery JEFFERSON, GA DOOR | Delivery status Micro Bridge Door Service (IPI) |

| MKG & NO/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement/Gross Weight(KGS) |
|---|---|---|---|
| :1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED | 38.5170M2<br>7,332.0000KGS |
| | 3 CRATES | | FREIGHT PREPAID |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS<br>************************* | LOADED ON BOARD<br>CHEROKEE BRIDGE<br>VOY: 16B<br>AT: TOKYO<br>ON: MAR/31/06<br>CRD: MAR/23/06 |
| | | INVOICE NO: T016031233 | |
| | | COUNTRY OF ORIGIN: JAPAN | |
| | | 3 I.CRATES (= 3 CRATES) [3 SETS] | |

PARTICULARS FURNISHED BY MERCHANT

YMLU3190019 40HQ FCL/FCL YML5758513 3CRATES 7,332.0000KGS 38.5170M3

Declared value $
as unknown rate, Carrier's package limitations shall not apply. See Clause 23 (2)&(3) hereof

If Merchant enters value of Goods and pays the applicable
CHI04

| ITEM NO. | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H USD | 1,385.00 | 1,385.00 | | YMLUW251121382 |
| | CY | 1.000 | C4H USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H USD | 2,115.00 | | 2,115.00 | |
| | AD | 1.000 | C4H USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H USD | 5.00 | | 6.00 | |

Place and Date of Issue OSAKA MAR/31/06
On board time MAR/31/06

This receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof...
IN WITNESS whereof, the undersigned has signed [...] of Bills of Lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

| Rate of Exchange | USD:117.2400 | | USD | 1,625.00 | 2,155.00 |
|---|---|---|---|---|---|
| Number of Original B(s)/L | ONE | | | | |

TTLPPD (JPY):190,515

payable at OSAKA JEFFERSON

YANGMING (JAPAN) CO., LTD.

By as agent for Yangming Marine Transport Corporation, as carrier

M B & E

195

05/08/2006  18:07   8666483519   KUBOTA-カイカ"イキ" ゴウムフ"   ページ 12/24



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

COPY  NON-NEGOTIABLE
BILL OF LADING

| | |
|---|---|
| Shipper<br>KUBOTA CORPORATION, OSAKA, JAPAN<br>2-47, SHIKITSUHIGASHI 1-CHOME,<br>NANIWA-KU, OSAKA, 556-8601 JAPAN<br>TEL:06-6648-3146<br>FAX:06-6648-3519 | Booking No<br>OSAS2602882<br>Export References | B/L No.<br>WAYBILL<br>YMLUF251121402   DEC.2005 |
| Consignee<br>MARUBENI AMERICA CORPORATION<br>515 SOUTH FIGUEROA STREET,<br>SUITE 2000<br>LOS ANGELES, CA 90071 U.S.A. | Forwarding agent references | |
| Notify party<br>1) KUBOTA TRACTOR CORPORATION<br>3401 DEL AMO BLVD.<br>TORRANCE, CA 90503 U.S.A. | Point and Country of Origin of goods<br>S02<br>ALSO NOTIFY   2) MARUBENI TRANSPORT SERVICE CORP.<br>444 WEST OCEAN BLVD. SUITE 1504,<br>LONG BEACH, CA 90802 U.S.A. | |

| | | |
|---|---|---|
| *Precarried by | *Place of Receipt<br>TOKYO CY | Onward inland routing |
| Vessel   Voy No.   16E<br>CHEROKEE BRIDGE | Port of Loading<br>TOKYO, JAPAN | |
| Port of Discharge<br>LONG BEACH, CA | *Place of Delivery<br>JEFFERSON, GA DOOR | Delivery status<br>Micro Bridge Door Service (IPI) |

| MKS & NOS&CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement/<br>Gross Weight |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED.<br>3 CRATES<br>KUBOTA NEW AGRICULTURAL TRACTORS<br>******************************** | 38.5170M3<br>7,332.0000KGS<br>FREIGHT PREPAID |
| NO MARK | | INVOICE NO: T016031336<br><br>COUNTRY OF ORIGIN: JAPAN<br><br>3 I.CRATES(= 3 CRATES) [3 SETS] | LOADED ON BOARD<br>CHEROKEE BRIDGE<br>VOY: 16E<br>AT: TOKYO<br>ON: MAR/31/06<br>CRD: MAR/27/06 |
| TGHU8035818 40HQ | | ECI /ECI   YML 5756430 3CRATES 7,332.0000KGS | 38.5170M3 |

| ITEM NO | CHG | RATED QTY | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| | | | | | | Place and Date of Issue<br>OSAKA | YMLUF251121402 |
| | | | | OHI04. | On Board Date | | MAR/31/06<br>MAR/31/06 |
| 620705 | OF | 1.000 | C4E | USD | 1,385.00 | 1,385.00 | |
| | CY | 1.000 | C4E | USD | 240.00 | 240.00 | |
| | OF | 1.000 | C4E | USD | 2,115.00 | | 2,115.00 |
| | AO | 1.000 | C4E | USD | 34.00 | | 34.00 |
| | VS | 1.000 | C4E | USD | 6.00 | | 6.00 |

This receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff.<br>If required by the Carrier, one set of Bill(s) of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order.<br>An endorsement on this Bill of Lading that the Goods are "On Board" shall mean that the Goods are loaded On Board the Vessel named in this Bill of Lading, or loaded On Board the facilities of any Underlying Carrier or Sub-Contractor for Carriage in accordance with the terms of the Bill of Lading, or elsewhere. WITNESSETH, the undersigned has signed Full set of Bills of Lading all of the same tenor and date, one of which being accomplished, the others to stand void.

| Rate of Exchange<br>USD:117.2400 | | | | | | |
|---|---|---|---|---|---|---|
| Number of Original B(s)/L<br>ONE | | USD | Total | 1,625.00 | 2,155.00 | |

YANGMING (JAPAN) CO., LTD.

TTLPPD (JPY):190,515

payable at

OSAKA        JEFFERSON

By _____   as agent for Yangming Marine
Transport Corporation, as carrier

* :Applicable only when used for multimodal or through transportation

M B & E

204



05/08/2006  10:02    8666483519          KUBOTA-カイカ"イギ"ョウムフ"                    ページ 24/38

# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP

COPY NON-NEGOTIABLE
BILL OF LADING

| | |
|---|---|
| **Shipper** KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | **Booking No** DEC.2005 OSAS2602861  **B/L No.** WAYBILL YMLUW251121384 **Export References** |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD, TORRANCE, CA 90503 U.S.A. | **Point and Country of Origin of goods** S02 **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP, 444 WEST OCEAN BLVD, SUITE 1504, LONG BEACH, CA 90802 U.S.A. |
| **Precarried by** | **Place of Receipt** TOKYO CY | **Onward inland routing** |
| **Vessel** Voy No. 16E CHEROKEE BRIDGE | **Port of Loading** TOKYO, JAPAN | |
| **Port of Discharge** LONG BEACH, CA | **Place of Delivery** JEFFERSON, CA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(M3) gross Weight(KGS) |
|---|---|---|---|
| 1. CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED. 3 CRATES | 38.5170M3 7,182.0000KGS |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS ************************************** INVOICE NO: T016031232 COUNTRY OF ORIGIN: JAPAN 3 I.CRATES (= 3 CRATES) [3 SETS] | FREIGHT PREPAID LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/23/06 |
| YMJU6131839-4DHQ | FCL/FCL | YML5756505 3CRATES 7,182.0000KGS | 38.5170M3 |

| | | | | | Place and Date of Issue OSAKA | MAR/31/06 |
|---|---|---|---|---|---|---|

Declared value $ and valorem rate, Carrier's package limitation shall not apply. See Clause 29 (2)(3) hereof. If Merchant enters value of Goods and pays the applicable

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO On Board Date MAR/31/06 |
|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H USD | 1,385.00 | 1,385.00 | | |
| | CY | 1.000 | C4H USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H USD | 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H USD | 6.00 | | 6.00 | |

| Rate of Exchange USD:117.2400 | | USD | 1,626.00 | 2,155.00 | YANGMING (JAPAN)CO.,LTD. |
|---|---|---|---|---|---|
| Number of Original B(s)/L ONE | Total | | | | |

TTLPPD (JPY):190,515
*Applicable only when used for multimodal or through transportation

payable at    OSAKA    JEFFERSON

By _ _ _ _ _ _ _ _ _ _ _ _
as agent for Yangming Marine Transport Corporation, as carrier

M B & E
197

05/08/2006  18:02  8666483519    KUBOTA-カイガ"イキ"コウムブ    ペ−ジ 15/38



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

### COPY NON-NEGOTIABLE
### BILL OF LADING

DEC 2005

| | |
|---|---|
| **Shipper** | **Booking No.** QSAS2602858  **B/L No.** WAYBILL YMLUW251121380 |
| KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | **Export References** |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** |
| | **Point and Country of Origin of goods** S02 |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. TORRANCE, CA 90503 U.S.A. | **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504, LONG BEACH, CA 90802 U.S.A. |
| **Precarried by** | **Place of Receipt** TOKYO CY | **Onward inland routing** |
| **Vessel** CHEROKEE BRIDGE **Voy No.** 16E | **Port of Loading** TOKYO, JAPAN | |
| **Port of Discharge** LONG BEACH, CA | **Place of Delivery** JEFFERSON, GA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

| MKG & NOS/CONTAINER NOS | NO OF PKGS | PARTICULARS FURNISHED BY MERCHANT |
|---|---|---|
| 1 CONTAINER | | DESCRIPTION OF PACKAGES AND GOODS |
| | | SHIPPER'S LOAD, COUNT AND SEALED. 3 CRATES **Measurement (CBM)** 38.5170M3 |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS ************************* **Gross Weight (KGS)** 7,332.0000KGS FREIGHT PREPAID |
| | | INVOICE NO: T016031229 LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E |
| | | COUNTRY OF ORIGIN: JAPAN AT: TOKYO ON: MAR/31/06 CRD: MAR/24/06 |
| | | 3 I. CRATES (= 3 CRATES) [3 SETS] |

CRXU9505408 40HQ    FCL/FCL    YML5600928 3CRATES 7,332.0000KGS    38.5170M3

Declared Value $ **Place and Date of Issue** OSAKA  MAR/31/06
cd valorem rate, Carrier's package limitation shall not apply. See Clause 30 (2)(a)(3) hereof    DHI04    **Go Board Data** MAR/31/06

| ITEM NO. | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO YMLUW251121380 |
|---|---|---|---|---|---|---|---|
| 520705 | OF | 1.000 | C4H USD | | 1,385.00 | | |
| | CY | 1.000 | C4H USD | 1,385.00 | | | |
| | OF | 1.000 | C4H USD | 240.00 | 240.00 | | |
| | AO | 1.000 | C4H USD | 2,115.00 | | 2,115.00 | |
| | VS | 1.000 | C4H USD | 34.00 | | 34.00 | |
| | | | | 6.00 | | 6.00 | |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff... "On Board" shall mean that the Goods are loaded On Board the Vessel named in this Bill of Lading... Division in accordance with the terms of this Bill of Lading. IN WITNESS WHEREOF, the undersigned has signed Full set of Bills of Lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

**Rate of Exchange** USD:117.2400
**Number of Original B(s)/L** ONE    USD **Total** 1,625.00    2,155.00

YANGMING (JAPAN) CO., LTD.

TTLPPD (JPY):190,515    **payable at** OSAKA    JEFFERSON

by ___ As agent for Yangming Marine Transport Corporation, as carrier

*Applicable only when used for multimodal or through transportation

M B & E

193

05/08/2006  10:07    8666483519                    KUBOTA-カイガ゛イギ゛ョウムフ゛               ペ-ジ゛ 24/24



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING                DBO2005

| Shipper | | |
|---|---|---|
| KUBOTA CORPORATION. OSAKA. JAPAN.<br>2-47, SHIKITSUHIGASHI 1-CHOME,<br>NANIWA-KU, OSAKA, 556-8601 JAPAN<br>TEL:06-6648-3146<br>FAX:06-6648-3519 | Booking No<br>OSAS2802889 | B/L No.<br>WAYBILL<br>YMLUW251121398 |
| | Export References | |

| Consignee | | |
|---|---|---|
| MARUBENI AMERICA CORPORATION<br>616 SOUTH FIGUEROA STREET,<br>SUITE 2000<br>LOS ANGELES. CA 90071 U.S.A. | Forwarding agent reference | |
| | Point and Country of Origin of goods<br>S02 | |

| Notify party | | ALSO NOTIFY | |
|---|---|---|---|
| 1) KUBOTA TRACTOR CORPORATION<br>3401 DEL AMO BLVD,<br>TORRANCE, CA 90503 U.S.A. | | 2) MARUBENI TRANSPORT SERVICE CORP.<br>444 WEST OCEAN BLVD. SUITE 1504,<br>LONG BEACH, CA 90802 U.S.A. | |

| *Precarried by | | *Place of Receipt<br>TOKYO CY | Onward Inland routing |
|---|---|---|---|
| Vessel    Voy No.  16Eflag<br>CHEROKEE BRIDGE | | Port of Loading<br>TOKYO, JAPAN | |
| Port of Discharge<br>LONG BEACH, CA | | *Place of Delivery<br>JEFFERSON, GA DOOR | Delivery status<br>Micro Bridge Door Service (IPI) |

PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement/gross Weight(kgs) |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED.<br>3 UNITS | 49.5270M3<br>7,176.0000KGS |
| NO.MARK | | KUBOTA NEW AGRICULTURAL TRACTORS<br>*************************************<br>INVOICE NO: T016031370<br>COUNTRY OF ORIGIN: JAPAN<br>3 UNITS[3 SETS] | FREIGHT PREPAID<br><br>LOADED ON BOARD<br>CHEROKE BRIDGE<br>VOY: 16E<br>AT: TOKYO<br>ON: MAR/31/06<br>CRD: MAR/27/06 |
| INKU0363983 40HQ | FCL/FCL | YML5756470 3UNITS 7,176.0000KGS | 49.5270M3 |

| Declared value $ | | | | | If Merchant enters value of goods and pays the applicable<br>ad valorem rate, Carrier's package limitation shall not apply. See Clause 23 (2)(3) hereof | Place and Date of Issue    OSAKA<br>On Board Date | MAR/31/06<br>MAR/31/06 |
|---|---|---|---|---|---|---|---|

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO    YMLUW251121398 |
|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H | USD | 1,385.00 | 1,385.00 | | The receipt, custody, carriage and delivery of the goods are<br>subject to the terms appearing on the front and back hereof<br>and on Carrier's applicable tariff.<br>If required by the Carrier, this Bill of Lading duly endorsed shall<br>be surrendered in exchange for the goods or Delivery Order.<br>In witness whereof the number of original Bills of Lading stated<br>below have been signed, one of which being accomplished, the<br>others to stand void.<br><br>YANGMING (JAPAN) CO., LTD. |
| | CY | 1.000 | C4H | USD | 240.00 | 240.00 | |
| | OF | 1.000 | C4H | USD | 2,115.00 | | 2,115.00 |
| | AO | 1.000 | C4H | USD | 34.00 | | 34.00 |
| | VS | 1.000 | C4H | USD | 6.00 | | 6.00 |

| Rate of Exchange    USD:117.2400 | | USD | 1,625.00 | 2,155.00 | |
|---|---|---|---|---|---|
| Number of Original B(s)/L    ONE | Total | | | | By _____<br>as agent for Yangming Marine<br>Transport Corporation, as carrier |
| TTLPPD (JPY):190,515 | payable at    OSAKA | JEFFERSON | | | |

*:Applicable only when used for multimodal or through transportation

05/08/2006  10:02    8666483519    KUBOTA-カイカ"イギ"ョウムフ"    ページ  21/38



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP

COPY NON-NEGOTIABLE
BILL OF LADING

| Shipper | KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8801 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | Booking No OSAS2602860 | B/L No. WAYBILL YMLUW251121381 |
|---|---|---|---|
| | | Export References | |
| Consignee | MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | Forwarding agent references | |
| | | Point and Country of Origin of goods S02 | |
| Notify party | 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. TORRANCE, CA 90503 U.S.A. | ALSO NOTIFY  2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504. LONG BEACH, CA 90802 U.S.A. | |

| Presented by | Place of Receipt TOKYO CY | Onward Inland routing |
|---|---|---|
| Vessel           Voy No.   16B | Port of Loading | |
| CHEROKEE BRIDGE | TOKYO, JAPAN . | |
| Port of Discharge LONG BEACH, CA | Place of Delivery JEFFERSON, GA DOOR | Delivery status Micro Bridge Door Service (IFI) |

PARTICULARS FURNISHED BY MERCHANT

| MKG & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(M3)/gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED. 3 CRATES | 38.5170M3 7,314.0000KGS |
| | | KUBOTA NEW AGRICULTURAL TRACTORS ********************************* | FREIGHT PREPAID |
| NO MARK | | INVOICE NO: T016031281 | LOADED ON BOARD CHEROKEE BRIDGE VOY: 16B AT: TOKYO |
| | | COUNTRY OF ORIGIN: JAPAN | ON: MAR/31/06 CRD: MAR/23/06 |
| | | 3 I CRATES (= 3 CRATES) [3 SETS] | |

| | | | | |
|---|---|---|---|---|
| BHCU4940820 40HQ | FCL/FCL | VML5600909 3CRATES 7,314.0000KGS | | 38.5170M3 |

| Declared value $ ad valorem rate. Carrier's package limitation shall not apply See Clause 20 (2)(c)(2) hereof | | | | | If Merchant enters value of Goods and pays the applicable | CH104 | | Place and Date of Issue OSAKA | MAR/31/06 |
|---|---|---|---|---|---|---|---|---|---|

| | | | | | | | | On Board Date | MAR/31/06 |

| ITEM NO | CHG | RATED AS | PER | RATE | | PREPAID | COLLECT | |
|---|---|---|---|---|---|---|---|---|
| 62970S | OF | 1.000 | C4H | USD | 1,385.00 | 1,385.00 | | This receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff. If required by the Carrier, the Bill of Lading duly endorsed must be surrendered in exchange for the goods or Delivery Order. An unsurrendered 3/3 this B/L of Lading that the Goods are "On Board" shall mean that the Goods are loaded On Board the Vessel named in the Bill of Lading or loaded On Board the feeder/on-carrying Vessel/Underlying Carrier or Sub-Contractor for Carriage in accordance with the terms of the Bill of Lading. IN WITNESS WHEREOF the undersigned has signed Full set of Bills of Lading all of the same tenor and date, one of which being accomplished, the other to stand void. |
| | CY | 1.000 | C4H | USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H | USD | 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H | USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H | USD | 6.00 | | 6.00 | |

YANGMING (JAPAN) CO.,LTD.

| Rate of Exchange | USD:117.2400 | | | | USD | 1,625.00 | 2,155.00 | |
|---|---|---|---|---|---|---|---|---|
| Number of Original B(s)/L | | ONE | | | Total | | | |

BY _____ as agent for Yangming Marine Transport Corporation, as carrier

TTLPPD (JPY):190,515    payable at    OSAKA    JEFFERSON

*:Applicable only when used for multimodal or through transportation

M B & E    194

05/007 2006  10:02    0556483519    KUBOTA-カイカ"イキ"ョウムフ"    ペ→ジ 18/38



陽明海運股份有限公司
YANG MING MARINE TRANSPORT CORP.

## COPY NON-NEGOTIABLE
## BILL OF LADING

DEC.2005

| | |
|---|---|
| **Shipper** KUBOTA CORPORATION, OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA, 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3519 | **Booking No** OSAS2602859   **B/L No.** WAYBILL YMLUW251121383 **Export References** |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO.BLVD. TORRANCE, CA 90503 U.S.A. | **Point and Country of Origin of goods** S02 **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504. LONG BEACH, CA 90802 U.S.A. |

| | | |
|---|---|---|
| **\*Pre-carried by** | **\*Place of Receipt** TOKYO CY | **Onward inland routing** |
| **Vessel** CHEROKEE BRIDGE **Voy No.** 16E | **Port of Loading** TOKYO, JAPAN | |
| **Port of Discharge** LONG BEACH, CA | **\*Place of Delivery** JEFFERSON, GA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

| MKS & NOS;CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS PARTICULARS FURNISHED BY MERCHANT | Measurement(M) Gross Weight(G) |
|---|---|---|---|
| 1 CONTAINER | 3 CRATES | SHIPPER'S LOAD, COUNT AND SEALED. KUBOTA NEW AGRICULTURAL TRACTORS ********************************** INVOICE NO: TO16031230 COUNTRY OF ORIGIN: JAPAN 3 I. CRATES (= 3 CRATES) [3 SETS] | 38.5170M3 7,314.0000KGS FREIGHT PREPAID LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/23/06 |
| NO MARK | | | |
| CRXU9829535 40HQ | FCL/FCL | YML5600920 3CRATES 7,314.0000KGS | 38.5170M3 |

| ITEM NO | QTY | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO. |
|---|---|---|---|---|---|---|---|
| 620705 | | | | | | | YMLUW251121383 |
| | OF 1.000 | C4R | USD | 1,385.00 | 1,385.00 | | |
| | CY 1.000 | C4R | USD | 240.00 | 240.00 | | |
| | OF 1.000 | C4R | USD | 2,115.00 | | 2,115.00 | |
| | VS 1.000 | C4R | USD | 6.00 | | 6.00 | |
| | AO 1.000 | C4R | USD | 24.00 | | 34.00 | |

**Declared value $** If Merchant enters value of Goods and pays the applicable ad valorem rate, Carrier's package limitation shall not apply. See Clause 29 (2)(4)(b) hereof.

**Place and Date of Issue** OSAKA    MAR/31/06
**On Board Date**    MAR/31/06

OHI04

The receipt, custody, carriage and delivery of the Goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff. If required by the Carrier, this Bill of Lading duly endorsed shall be surrendered in exchange for the goods or delivery order. An endorsement on one side of this Bill of Lading that the Goods are "On Board" shall mean that the Goods are loaded on Board the Vessel named in one side of Lading or loaded on Board the feeder/or any underlying Carrier or Ocean/or Sub-Contractor for onward carriage. In accordance with the terms of this Bill of Lading IN WITNESS WHEREOF the (number) stated Full set of Bills of Lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

| **Rate of Exchange** USD:117.2400 | | USD | | |
|---|---|---|---|---|
| **Number of Original B(s)/L** ONE | **Total** | | 1,625.00 | 2,155.00 |

YANGMING (JAPAN) CO., LTD.

TTLPPD (JPY):190,615

**payable at** OSAKA    JEFFERSON

BY _____
As agent for Yangming Marine Transport Corporation, as carrier

\* :Applicable only when used for multimodal or through transportation.

M B & E

196

05/08/2006  18:82   8666483519          KUBOTA-カイカ"イキ"コウムフ"              ページ 12/38



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING

DEC.2005

| | |
|---|---|
| **Shipper** | **Booking No** QSAS2602886 |
| KUBOTA CORPORATION, OSAKA, JAPAN | **B/L No.** WAYBILL |
| 2-47, SHIKITSUHIGASHI 1-CHOME, | YMLUW251121385 |
| NANIWA-KU, OSAKA, 556-8601 JAPAN | **Export References** |
| TEL:06-6648-3146 | |
| FAX:06-6648-3519 | |

| | |
|---|---|
| **Consignee** | |
| MARUBENI AMERICA CORPORATION | **Forwarding agent reference** |
| 515 SOUTH FIGUEROA STREET, | |
| SUITE 2000 | |
| LOS ANGELES, CA 90071 U.S.A. | |

| | |
|---|---|
| **Notify party** | **Point and Country of Origin of goods** |
| 1) KUBOTA TRACTOR CORPORATION | SO2 |
| 3401 DEL AMO BLVD. | **ALSO NOTIFY**  2) MARUBENI TRANSPORT SERVICE CORP. |
| TORRANCE, CA 90503 U.S.A. | 444 WEST OCEAN BLVD. SUITE 1504, |
| | LONG BEACH, CA 90802 U.S.A. |

| | |
|---|---|
| *Prepared by | |
| **Vessel** Voy.No. 16Eag | *Place of Receipt TOKYO CY |
| CHEROKEE BRIDGE | Port of Loading TOKYO, JAPAN |
| Port of Discharge LONG BEACH, CA | *Place of Delivery JEFFERSON, GA DOOR |
| | **Onward inland routing** |
| | **Delivery status** Micro Bridge Door Service (IPI) |

PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS/CONTAINER NOS | NO.OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(m3) gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED. | 50.0100M3 |
| | | 10 CRATES | 18,980.0000KGS |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS | FREIGHT PREPAID |
| | | ******************************* | |
| | | INVOICE NO: TO16031227 | LOADED ON BOARD |
| | | | CHEROKEE BRIDGE |
| | | COUNTRY OF ORIGIN: JAPAN | VOY: 16E |
| | | | AT: TOKYO |
| | | 10 I.CRATES (= 10 CRATES) [10 SETS] | ON: MAR/31/06 |
| | | | CRD: MAR/25/06 |

| TRLU8116442 40HQ | FCL/FCL | YML5600932 10CRATES 18,980.0000KGS | 50.0100M3 |
|---|---|---|---|

Declared value $
ad valorem rate. Carrier's package limitation shall not apply. See Clause 23 (2)&(3) hereof

| | | If Merchant enters value of Goods and pays the applicable | Place and Date of Issue OSAKA | MAR/31/06 |
|---|---|---|---|---|
| | | CHI04 | On Board Date | MAR/31/06 |

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H USD | 1,386.00 | 1,385.00 | | YMLUW251121385 |
| | CY | 1.000 | C4H USD | 240.00 | 240.00 | | |
| | DF | 1.000 | C4H USD | 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H USD | 6.00 | | 6.00 | |

The receipt, custody, carriage and delivery of the goods are
subject to the terms appearing on the face and back hereof
and to carrier's applicable tariff.
If required by the Carrier, one set of Bill of Lading duly endorsed shall
be surrendered in exchange for the goods or delivery order.
As endorsement on the Bill of Lading that the Goods are
"On Board" shall mean that the Goods are loaded on Board
the Vessel named in that Bill of Lading, or loaded On Board
the facilities of any Underlying Carrier or Sub-Contractor by
Carrier in accordance with the terms of this Bill of Lading.
IN WITNESS WHEREOF, the undersigned has signed the set
of Bills of Lading, all of the same tenor and date, one of which
being accomplished, the others to stand void.

YANGMING (JAPAN) CO., LTD.

| Rate of Exchange | USD:117.2400 | | | USD | 1,625.00 | 2,155.00 | |
|---|---|---|---|---|---|---|---|
| Number of Original B(s)L | ONE | | Total | | | | |

TTLPPD (JPY):190,515

Payable at OSAKA     JEFFERSON

By ............ as agent for Yangming Marine
Transport Corporation, as carrier

*:Applicable only when used for multimodal or through transportation

05/08/2006  10:02   8656483519              KUBOTA-カイガイイギョウムブ                 ページ 12/38



# 陽明海運股份有限公司
## YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING

DEC 2006

| | |
|---|---|
| **Shipper** | **Booking No** QSAS2502855 — **B/L No.** WAYBILL YMLUW251121385 |
| KUBOTA CORPORATION. OSAKA, JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME NANIWA-KU, OSAKA. 556-8601 JAPAN TEL:06-6648-3146 FAX:06-6648-3619 | **Export References** |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES. CA 90071 U.S.A. | **Forwarding agent references** |
| | **Point and Country of Origin of goods** SOZ |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. TORRANCE, CA 90503 U.S.A. | **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504, LONG BEACH, CA 90802 U.S.A. |

| **Pre-carried by** | **Place of Receipt** TOKYO CY | **Onward inland routing** |
|---|---|---|
| **Vessel** CHEROKEE BRIDGE  **Voy No.** 16E06 | **Port of Loading** TOKYO, JAPAN | |
| **Port of Discharge** LONG BEACH, CA | **Place of Delivery** JEFFERSON, GA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(M) Gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER | SHIPPER'S LOAD, COUNT AND SEALED, 10 CRATES | | 50.0100M3 18,980.0000KGS |
| | | KUBOTA NEW AGRICULTURAL TRACTORS ********************************** | FREIGHT PREPAID |
| NO MARK | | | LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/25/06 |
| | | INVOICE NO: TO16031227 | |
| | | COUNTRY OF ORIGIN: JAPAN | |
| | | 10 I. CRATES (= 10 CRATES) [10 SETS] | |

TRLU8116442 40HQ       FCL/FCL   YML5600932 10CRATES 18,980.0000KGS       50.0100M3

| Declared value $ ad valorem rate. Carrier's package limitation shall not apply. See Clause 23 (2)&(3) hereof | If Merchant enters value of goods and pays the applicable | Place and Date of Issue OSAKA | MAR/31/06 |
|---|---|---|---|

| ITEM NO | CHG | RATED AS | PCR | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | On Board Date MAR/31/06 |
| 620705 | OF | 1.000 | C4H | USD 1,385.00 | 1,385.00 | | |
| | CY | 1.000 | C4H | USD 240.00 | 240.00 | | |
| | OF | 1.000 | C4H | USD 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H | USD 34.00 | | 34.00 | |
| | VS | 1.000 | C4H | USD 6.00 | | 6.00 | |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and in carrier's applicable tariff. In receipt by the Carrier, the Bill of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order. An endorsement on this Bill of Lading that the goods are "On Board" shall mean that the Goods be loaded On Board the Vessel named on this Bill of Lading, or issued On Board the facilities of any Underlying Carrier or Sub-Contractor for Carriage in acceptance with the terms of this Bill of Lading. IN WITNESS WHEREOF, the undersigned has signed Five (5) of Bills of Lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

YANGMING (JAPAN) CO. , LTD.

| Rate of Exchange | USD:117.2400 | | USD | 1,625.00 | 2,155.00 | |
|---|---|---|---|---|---|---|
| Number of Original B(s)/L | ONE | **Total** | | | | By ___ as agent for Yangming Marine Transport Corporation, as carrier |
| TTLPPD (JPY):190,515 | | Payable at | OSAKA | JEFFERSON | | |

*:Applicable only when used for multimodal or through transportation

M B & E

198

05/00/2006  10:02    0656463519          KUBOTA—カイカ゛イ キ゛ョウムフ゛                    ペ゛ージ゛ 12/30



陽明海運股份有限公司
**YANG MING MARINE TRANSPORT CORP.**

COPY NON-NEGOTIABLE
BILL OF LADING

| Shipper | | |
|---|---|---|
| KUBOTA CORPORATION. OSAKA, JAPAN 2-47, SHIKITSUNIGASHI 1-CHOME, NANIWA-KU, OSAKA. 556-8601 JAPAN TEL:06-6648-3148 FAX:06-6648-3519 | **Booking No** OSAS2502855 **Export Reference** | **B/L No.** WAYBILL YMLUW251121385 |

| Consignee | Forwarding agent reference |
|---|---|
| MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | |

| Notify party | Point and Country of Origin of goods 502 |
|---|---|
| 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. TORRANCE, CA 90503 U.S.A. | **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504. LONG BEACH, CA 90802 U.S.A. |

| *Presented by | *Place of Receipt TOKYO CY | Onward inland routing |
|---|---|---|
| Vessel    Voy No.    18E CHEROKEE BRIDGE | Port of Loading TOKYO, JAPAN | |
| Port of Discharge LONG BEACH, CA | *Place of Delivery JEFFERSON, GA. DOOR | Delivery status Micro Bridge Door Service (IPI) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(m) gross Weight(kg) |
|---|---|---|---|
| 1 CONTAINER | | SHIPPER'S LOAD, COUNT AND SEALED. 10 CRATES KUBOTA NEW AGRICULTURAL TRACTORS ************************************ | 50.0100M3 18,980.0000KGS FREIGHT PREPAID |
| NO MARK | | INVOICE NO: T016031227 COUNTRY OF ORIGIN: JAPAN 10 I. CRATES (= 10 CRATES) [10 SETS] | LOADED ON BOARD CHEROKEE BRIDGE VOY: 18E AT: TOKYO ON: MAR/31/06 CRD: MAR/25/06 |

TRLU8116442 40HQ          FCL/FCL    YML5600932 10CRATES 18,980.0000KGS                    50.0100M3

**Declared value &**
ad valorem rate. Carrier's package limitation shall not apply. See Clause 23 (2)&(3) hereof    If Merchant enters value of Goods and pays the applicable

| Place and Date of Issue OSAKA | MAR/31/06 |
|---|---|
| On Board Date | MAR/31/06 |

| ITEM NO | CHG | RATED AS | PCR | RATE | PREPAID | COLLECT | B/L NO. YMLUW251121385 |
|---|---|---|---|---|---|---|---|
| 620705 | OF | 1.000 | C4H USD | 1,385.00 | 1,385.00 | | |
| | CT | 1.000 | C4H USD | 240.00 | 240.00 | | |
| | OF | 1.000 | C4H USD | 2,115.00 | | 2,115.00 | |
| | AO | 1.000 | C4H USD | 34.00 | | 34.00 | |
| | VS | 1.000 | C4H USD | 6.00 | | 6.00 | |

DHIC4

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff. If required by the Carrier, one Bill of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order. An acknowledgement on one Bill of Lading that the copies are "On Board" shall mean that the Goods are marked On Board the Vessel named in this Bill of Lading, as issued by any Underlying Carrier or Sub-Contractor for Carriage in accordance with the terms of this Bill of Lading. IN WITNESS WHEREOF, the undersigned has signed Full set of Bills of Lading, all of the same tenor and date, one of which being accomplished, the others to stand void.

| Rate of Exchange USD:117.2400 | USD | 1,625.00 | 2,155.00 | YANGMING (JAPAN) CO., LTD. |
|---|---|---|---|---|
| Number of Original B(s)/L    ONE | Total | | | |

TTLPPD (JPY):190,515

| | Payable at OSAKA | JEFFERSON | By    As agent for Yangming Marine Transport Corporation, as carrier |
|---|---|---|---|

* :Applicable only when used for multimodal or through transportation

M B & E

198

05/08/2006  18:02  8666483519  KUBOTA－カイカ"イ キ"コウムフ"  ペ゜ージ゛ 69/30



陽明海運股份有限公司
YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING          DEC.2005

| | |
|---|---|
| **Shipper** | **Booking No.** OSAS2602855    **B/L No.** WAYBILL YMLUW251121378 |
| KUBOTA CORPORATION. OSAKA. JAPAN 2-47, SHIKITSUHIGASHI 1-CHOME, NANIWA-KU, OSAKA. 556-8601 JAPAN TEL:06-6648-3148 FAX:06-6648-3519 | **Export References** |
| **Consignee** MARUBENI AMERICA CORPORATION 515 SOUTH FIGUEROA STREET, SUITE 2000 LOS ANGELES, CA 90071 U.S.A. | **Forwarding agent references** |
| | **Point and Country of Origin of goods** 502 |
| **Notify party** 1) KUBOTA TRACTOR CORPORATION 3401 DEL AMO BLVD. . TORRANCE, CA 90503 U.S.A. | **ALSO NOTIFY** 2) MARUBENI TRANSPORT SERVICE CORP. 444 WEST OCEAN BLVD. SUITE 1504, LONG BEACH, CA 90802 U.S.A. |

**Procured by**

| | | |
|---|---|---|
| **Vessel**   **Voy No.** 16E CHEROKEE BRIDGE | **Place of Receipt** TOKYO CY | **Onward inland routing** |
| **Port of Loading** TOKYO, JAPAN | | |
| **Port of Discharge** LONG BEACH, CA | **Place of Delivery** JEFFERSON, CA DOOR | **Delivery status** Micro Bridge Door Service (IPI) |

| MKS & NOS/CONTAINER NOS | NO OF PKGS | PARTICULARS FURNISHED BY MERCHANT DESCRIPTION OF PACKAGES AND GOODS | Measurement/ gross Weight(KGS) |
|---|---|---|---|
| 1 CONTAINER | | | 50.0100M3 18,980.0000KGS |
| | | SHIPPER'S LOAD, COUNT AND SEALED. 10 CRATES | |
| NO MARK | | KUBOTA NEW AGRICULTURAL TRACTORS ************************* | FREIGHT PREPAID |
| | | INVOICE NO: TO16031226 | LOADED ON BOARD CHEROKEE BRIDGE VOY: 16E AT: TOKYO ON: MAR/31/06 CRD: MAR/22/06 |
| | | COUNTRY OF ORIGIN: JAPAN | |
| | | 10 I.CRATES (= 10 CRATES) [10 SETS] | |
| YMLU8223405 40HQ | FCL/FCL | YML5600903 10CRATES 18,980.0000KGS | 50.0100M3 |

| ITEM NO | CNO | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| | | | | | Place and Date of Issue OSAKA | On Board Date MAR/31/06 | MAR/31/06 |
| | | | | OHIQ4 | | | |
| 620705 | OF | 1.000 | C4H USD | | | | YMLUW251121378 |
| | CY | 1.000 | C4H USD | 1,385.00 | 1,385.00 | | |
| | OF | 1.000 | C4H USD | 240.00 | 240.00 | | |
| | AO | 1.000 | C4H USD | 2,115.00 | | 2,115.00 | |
| | VS | 1.000 | C4H USD | 34.00 | | 34.00 | |
| | | | | 6.00 | | 6.00 | |

Declared value $ ad valorem rate, Carrier's package limitation shall not apply. See Clause 23 (24)(2) hereof

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff. If required by the Carrier, this Bill of Lading duly endorsed shall be surrendered in exchange for the goods or Delivery Order. On surrender as any Bill of Lading that the Goods are "On Board" shall mean that the Goods are loaded On Board the Vessel named in this Bill of Lading, or loaded the faster for any Underlying Carrier or Sub-Contractor for Carriage in accordance with the terms of the Bill of Lading. IN WITNESS WHEREOF, the undersigned has signed Full set of Bills of Lading all of the same tenor and date, one of which being accomplished, the others to stand void.

| Rate of Exchange USD:117.2400 | | | USD | 1,825.00 | 2,155.00 | |
| Number of Original B(s)/L | ONE | Total | | | | |

YANGMING (JAPAN) CO., LTD.

TTLPPD (JPY):190,515

By _____
   as agent for Yangming Marine Transport Corporation, as carrier

* Applicable only when used for multimodal or through transportation

| Payable at | OSAKA | JEFFERSON |

M B & E

191

` INC. SCAC CODE:NPNE
950 NORTH EDGEWOOD AVENUE,
WOOD DALE,IL 60191 U.S.A.
TEL:(630)350-0202 FAX:(630)350-1038

NIPPON EXPRESS U.S.A.(ILLINOIS)
INC. SCAC CODE:NPNE
950 NORTH EDGEWOOD AVENUE,
WOOD DALE,IL 60191 U.S.A.
TEL:(630)350-0202 FAX:(630)350-1038

NIPPON EXPRESS U.S.A.INC.
ATLANTA BRANCH 5176
PELICAN DRIVE,ATLANTA,GA
30349 U.S.A. TEL:770-996-0702


                        YOKOHAMA
            16E
CHEROKEE BRIDGE         TOKYO

LONG BEACH              ATLANTA          (DEPOT/RAMP)


            4 CTNR    SHIPPER'S LOAD AND COUNT.              210.927 CBM
                      S.T.C.:  7570 CARTONS                 57300.000 KGS
-------------------------------------------------------------------------
AS PER                AUTOMOTIVE COMPONENT PARTS       FREIGHT PPD
ATTACHED SHEET        INVOICE NO.UG62X402, UG63X102, UG63
                      X201,                            LOADED ON M/V:
                      UG602403, UG63TR02, UG603102, UG603  CHEROKEE BRIDG
                      201                               VOY: 16E
                      ORDER NO. 88557, 88549, 88550, 8855  AT:  TOKYO
                      6,                                ON:  MAR/30/06
                      88234, 87978, 88353, 88449, 88352,   CRD: MAR/24/06
U.G.C.                88461,
                      88114, 88460, 88223, 88627, 88022
ATLANTA               H.B/L NO. YOAT4406563
C/NO.   02X35         H/S COCE: 840991
MADE IN JAPAN
YMLU4745947 40'DC FCL/FCL YML5792961   1403CARTONS 16349.00KGS 49.372M
YMLU4892676 40'DC FCL/FCL YML5492810   2162CARTONS 15779.00KGS 55.557M
YMLU4455172 40'DC FCL/FCL YML5792974   2160CARTONS 14653.00KGS 55.557M
TEXU7204601 40'DC FCL/FCL YML5792837   1845CARTONS 10519.00KGS 50.441M
                                         YOKOHAMA        MAR/30/06
                                                         MAR/30/06
                                                      YMLUW261105356

SEE ATTACHED LIST ...


                                        Manwa & Co., Ltd.


                        USD    14901.00
            3           JPY   116000.00

See Attached List ...          YOKOHAMA



B/L NO: YMLUW261105356      MFST NO:      003                    PAGE: 1

MARKS & DESCRIPTION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                          (103 STEEL CRATES( 3,719 CARTONS) &
                          74 PALLETS(3,851 CARTONS))
U.G.C.

ATLANTA
C/NO.   03X01
MADE IN JAPAN
U.G.C.

ATLANTA
C/NO.   03X14-03X18
        03X23-03X25
MADE IN JAPAN


U.G.C.
ATLANTA
C/NO.   03803,03805-
03806,
        03815
MADE IN JAPAN


U.G.C.

ATLANTA
C/NO.   01522,02623,
02702,
02820,02898-02899
MADE IN JAPAN


U.G.C.

ATLANTA
C/NO.   03040-03045,
03047,
03068-03099,03100-03
109,
03110-03117,03136-03
137,
03190,03195-03197,03
210
MADE IN JAPAN
U.G.C.

ATLANTA
C/NO.   03212-03216,

B/L NO: YMLUW261105356          MFST NO:          003                    PAGE: 2

MARKS & DESCRIPTION
------------------------------------------------------------------------------
03244,
03246-03257,03310,
03324-03327,03334,
03337-03344,03345-03
376,
03377-03392,03396-03
408
MADE IN JAPAN


FREIGHT/CHARGE DETAILS
------------------------------------------------------------------------------
            OF  4.000C4DUSD 3685.00      14740.00
INCL CF.BK.DC.CZ.VS.FS.
            AO  4.000C4DUSD   34.00        136.00
.ALL PPD.WAYBILL,RAMP
            CY  4.000C4DJPY   29000    116000.00
            SQ  1.000CSNUSD   25.00         25.00


** END OF ATTACHED LIST **

```
********** 404 DATA PORTION **********

YMLU4455172  40' 83516E/060323 W261105356    FROM:LONBTO:AUL  404 SENT:060406
ROUTING WE ASSIGNED : AUL ALT SAV Y
                      ATSF(AAX)/NS
                      FMRAMP:LOSAN      TORAMP:DALAS      ROUTESEQ:R  BNSF
                      FMRAMP:DALAS      TORAMP:AUL        ROUTESEQ:1  NS
```

```
********** 404 DATA PORTION **********

TEXU7204601  40' 83516E/060323 W261105356   FROM:LONBTO:AUL  404 SENT:060406
ROUTING WE ASSIGNED : AUL ALT SAV Y
                        ATSF(AAX)/NS
                        FMRAMP:LOSAN    TORAMP:DALAS    ROUTESEQ:R  BNSF
                        FMRAMP:DALAS    TORAMP:AUL      ROUTESEQ:1  NS
```

SUMITRANS CORPORATION NEW YORK
OFFICE 3333 NEW HYDE PARK ROAD
SUITE 406 NEW HYDE PARK NY 11042
U.S.A.ATTN:MR.TOCHIMOTO/MS.NANCY
DONADO TEL(516)684-3113/FAX(516)365
-6855
SUMITRANS CORPORATION NEW YORK
OFFICE 3333 NEW HYDE PARK ROAD
SUITE 406 NEW HYDE PARK NY 11042
U.S.A.ATTN:MR.TOCHIMOTO/MS.NANCY
DONADO TEL(516)684-3113/FAX(516)365
-6855

                        KOBE
          16E
CHEROKEE BRIDGE        KOBE

LONG BEACH            GRIFFIN            (DOOR SERVICE)

```
              7 CTNR   SHIPPER'S LOAD AND COUNT.           286.179 CBM
                       S.T.C.:   495 CARTONS           32823.000 KGS
-------------------------------------------------------------------
H A  (IN DIA)          185 UNITS OF SUSHI CASES &      FREIGHT PPD
                       310 UNITS OF ICE MAKERS
C/NO.1-494,496.        HS CODE:841850,841869           LOADED ON M/V:
MADE IN JAPAN                                          CHEROKEE BRIDG
                       (495 PACKAGES)                  VOY: 16E
                       (309 PALLETS(309 CARTONS) & 186 CAR   AT:  KOBE
                       TONS)                           ON:  MAR/28/06
                       ==============                  CRD: MAR/22/06
                         495 CARTONS
```

```
TGHU2737334 20'DC FCL/FCL YML5785854      53CARTONS  1834.00KGS 12.726M
YMLU4746964 40'DC FCL/FCL YML5785851     132CARTONS  6176.00KGS 43.734M
YMLU4515760 40'DC FCL/FCL YML5785926      84CARTONS  6160.00KGS 54.348M
UESU4349581 40'DC FCL/FCL YML5785931      58CARTONS  4541.00KGS 41.475M
YMLU4889482 40'DC FCL/FCL YML5785849      56CARTONS  4704.00KGS 44.632M
PRSU4053796 40'DC FCL/FCL YML5785832      56CARTONS  4704.00KGS 44.632M
YMLU4864801 40'DC FCL/FCL YML5785937      56CARTONS  4704.00KGS 44.632M
                                          OSAKA           MAR/28/06
                                                          MAR/28/06
                                                    YMLUW251752204
```

603205
SEE ATTACHED LIST ...

                                          Manwa & Co., Ltd.

```
                     USD    25686.00
          3          JPY   195000.00
```

See Attached List ...          OSAKA



EXHIBIT 3

B/L NO: YMLUW251752204        MFST NO:        002                        PAGE: 1

FREIGHT/CHARGE DETAILS
------------------------------------------------------------------------
603205    OF   1.000C2DUSD 2820.00       2820.00
603205    OF   6.000C4DUSD 3760.00      22560.00
          AO   1.000C2DUSD   16.00         16.00
          AO   6.000C4DUSD   33.00        198.00
          CY   1.000C2DJPY   21000      21000.00
          CY   6.000C4DJPY   29000     174000.00
          SQ   2.000CSNUSD   25.00         50.00
          VS   1.000C2DUSD    6.00          6.00
          VS   6.000C4DUSD    6.00         36.00

** END OF ATTACHED LIST **

```
********** 404 DATA PORTION **********

YMLU4515760  40' 83516E/060323 W251752204   FROM:LONBTO:AUL  404 SENT:060406
ROUTING WE ASSIGNED : AUL ALT SAV Y
                      ATSF(AAX)/NS
                      FMRAMP:LOSAN    TORAMP:DALAS     ROUTESEQ:R  BNSF
                      FMRAMP:DALAS    TORAMP:AUL       ROUTESEQ:1  NS
```

```
********** 404 DATA PORTION **********

YMLU4746964  40' 83516E/060323 W251752204    FROM:LONBTO:AUL ˉ404 SENT:060406
ROUTING WE ASSIGNED : AUL ALT SAV Y
                      ATSF(AAX)/NS
                      FMRAMP:LOSAN     TORAMP:DALAS      ROUTESEQ:R  BNSF
                      FMRAMP:DALAS     TORAMP:AUL        ROUTESEQ:1  NS
```

```
********** 404 DATA PORTION **********

YMLU4889482  40' 83516E/060323 W251752204   FROM:LONBTO:AUL  404 SENT:060406
ROUTING WE ASSIGNED : AUL ALT SAV Y
                      ATSF(AAX)/NS
                      FMRAMP:LOSAN    TORAMP:DALAS    ROUTESEQ:R  BNSF
                      FMRAMP:DALAS    TORAMP:AUL      ROUTESEQ:1  NS
```

RECEIVED by the Carrier from the Merchant in apparent good order and condition (unless otherwise noted herein) the total number of packages or other shipping units specified in the box marked "No. of Pkgs. or Containers" for Carriage subject to all the terms and conditions hereof (including the terms and conditions on the reverse hereof and the terms and conditions of Carrier's applicable Tariff) from the place of receipt or the port of loading, whichever is applicable, to the port of discharge or place of delivery, whichever is applicable. In accepting this Bill, the Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions on the face and back hereof, whether written, typed, stamped or printed, as if signed by the Merchant, any local custom or privilege to the contrary notwithstanding, and agrees that all agreements of freight engagements for the shipment of the goods are superseded by this bill.

**1. DEFINITION**

**2. CARRIER'S TARIFF**

**3. MERCHANT'S WARRANTY**

**4. SUBROGATION AND ASSIGNMENT OF SERVANTS, AGENTS, STEVEDORES AND OTHER SUB-CONTRACTORS**

**5. SCOPE OF THE VOYAGE**

**6. LIBERTY CLAUSE**

**7. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT**

**8. CONTAINER PACKED BY CARRIER**

**9. CONTAINER PACKED BY MERCHANT — RESPONSIBILITY**

**10. CARRIER'S CONTAINER — MERCHANT'S RESPONSIBILITY**

**11. SPECIAL CONTAINERS AND PERISHABLE GOODS**

**12. STOWAGE ON DECK**

**13. LIVE ANIMALS, PLANTS AND PERISHABLE GOODS**

**14. DANGEROUS GOODS AND CONTRABAND**

**15. VALUATION GOODS**

**16. LOSS, CONTAMINATION, ETC.**

**17. GOVERNMENT REGULATION AND PENALTY**

**18. NOTIFICATION AND DELIVERY**

**19. FREIGHT AND CHARGES**

**20. GENERAL AVERAGE AND SALVAGE**

**21. BOTH TO BLAME COLLISION**

**22. NOTICE OF CLAIM AND TIME FOR SUIT**

**23. LIMITATION**


EXHIBIT 4

## INTERMODAL TRANSPORTATION AGREEMENT

THIS AGREEMENT is made and entered into this _12th_ day of _August_, 2004, by and between **NORFOLK SOUTHERN RAILWAY COMPANY**, acting for itself and its rail carrier subsidiaries, having an office at Three Commercial Place, Norfolk, VA 23510 (hereinafter referred to as "NS"); and **Yang Ming (America) Corp.** having an office at 525 Washington Blvd., 25th floor, Jersey City, NJ 07310, as agent for **Yangming Marine Transport Corporation, Ltd.**, 271 Ming De 1st Rd. Chidu, Keelung, Taiwan 206, R.O.C. and Yangming (UK) Ltd., 2nd Floor, Valentines House, 51-69 Ilford Hill, Essex IG1 2DG, England (hereinafter referred to as "Yangming").

### RECITALS:

The parties desire to enter into an agreement whereby NS shall provide rail transportation of containers between points shown as origins and destinations in Exhibit 1.

NS shall perform the transportation services at the favorable rates described herein in exchange for Yangming's commitment to tender to NS certain minimum volume of loaded and empty containers for linehaul via NS, and to pay NS the charges specified in this Agreement.

### AGREEMENT:

NOW, THEREFORE, for and in consideration of the provisions herein contained, the parties agree as follows:

1.    TERM.

This Agreement will have a term commencing on June 1st, 2004 and continuing through May 31, 2009. This agreement may be renewed upon mutual agreement of the parties for another five year term, provided such an agreement is reached no less than 60 days prior to the end of the initial term. If an agreement concerning renewal is not achieved, then this agreement will terminate on May 31, 2009.

2.    SCOPE OF SERVICE.

Except as otherwise stated herein, all loads or empties shipped and all transportation provided hereunder will be subject to the following documents:

A.    Norfolk Southern Railway Company Exempt Intermodal Transportation Rules Circular No. 2, or successor document, in

Page 1                                    07/29/04



EXHIBIT 5

NSGENE 0001

effect on the date of tender for each shipment hereinafter referred to as the "Rules Circular").

B. Terms and conditions of the bill of lading in the form set forth in the Rules Circular which is in effect on the date of tender of a container for rail transportation.

3. RATES.

Subject to the terms and conditions of this Agreement, Quote Number NSPQ 4395, and Exhibit 1, attached hereto and made a part hereof as if set forth fully in this Agreement, NS will provide rail transportation service as follows:

A. NS will provide rail transportation between any two (2) points in Exhibit 1 at the applicable base rate listed in Exhibit 1 that are in effect on the date of tender of the shipment at the origin point. If no base rate is listed in Exhibit 1 between two (2) points, special quotations or the linehaul rate between the two (2) points in NS's TOFC Rate Matrix 8407 series in effect on the date of tender of the shipment will apply.

B. The base rates in Exhibit 1 will govern until May 31, 2005. Thereafter, the base rates will be adjusted annually, beginning June 1, 2005, and on June 1 of any subsequent year while this Agreement remains in effect. The amount of each annual increase of the base rates will be equal to the amount of the increase specified in the unadjusted Rail Cost Adjustment Factor (RCAF) as of the date prior to June 1, which is the closest to June 1. The unadjusted RCAF shall be compared with the previous year's unadjusted RCAF to determine the amount of the increase, but said increase shall not exceed three and one-half percent (3.5%) per year.

C. The rates in Exhibit 1 may be used by Yangming, but are not applicable to traffic which is (i) moving for any steamship lines other than Yangming; (ii) controlled by any steamship lines other than Yangming. Any third party business related to other steamship line controlled traffic must be agreed upon by the parties under a separate rate authority and must move under a special quote, with such rates to be negotiated between the parties.

D. Rates for the transportation of materials in tank containers are included in the applicable NSPQ 50227 and notwithstanding anything contained in this Agreement to the contrary may be adjusted upon 30 days written notice.

NSGENL 0002

F.    Rates for the transportation of coiled metals in containers (to the extent permitted by the Rules Circular) are included in the applicable NSPQ 17500.  Notwithstanding anything contained in this Agreement to the contrary, the rates for the transportation of coiled metals in containers may be adjusted upon 30 days written notice.

G.    Traffic moving under the rates listed in Exhibit 1 and in NSPQ 8407 shall be subject to fuel related surcharges adopted by NS from time to time.  Fuel surcharges may be applied with five (5) days' notice.  NS agrees that Fuel Surcharges on rates contained in this Agreement will only apply if a general fuel surcharge ("FSC") is declared by NS on Intermodal shipments.  If NS declares a general FSC of less than 5.1%, then the Yangming fuel surcharge will be equal to the NS general FSC.  If NS declares a general FSC between 5.1 and 9.9% (inclusive), then the fuel surcharge on Yangming traffic covered by this Agreement shall only be 5%.  If NS declares a general FSC that exceeds 9.9%, then the Yangming fuel surcharge will equal the NS general FSC.  The Yangming fuel surcharge shall be removed when the NS general FSC is lifted by NS.

H.    At its discretion, NS may eliminate a lane or lanes covered by this Agreement due to a redesign of service.  If this occurs, rates for this lane(s) shall be suspended.  However, if service for such lane(s) is resumed and the interchanged point for such lanes(s) is not changed, then such suspended rate shall be reactivated upon the request of Yangming.

4.    EQUIPMENT.

A.    Yangming will furnish containers and chassis at the expense of Yangming.  Except for such charges caused by the negligent act or negligent omission of NS, NS will not be responsible for any per diem, mileage, rental, or other such use or ownership charge applicable to said containers or chassis ("Ownership Charge").  In the event such Ownership Charges are caused by the negligent act of, or negligent omission by NS, then NS shall be responsible for such charges in direct proportion to the negligence of NS as compared to the negligence of all other actors in causing the imposition of such Ownership Charge.  If any owner, lessor, lessee, or other party makes any claim against NS for any aforesaid Ownership Charge applicable to any container or chassis furnished by Yangming, NS will refer the claim to Yangming who will resolve it with the appropriate party.

B.    In the event that equipment (containers and/or chassis) provided by Yang Ming is either lost, damaged or destroyed beyond repair while in possession of NS, Yangming shall be entitled to reimbursement as follows:

NSGENL 0003

(1)  On Yangming-owned equipment, the amount of reimbursement due will be the cost to repair the equipment to serviceable standards or the depreciated value of the equipment, whichever is less.  Depreciated value of the equipment shall be determined by using applicable AAR cost factors to determine the reproduction cost, less depreciation of ten percent (10%) per year, for each year the equipment has been in service up to a maximum of nine (9) years.  Yangming-owned equipment would retain a residual value of ten percent (10%) on all owned equipment.

(2)  On any other equipment provided by Yangming, a copy of the bill for damages or replacement cost will be submitted to NS along with a copy of the bill showing Yangming has paid lessor/owner in full for damages to, or replacement of, equipment.  Yangming shall be reimbursed in full by NS not more than sixty (60) days from the date the bill is submitted to NS or Yangming for payment.

(c)  Notwithstanding anything in the foregoing to the contrary, NS shall not be liable for consequential, punitive, indirect or special damages.

5.  VOLUME COMMITMENT AND INCENTIVES.

A.  For the purposes of this Agreement, a "Contract Period" shall be a twelve month period of time beginning with June 1.

B. During each Contract Period beginning with June 1, 2004, Yangming shall tender to NS a minimum of 90% of the traffic that it transports or arranges for transportation in the lanes listed in Exhibit 1, which may move via NS at Yangming's discretion.  If the total number of such containers tendered to NS is less than 90% of the total available, then Yangming shall pay NS liquidated damages of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ per container for each container necessary to fulfill said minimum commitment.

B.  As an incentive for future growth, at the end of each Contract Period, NS will refund to Yangming a percentage of Yangming's linehaul revenue paid to NS based upon the following schedule:  .

| If Yangming's Volume Increases by: | NS will refund to Yangming: |
| --- | --- |
| 1,500 units over base volume | 1.0% of linehaul revenue Yangming has paid pursuant to this agreement for the prior year |
| 3,000 units over base volume | 1.5% of linehaul revenue Yangming has paid pursuant to this agreement for the prior year |

07/29/04

REDACTED

NSGENL 0004

The base volume of the first Contract Period will be equal to the total volume moved by Yangming in the lanes listed in Exhibit 1 during the 12 month period immediately proceeding the effective date of this Agreement (June 1, 2003 through May 31, 2004). Thereafter, the total volume moved in the lanes listed in Exhibit 1 during the previous Contract Period, will be used as the base volume for the following Contract Period.

### 6. Service Provision

NS and Yangming have agreed upon train schedules for particular lanes listed in Exhibit 2, and NS will have a goal of meeting those schedules 80% of the time during the term of this Agreement. On time is defined as being within two hours of scheduled availability, as that term is described in the applicable schedules. Measurements will be made on a container-by-container basis, and will not apply to containers for which there is incomplete paperwork, which have missed the cut-off at origin, are bad ordered, are subject to force majeure conditions, or other conditions not directly controlled by NS.

In the event NS does not meet the performance standard in one or more of the applicable lanes as measured over a two calendar month period, Yangming shall have the right, upon written notice, to temporarily divert traffic from NS in the applicable lane. Upon receipt of written notice Yangming, NS shall have 60 days to respond to such notice by providing and implementing action plans to improve service to acceptable level.

If NS has returned service to an acceptable level, then Yangming will return the diverted traffic to NS over the applicable lane.

If, after this 60 day period, however, NS's service does not meet the performance standard described above, Yangming shall have the right to divert such traffic in such lanes on an indefinite basis, until such time as NS demonstrates, by providing applicable data, to YangMing that the train service performance over the applicable lane has improved to 80% for two months, at which time then Yangming shall return the diverted traffic to NS over the applicable lane, as soon as is practical.

### 7. PITTSBURGH TERMINAL SPACE.

A. NS will guarantee Yangming 30 daily slots at the Pittsburgh Intermodal facility for storage of empty containers. Initial lift to/from the car is included in the linehaul rate. Yangming understands that empty units will not always be left on pool chassis and can be grounded at NS' discretion. All subsequent lifts shall have a ███fee per lift. Any special

REDACTED

NSGENL 0005

request for lifts shall also be subject to a ■■■ charge. Should
Yangming exceed the daily slot limit, all units beyond the limit
will be subject to ■■■ storage charge per unit per day.

B. A slot is defined as a grounded empty 20' or 40'
container, a 20' or 40' chassis bare or mounted.

C. The allocation of 30 free spaces at Pittsburgh in
part 7.A above represents a higher number of spaces than
previously allocated to Yangming. This higher allocation is
based upon the anticipation that outbound loaded volumes from
Pittsburgh will increase in the future. The outbound loaded
volumes will be reviewed each ninety (90) days to check to see if
such an increase in volume develops. If there is not a
significant and consistent increase in the loaded outbound
volumes from Pittsburgh, the space allocation will reduced to 20
spaces.

## 8. E-RAIL STORAGE.

Storage for loaded and empty containers at E-Rail will be
negotiated directly between Yangming and The Rail-Bridge
Terminals Corporation. Linehaul rates in Exhibit 1 to and from
E-Rail include only haulage and delivery to and from this
terminal. All lifts, CY service, equipment management, gate and
other accessorial charges and services must be negotiated
separately by Yangming and the terminal operator of E-Rail. NS
is not the terminal operator, and does not include any of the
above charges in Yangming's rates.

## 9. CUSTOMS BONDS.

All in bond shipments tendered to NS by Yangming will
be under the Customs bond of Yangming. If contrary to the intent
of this Agreement, the understanding of Yangming and NS, and
applicable Customs regulations, any governmental employee,
representative, or agent treats any container tendered to NS by
Yangming as being covered by the Customs bond of NS, Yangming
will perform all acts required to permit the container to clear
Customs and will indemnify and hold NS harmless from and against
claims, demands, losses, damages, penalties, fines, judgments,
costs, and expenses, including but not limited to litigation
costs and attorneys' fees, resulting directly or indirectly from
any failure by Yangming to comply with all applicable Customs
regulations.

## 10. HAZARDOUS MATERIALS.

A. Yangming and NS will comply with all applicable
international, federal, state, and local laws, rules,

REDACTED

regulations, and ordinances governing air, water, noise, solid waste, hazardous material and commodities, and other pollution. Tender of a hazardous material or commodity for rail transportation and handling of hazardous materials and commodities during rail transportation will be governed by the Rules Circular, except as otherwise stated in this subsection.

B.    Before tendering for rail transportation a container that contains a hazardous material or commodity, Yangming will:   (1) comply or arrange for compliance with all applicable federal regulations governing the transportation of hazardous materials and commodities, including but not limited to regulations concerning notification, loading, blocking and bracing, placarding, commodity mix, and commodity containers; (2) provide to NS identification by proper shipping name and hazardous class of each hazardous material and commodity; and (3) identify the specific container in which each hazardous material or commodity is tendered, in accordance with the Rules Circular.

C.    If a spill, release, or leakage from a container of any hazardous material or commodity, whether or not sudden in nature, occurs during rail transportation, NS will isolate the container or remove from the train the rail car holding the container, will take any immediate emergency action, and will make the notifications required by law to the appropriate agencies.  Yangming will notify the originating shipper and upon request of the originating shipper, will assist in the cleanup response.  No container leaking a hazardous material or commodity will be permitted to leave a NS intermodal facility until responsibility for the leaking container and the lading therein is determined, until the leakage is stopped, and until all notifications required by law are made.

D.    In addition to any allocation of responsibility in the Rules Circular, if Yangming or its customers fail to comply fully with or perform its undertakings under this subsection for a hazardous material or commodity in a container or if a hazardous material or commodity is spilled, released, or leaked from a container during rail transportation and complete information required by applicable federal regulations was not provided to. NS before the container was tendered for rail transportation, Yangming will indemnify and hold harmless NS against all claims and all liability, cost, and expense of cleanup resulting from the nature or condition of the hazardous material or commodity or from spill, release, or leakage of the hazardous material or commodity.

11.    FORCE MAJEURE.

NSGENL 0007

If any party is unable to meet its obligations under this Agreement because of an occurrence beyond its control and arising without its fault or negligence, including but not limited to war, insurrection, riot, rebellion, or acts of the public enemy or lawful authorities; strike, lockout, or walkout; embargo; fire, explosion, or flood; Act of God; authority of law; or any other of NS or Yangming, said obligations of the party or parties affected by the Force Majeure occurrence will be excused for the duration of said occurrence.    The party declaring the existence of Force Majeure will notify the other parties in writing promptly that Force Majeure exists, the nature of Force Majeure, and when Force Majeure is terminated.    In the event of Force Majeure, the minimum volume commitment for the Contract Period in which the Force Majeure incident occurs shall be reduced proportionately.    The party experiencing Force Majeure will use its best efforts to remove the causes of Force Majeure and will resume performance of its obligations under this Agreement immediately after said causes are removed.    The suspension of any obligation under this Agreement as a result of the existence of Force Majeure will not cause the term of this Agreement to be extended and will not affect any rights or obligations accrued under this Agreement prior to existence of Force Majeure.

12.    LOSS AND DAMAGE.

A.    Except as provided in subsection B of this section, NS will be liable for and will hold Yangming harmless against loss of or damage to property of the parties to this Agreement or third parties and injury to or death of third parties, including but not limited to officers, employees, and agents of the parties to this Agreement or third parties, only to the extent that the sole proximate cause of said loss, damage, injury, or death is the negligence of NS in the performance of the services hereunder.

B.    (1)    NS will be liable for and will hold Yangming harmless against loss of or damage to freight in containers transported at the rates and charges provided in this Agreement and Exhibit 1 only to the extent that the sole proximate cause of said loss or damage is a railroad accident, derailment, or collision between railroad equipment negligently caused by NS. NS's liability for freight loss and damage will be subject to the dollar limitation set forth in the Rules Circular at the time a claim for freight loss and damage is made.

(2)    At its sole discretion and upon written notice to NS, Yangming may elect for NS's liability for freight loss and damage to be at the level established pursuant to 49 U.S.C. ∋ 11707, subject to establishment by NS and payment by Yangming of a separate linehaul rate for transportation of said

NSGENL 0008

freight in containers under this Agreement at a level higher than the base rates provided in Exhibit 1.

(3)  Yangming will comply with the time limits and procedures for making claims set forth in the Rules Circular at the time a claim for freight loss and damage is made.  Upon written notice to NS, Yangming may assign to third parties its right to make claims against NS for freight loss and damage.

C.  In the event where loss or damage is caused by the mutual negligence of the parties, the liabilities of each will be shared, and determined on the basis of the relative faults of the parties and the percent of the liabilities incurred as a result of the relevant negligent acts or omissions by each party.

D.  NS will not be liable for punitive, indirect, or consequential damages as a result of this Agreement.  No arbitration award issued pursuant to Section 16 of this Agreement will grant such damages or fees.

E.  The parties to this Agreement will use their best efforts to mitigate all damages arising under this Agreement.

13.  PAYMENT OF FREIGHT CHARGES.

A.  All linehaul freight charges for any shipments will be paid to NS by Yangming within fifteen (15) days after receipt by Yangming via EDI, or such other method as the parties determine is appropriate.

B.  If there is a default in timely payment by Yangming, then NS may advise Yangming upon ten (10) days' written notice that it will accept shipments for transportation on a cash basis only.

14.  DELETION OF ANY UNLAWFUL TERMS.

If any provision of this Agreement is determined to be unlawful, said provision will be deleted, and this Agreement, without the deleted provision, will continue in full force and effect; provided, however, if a party is materially adversely affected by the deletion, the party may cancel this Agreement without penalty.

15.  NOTICE.

NSGENL 0009

A.   Any notice or other communication under this Agreement will be in writing and will be considered given if delivered in person or if sent by telecopy, overnight courier, certified, registered, or first class U.S. mail, or electronic transmission, addressed as shown in this section. Any notice will be deemed to be delivered, given, and received for all purposes as of the date received, if delivered by hand or telecopy, or as of the date which is two (2) days after the date on which the notice was deposited with the overnight courier or of the electronic transmission, or as of the date which is five (5) days after the date on which the notice was deposited in a regularly maintained receptacle for the deposit of U.S. mail, if sent by registered, certified or first class U.S. mail.   Upon written notice to the other party, a party may change its address at any time.

B.   Notices under this Agreement will be addressed as follows:

As to NS:

Vice President, Intermodal Marketing
Three Commercial Place
Norfolk, VA  23510

As to Yangming:

Assistant Vice President
Intermodal & Equipment Control
525 Washington Blvd.  25th Floor
Jersey City, NJ  07310

16.   TERMINATION.

In the event of a breach of this Agreement, the party claiming the breach may give notice to the other party of such breach, and must give the other party sixty (60) days within which to effect a cure.   If such breach is not cured within such sixty (60) day period, then the aggrieved party may terminate this Agreement upon thirty (30) days' written notice. Notwithstanding this clause, the parties may agree to specific remedies for deterioration of service which may obtain subject to Article 5 hereof, short of cancellation for breach.

17.   ASSIGNMENT.

NSGENL 0010

Neither Yangming nor NS may assign its rights or duties hereunder to a third party without the written consent of the other party.

## 18. ARBITRATION.

Any controversy or claim in excess of $10,000 arising out of or relating to this Agreement or the breach hereof will be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Each party will bear its own costs and expenses of arbitration.

## 19. SUPERCESSION.

In the event that there is any conflict between the terms of this Agreement and the terms of NS's Intermodal Rule Circular, the provisions of this Agreement shall apply.

## 20. CONFIDENTIALITY.

This Agreement, the Exhibits, and the information therein are confidential and proprietary. If a party voluntarily reveals the terms of this Agreement to third persons, the other parties may be harmed thereby. The parties will not reveal the terms of this Agreement except (1) as may be required by law or regulation, (2) in response to legal service of process, (3) as required by AAR rules, (4) to a parent, subsidiary or affiliated company, internal auditor, or inspection bureau, (5) to the U.S. Bureau of Labor Statistics, or (6) if the information regarding this Agreement is in the public domain and all parties consent to the disclosure. The parties will seek confidentiality and agree not to disclose the terms of this Agreement further from any of the foregoing parties to whom they may disclose this Agreement.

## 21. NO THIRD PARTY BENEFICIARIES.

This Agreement is intended for the sole benefit of NS and Yangming. Nothing in this Agreement is intended or may be construed to give any person, firm, corporation, or other entity, other than NS and Yangming and their parents, subsidiaries, and affiliates any legal or equitable right, remedy, or claim under this Agreement.

NSGENL 0011

22.  WAIVER OF BREACH.

At any time during the term of this Agreement, NS or Yangming may waive any breach or default of the other party under this Agreement without affecting or impairing any right arising from any other breach of or default under this Agreement. Any waiver at any time of any breach or default under any provision, condition, obligation, or requirement of this Agreement will extend only to the particular breach or default so waived and will not impair or affect the existence of this Agreement or the right of NS or Yangming to take action in the event of any subsequent breach or default.

23.  GOVERNING LAW.

This Agreement will be deemed executed in the Commonwealth of Virginia and will be subject to and interpreted in accordance with the laws of the United States of America and of the Commonwealth of Virginia.

24.  CAPTIONS AND COUNTERPARTS.

All headings in this Agreement are inserted for convenience only and will not affect construction or interpretation of this Agreement. This Agreement may be executed in any number of counterparts, each of which may be deemed an original for any purpose.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have caused Agreement to be executed by their duly authorized officers as of the day and year first above written.

NORFOLK SOUTHERN RAILWAY COMPANY

By: _____

Title: _____

Yang Ming (America) Corp as agent
For YANGMING MARINE TRANSPORT CORPORATION, LTD

By: _____

Title: _____

July 29, 2004

Page 12                              07/29/04

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NIPPON EXPRESS U.S.A. (ILLINOIS), INC.,

                Plaintiff,

        -against-

                               06 Civ. 694 (PKC)

                               MEMORANDUM
                               AND ORDER

M/V CHANG JIANG BRIDGE and YANG
MING MARINE TRANSPORT
CORPORATION,

                Defendants.
-------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Nippon Express U.S.A. (Illinois), Inc. ("Nippon Express") alleges

that it hired defendants Yang Ming Marine Transport Corp. ("Yang Ming") and M/V

Chang Jiang Bridge ("Vessel") to transport 8,400 ink toner cartridges (the "Shipment")

from Oakland, California to Tokyo, Japan. Plaintiff further alleges that the Shipment was

not properly cared for during transport, causing it to suffer damage in excess of $500,000.

Plaintiff's complaint, which was filed on January 30, 2006, seeks damages for breach of

contract and negligence and also seeks indemnification and contribution. Defendant

Yang Ming's answer asserts several affirmative defenses and the existence of a

mandatory London forum selection clause in the bill of lading issued to Nippon Express

by Yang Ming. Yang Ming now moves to dismiss Nippon Express's complaint against it

based on the forum selection clause.

        In opposition, Nippon Express contends that the bill of lading containing

the London forum selection clause has been superseded by a stevedore contract which



2

calls for disputes to be addressed through arbitration in Los Angeles, California. For the reasons discussed below, defendant's motion will be granted and the complaint will be dismissed as to Yang Ming.

I.    Factual Background

        In September 2004, Nippon Express, a non-vessel operating common carrier (also known as an intermediate cargo carrier), was hired by non-party Canon USA, Inc. ("Canon") to transport the Shipment from Oakland, California to Tokyo, Japan. Nippon Express, in turn, hired Yang Ming to do the actual transpacific shipping. On September 25, 2004, Yang Ming issued bill of lading # YMLUW160067969 ("Bill of Lading") to Nippon Express covering "8,400 CTNS"of printer cartridges "on 200 pallets." (Maloof Decl., Exh. A.) The total value of the Shipment exceeded $1 million.

        After the cartridges were shipped to the TransBay Container Terminal ("Terminal") in Oakland, but before the Shipment began its ocean voyage, Nippon Express was notified by Canon that because temperatures inside shipping containers can exceed 140 degrees Fahrenheit during transpacific voyages, the Shipment should be refrigerated during its journey to Japan lest it suffer heat damage. On September 23, 2004, Nippon Express sent an "urgent" request to Yang Ming to "dray off" or remove the Shipment from the other cargoes being loaded so that proper refrigerated containers could be used. (Id., Exh. C.) Yang Ming informed the Terminal of the "dray-off" order, yet, due to an oversight, the Shipment was not separated from the rest of the cargoes and the Terminal placed the Shipment into five unrefrigerated containers, four of which were positioned in the top row of containers on the Vessel's deck and exposed to direct sunlight during transport. (Id., Exh. D.) Shortly after the Vessel set sail for Japan, Yang

3

Ming emailed Nippon Express and stated that due to "our terminal's negligence" the dray-off order was not followed. (Id., Exh. F.)

When the Shipment arrived in Japan, a sample of the cartridges was tested by a licensed Japanese cargo surveyor. The test revealed that there had been a deterioration of ink quality in the black-ink cartridges. (Id., Exh. D.) The surveyor concluded that the cause of the deterioration was excessive heat during transport and noted that black ink is more sensitive to heat than other ink colors, undergoing chemical change at 40 degrees Celsius (104 degrees Fahrenheit). (Id.) All 4,620 black ink cartridges in the Shipment were deemed irreparable and of no value.

Canon looked to its insurer, non-party Sompo Japan Insurance Co. ("Sompo"), to pay for the damage done to the Shipment and, in June 2006, Canon received ¥60,618,321 (approximately $525,000) from Sompo to cover the loss. (Id., Exh. E.) Nippon Express, anticipating a claim against it by Sompo as Canon's subrogee, filed the instant action against Yang Ming and the Vessel "primarily to protect [against] a potential time bar." (3/9/06 Endorsed Ltr., Docket #7.)

In May 2006, Nippon Express made an application to this Court to place the action on the Court's suspense docket for six months because no lawsuit had yet been filed against Nippon Express and it hoped that "this protective lawsuit for indemnity and filed as a precaution" could be withdrawn or amicably resolved. (5/24/06 Endorsed Ltr., Docket # 8.) Nippon Express's application was granted and the matter was placed on the suspense docket, subject to dismissal if it was not restored to the active calendar by November 30, 2006. In late November 2006, Nippon Express requested that the matter remain on the suspense docket until May 30, 2007 because it was in the process of

4

"negotiating with Japanese interests to resolve the underlying cargo claim." (11/27/06 Endorsed Ltr., Docket # 9.) Again, the Court granted Nippon Express's application. (Id.)

In December 2006, Nippon Express's insurer, non-party NipponKoa, settled with Sompo for $55,000 and Sompo assigned to NipponKoa all remaining claims it had related to the damaged Shipment. (Maloof Decl., Exh. G.) Four months later, Nippon Express notified the Court that it had "resolved its underlying cargo claim with Japanese interests" and requested that the matter be placed on the Court's active calendar. (4/27/07 Endorsed Ltr., Docket # 10.) The case was reinstated to the active calendar on April 26, 2007. (Id.) Thereafter, Nippon Express requested permission to move the Court to substitute as plaintiff its insurer, NipponKoa. Yang Ming, thereafter, made the instant motion to dismiss on the basis of the London forum selection clause. Pending the outcome of this motion, the Court preserved plaintiff's substitution motion and defendant's right to move for a transfer of venue to California. (5/11/07 Minute Entry.)

On June 1, 2007, Nippon Express made an application for a two-week extension to file its opposition to Yang Ming's motion to dismiss because, among other reasons, it "learned that there is more than one contract of carriage which may be implicated by the claims at issue" and it was "still attempting to understand the implications of that contract." (6/4/07 Endorsed Ltr., Docket 16.) Nippon Express's application for an extension was granted and its opposition papers were filed on June 12, 2007. Yang Ming filed its reply papers on June 19, 2007 and Nippon Express submitted a sur-reply on June 22, 2007. On July 5, 2007, Yang Ming filed a rejoinder memorandum in response to Nippon Express's sur-reply. On November 20, 2007, the Court was informed by the parties that the wrong stevedore contract had been produced

5

during discovery by Yang Ming. (11/20/07 Endorsed Ltrs., Docket 23, 24.) The correct stevedore contract was produced by Yang Ming and filed by Nippon Express on November 28, 2007. (2d Maloof Decl., Docket 25.)

II.    Discussion

A. Legal Standards

Yang Ming fails to state the procedural rule under which it makes its motion to dismiss. That omission is not surprising since there is no Federal Rule of Civil Procedure tailored to address the enforcement of a forum selection clause. See New Moon Shipping Co. v. Man B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) ("[T]here is no existing mechanism with which forum selection enforcement is a perfect fit.") (citation omitted). Neither the Supreme Court nor the Second Circuit has "designated a single clause of Rule 12(b) as the 'proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause . . . .'" Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 822 (2d Cir. 2006) (quoting New Moon, 121 F.3d at 28). Courts in this Circuit appear to prefer Rule 12(b)(3) as the procedural device used to enforce a forum selection clause. See Zurich Ins. Co. v. Prime, Inc., 419 F. Supp. 2d 384, 386 (S.D.N.Y. 2005) ("[C]ourts of this circuit have made clear that courts do possess the ability under either Rule 12(b)(3) or § 1406(a) to dismiss a case upon a motion that a forum selection clause renders venue in a particular court improper.") (citations omitted). I therefore deem the instant motion made pursuant to Rule 12(b)(3) because, among other reasons, that rule "allows courts to consider materials [such as a contractual forum selection clause] outside the pleadings." Jockey Int'l Inc. v. M/V Leverkusen Express, 217 F. Supp. 2d 447, 450 (S.D.N.Y. 2002).

6

In deciding a motion to dismiss based on a forum selection clause, the plaintiff is entitled to "have the facts viewed in the light most favorable to it" and to be heard before any disputed facts are resolved against it. New Moon, 121 F.3d at 29. The plaintiff bears the burden of overcoming a presumption of the forum selection clause's enforceability. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (forum selection clauses are prima facie valid unless enforcement is shown by resisting party to be unreasonable under the circumstances). The Second Circuit has endorsed a four-part analysis to determine whether to dismiss a claim based upon the existence of a valid forum selection clause. See Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). The court first considers whether "the clause was reasonably communicated to the party resisting enforcement" Id. (citation omitted). Second, the court considers whether the clause is mandatory. Id. (citation omitted). Third, it considers whether the claims and parties are subject to the clause. Id. (citation omitted). In the fourth and final step, the court determines "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Id. (quoting M/S Bremen, 407 U.S. at 15).

B. Facts Applied to Law

The forum selection clause at issue states as follows:

Except as otherwise provided specifically herein any claim or dispute arising under the Bill of Lading shall be governed by the laws of England and determined in English courts sitting in the city of London to the exclusion of the jurisdiction of the courts of any other place. In the event this clause is inapplicable under local law, then jurisdiction and choice of law shall lie either in the port of loading or port of discharge at Carrier's option.

7

(Bill of Lading, § 26.) Here, there is no dispute with respect to the first two prongs of the four-part test. As to the first prong, the forum selection clause was printed on the Bill of Lading issued by Yang Ming to Nippon Express and thus was reasonably communicated. As to the second prong, the clause is mandatory by virtue of its use of the word "shall" and because London jurisdiction is to "the exclusion of . . . any other place." See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs. Inc., 22 F.3d 51, 52-53 (2d Cir. 1994) (forum selection clause mandatory when venue and jurisdiction specified with exclusive or mandatory language).

The third prong—whether the claims and parties are subject to the clause—is contested. Because the dispute involves a question of law, i.e. whether Nippon Express's claims and the parties are subject to the clause, no hearing is required. See New Moon, 121 F.3d at 29. Nippon Express argues that the claims and parties are not subject to the Bill of Lading's forum selection clause because another provision of the Bill of Lading has been implicated that directs the terms and conditions of an underlying carrier contract to be incorporated into the Bill of Lading. The Bill of Lading provision that Nippon Express relies upon states in relevant part:

> Notwithstanding the foregoing, in the event there is a private contract of
> Carriage between the Carrier and any Underlying Carrier, such
> Mulitmodal Transportation will be governed by the terms and conditions
> of said contract which shall be incorporated herein as if set forth at
> length . . . .

(Bill of Lading, Section 7(B)(2).)

Nippon Express asserts that the stevedores selected by Yang Ming to load and unload cargo are "[u]nderlying [c]arrier[s]." It argues that the terms of the contract between Yang Ming and non-party TransBay Container Terminal Inc ("TransBay"), the stevedoring company that loaded the Shipment onto the Vessel, has superseded the terms

8

of the Bill of Lading issued to Nippon Express by Yang Ming. The stevedore contract

between Yang Ming and TransBay (the "Stevedore Contract") is entitled "Container

Stevedoring and Service Agreement" and provides that disputes are to be governed by

California law and are to be arbitrated in California. (Stevedore Contract, §§ 10-11.)

Yang Ming argues that the Stevedore Contract has not been incorporated into the Bill of

Lading because that contract is not "a private contract of Carriage between the Carrier

and an[] Underlying Carrier" as defined by the Bill of Lading. A stevedore is not an

underlying carrier, Yang Ming contends, because carriers transport passengers or

property while stevedores move cargo around port terminals and onto vessels. Nippon

Express espouses a much broader view of who is to be considered an underlying carrier

under the Bill of Lading and takes the position that any subcontractor engaged in any

aspect of the transportation of the shipment is an underlying carrier as that term is defined

in the Bill of Lading.

As an initial matter, I note that the complaint pleads breach of the Bill of

Lading and makes no mention of a stevedoring contract. In fact, the only other contract

specifically mentioned in the complaint is the waybill issued by Nippon Express to

Canon, the owner of the Shipment. Nevertheless, I will address the merits of Nippon

Express's contractual arguments.

As the parties have framed the issue, if TransBay, acting as stevedore, is

an "[u]nderlying [c]arrier" pursuant to the Bill of Lading, then the Stevedore Contract's

terms and conditions govern and the London forum selection clause is inapplicable. If

TransBay is not an "[u]nderlying [c]arrier" pursuant to the Bill of Lading, then the claims

and the parties are subject to the mandatory and exclusive London forum selection clause

9

and the third prong of the Second Circuit's test has been satisfied; i.e. the claims and the parties are subject to the clause. See Phillips, 494 F.3d at 383. For the reasons that follow, I conclude that the Stevedore Contract between Yang Ming and TransBay is not a "private contract of carriage between the carrier and any Underlying Carrier" and has not been incorporated into the Bill of Lading pursuant to its section 7(B)(2). Thus, the exclusive forum selection clause requiring disputes under the Bill of Lading to be heard by English courts sitting in London is applicable.

"Underlying Carrier" is defined in the Bill of Lading as "Any water, rail, motor, air or other carrier utilized by the Carrier for any part of the transportation of the shipment covered by this Bill of Lading." (Bill of Lading, § 1.) The Bill of Lading does not define "stevedore" and, in fact, it appears that contextual definitions of that term are rare. The Oxford English Dictionary defines it as "[a] workman employed either as overseer or labourer in loading and unloading the cargoes of merchant vessels." Oxford English Dictionary (2d ed. 1989). This definition comports with the meaning ascribed by case law and legislation. For example, as noted by the Eighth Circuit, "the term 'stevedore' and longshoreman' seem to be used interchangeabley [by the Supreme Court] . . . Webster's Dictionary defines both 'stevedore' and longshoreman' as workers who load and unload vessels." Reed v. ULS Corp., 178 F.3d 988, 991 n.3 (8th Cir. 1999) (citing Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 156-57 (1981)). The Waterfront Commission Compact between the States of New York and New Jersey defines "stevedore" as "a contractor (not including an employee) engaged for compensation pursuant to a contract or arrangement with a carrier of freight by water, in moving waterborne freight carried or consigned for carriage by such carrier on vessels of

10

such carrier berthed at piers, on piers at wich such vessels are berthed or at other waterfront terminals." N.J. Stat. Ann. § 32:23-6. The Third Circuit has interpreted this definition to describe "contractors who provide loading services for others." Waterfront Com'n of New York Harbor v. Elizabeth-Newark Shipping, Inc., 164 F.3d 177, 185 (3d Cir. 1998). Although stevedores presumably "transport" cargo on and off ships and to and from nearby terminal holding facilities or trucks, the element of "transportation" is de minimus and incidental to the stevedore's main function of loading and unloading vessels. See Nippon Fire & Marine Ins. Co. v. Skyway Freight Systems, Inc., 235 F.3d 53, 60 (2d Cir. 2000) ("[T]he fact that an air carrier temporarily may have stored the goods does not render the carrier a warehouseman, subject to common law warehouseman's duties, so long as the storage was only temporary and incidental to the primary goal of interstate shipment.") (citation omitted).

Nippon Express places great weight on the phrase "for any part of the transportation" found in the definition of "[u]nderlying [c]arrier" and invites the Court to adopt its conclusion that stevedores are "[u]nderlaying [c]arrier[s]" because "moving cargo around a terminal and onto vessels is a critical part of the transportation." (Pl. Mem. at 6.) However, even if the stevedore's moving of cargo is part of the transportation, stevedores must first be carriers before they can be deemed "[u]nderlying [c]arriers" because the definition is limited to "water, rail, motor, air or other carrier[s]" who provide part of the transportation. (Bill of Lading, § 1(l) (emphasis added).)

The Bill of Lading's definition of "Carrier" is limited to "Yangming Marine Transport Corporation" and is therefore unhelpful. (Bill of Lading, § 1(b).) The United States Carriage of Goods Act ("COGSA"), however, defines it as "the owner

11

manager, charters or master of a vessel [which] includes the owner or the charterer who

enters into a contract of carriage with a shipper." 46 U.S.C. § 30701. Nothing in that

definition indicates an intent to include stevedores and, indeed, case law makes clear that

stevedores are not covered by this definition. See De Laval Trubine, Inc. v. West India

Industries, Inc., 502 F.2d 259, 264 (2d Cir. 1974) ("The term 'carrier' . . . is defined as

including 'the owner or charterer who enters into a contract of carriage with a shipper. . .

. stevedores and agents do not fit within this definition. . . .") (citing Robert C. Herd &

Co., Inc. v. Krawill Machinery Corp., 359 U.S. 297, 302 (1959)); accord Generali v.

D'Amico, 766 F.2d 485, 487 (11th Cir. 1985).

Stevedores do not contract to transport passengers or goods. They

contract to load and unload ship cargoes and are therefore not carriers as that term is

understood, both generally and in the technical context of admiralty. Had the defined

term "Underlying Carrier" been meant to include stevedores under the Bill of Lading,

then, at minimum, the definition would have included references to subcontractors of

carriers. See Cabot Corp. v. S.S. Mormacscan, 441 F.2d 476, 478-79 (2d Cir. 1971)

("[A]n intention to extend benefits of [a Himalaya clause] to the stevedore would most

naturally have been expressed by the addition of the term 'stevedore' to the long list of

various persons under the definition of 'carrier . . . .'") (citations omitted). As defined by

the Bill of Lading, "'Subcontractor' includes owners and operators of Vessels (other than

the Carrier), slot chartered owners, stevedores, terminal and group age operators,

Underlying Carriers and any independent contractor employed by the Carrier in the

performance of the Carrier." (Bill of Lading, § 1(k) (emphasis added).) It is significant

that the Bill of Lading separately lists "stevedores" and "Underlying Carriers" in the

12

single definition of "Subcontractors" because it indicates an intent to ascribe a separate and distinct meaning to those two words. Moreover, it shows that the contracting parties knew how to include stevedores when such inclusion was intended.

I will now address the fourth and final prong of the Second Circuit test, "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips 494 F.3d at 383-84 (citation and internal quotation marks omitted). Nippon Express does not argue that enforcement of the clause "would be unreasonable or unjust" or that the clause is invalid due to "fraud or overreaching." Id. In a footnote, however, it notes that there are no witnesses or documents in the United Kingdom and that the claims "are now almost certainly time-barred there." (Pl. Mem. at 7.) That a claim may be time-barred in a foreign jurisdiction should not dictate the result of motion to dismiss an action based on the existence of a valid forum selection clause. See New Moon, 121 F.3d at 33 ("[C]onsideration of a statute of limitations [in deciding a motion to dismiss on the basis of a forum selection clause] would create a large loophole for the party seeking to avoid enforcement of the forum selection clause. That party could simply postpone its cause of action until the statue of limitations has run in the chosen forum and then file its action in a more convenient forum."); American Home Assur. Co. v. M/V Jaami, 06 Civ. 287 (LBS), 2007 WL 1040347, *3 (S.D.N.Y. April 4, 2007) ("Courts in this district have held repeatedly that a time bar in a foreign jurisdiction is not a basis for invalidating a forum selection clause.") (citations omitted).

13

Here, Nippon Express had notice of the forum selection clause well prior to bringing suit in New York, thus there is no reason to depart from the usual rule. See LPR, SRL v. Challenger Overseas, LLC., 99 Civ. 8883 (JGK), 2000 WL 973748 at *7 (S.D.N.Y. July 13, 2000) (granting motion to dismiss on basis of mandatory forum selection clause despite plaintiff's contention of prejudice because its action was time-barred in Italy leaving it without a forum). As noted by Judge Koeltl, "[t]here is no reason to depart from this usual rule in this case because the plaintiff had sufficient notice of the forum selection clause. It chose to bring the action in this Court in the face of a clear forum selection clause." Id. In addition, Nippon Express's passing mention that no witnesses or documents are located in the United Kingdom does not rise to the level of a "clear showing" that enforcing the clause would be unreasonable or unjust. See Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1363-65 (2d Cir. 1993).

As an alternative argument, Nippon Express contends the Bill of Lading is ambiguous with respect to choice of law and choice of forum. First, it argues there is ambiguity because the Bill of Lading provides that the rights and obligations of the parties with regard to cargo damage shall be governed by COGSA while, at the same time, providing for English law to apply. Section 7(A)(2) of the Bill of Lading states: "Notwithstanding anything contained in the preceding provision, in the event that this Bill of Lading covers shipments to or from the United States, than [sic] . . . COGSA shall be compulsorily applicable . . . ." That provision and the English choice of law provision, however, are not mutually exclusive and create no ambiguity because the choice of law provision makes clear that English law applies to disputes under the Bill of Lading "[e]xcept as otherwise specifically provided herein . . ." (Bill of Lading, ¶ 26.)

14

This means English law applies to the extent it is not specifically displaced by other Bill of Lading provisions, such as the one requiring U.S. COGSA to apply in the context of cargo damage or loss. See M/V Jaami, 2007 WL 1040347 at *2 (bill of lading not ambiguous even though forum selection and choice of law clause provide for Japanese law "except as otherwise provided herein" while another provision requires application of COGSA).

Nippon Express also points to section 7(E) of the Bill of Lading which states: "In the event the Carriage covered by this Bill of Lading is subject to two or more compulsory national laws, then the national law of the jurisdiction in which any action is brought shall be applicable." (Bill of Lading, § 7(E).) Nippon Express contends this creates ambiguity because it attempts to ensure that any forum selected will only be interpreting its country's own law in contradiction to the mandatory London forum selection clause and the call for U.S. COGSA to apply to cargo loss or damage. Under these facts, however, section 7(E) is not even implicated as the Bill of Lading is not subject to two compulsory national laws. The English counterpart of COGSA (known as the "Hague-Visby Rules") is likely inapplicable because it is compulsory only where the port where the shipment was loaded or the place where the Bill of Lading was issued is in a country that has adopted the Hague-Visby Rule, or where the Bill of Lading chooses the Hague-Visby Rules as the law governing cargo damage or loss. See The Carriage of Goods by Sea Act 1971 [of England] (1971 c. 19 at 1-2) available at http://www.opsi.gov.uk/acts/acts1971/pdf/ukpga_19710019_en.pdf. Thus, the conditions requiring compulsory application of Hague-Visby Rules are seemingly lacking where the cargo was loaded in the United States and the Bill of Lading specifically deems U.S.

15

COGSA applies to cargo claims. I note here that there is no reason to doubt the ability of English courts to apply U.S. COGSA because the Hague-Visby Rules are substantially similar to U.S. COGSA. See Reed & Barton Corp. v. M.V. Tokio Exp., 98 Civ. 1079 (LAP), 1999 WL 92608, *3 (S.D.N.Y. Feb. 22, 1999) (noting Hague-Visby Rules are "fraternal equivalent" of U.S. COGSA). Moreover, "[n]othing [in COGSA] . . . suggests that the statute prevents the parties from agreeing to enforce [the rights and duties imposed by COGSA] in a particular forum." Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 535 (1995). Nippon Express's ambiguity arguments are without merit.

III.    Conclusion

For all the foregoing reasons, Yang Ming's motion to dismiss is granted.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       December 13, 2007

APR/23/2007/MON 03:31 PM   NS FRT CLAIMS          FAX No. 404 658 2038          P. 015



Norfolk Southern Corporation
Freight Claims Settlement
1200 Peachtree Street NE, BOX—153F
Atlanta, GA 30309

Glen A. Brown
Intermodal Claims
Phone: (404) 658-2031
Fax: (404) 658-2038
Toll Free: (800) 742-6315

*February 2, 2007*

*Submitted via Fax and U.S. Mail*
*FAX #: (914) 921 - 1023*

NS Claim: 841380 |

ATTN: David Maloof
Maloof Browne & Eagan
411 Theodore Fremd Ave., Suite 190
Rye, NY 10580

Mr. Maloof:

Please refer to your claim number 2503.81 that covers derailment damages to the shipment that moved in container YMLU 445517 and container TEXU 720460, waybilled April 6, 2006.

Norfolk Southern's Intermodal Rules Circular No. 2, Section 8 governs all shipments.
http://www.nscorp.com/intermodal/ShowDoc/english/intermodalsystem_information/general/intermodal_rules_circular.pdf

In order to complete the investigation of your claim we need the following information:
- Per the Intermodal Rules Circular Norfolk Southern will not be liable for any loss, damage, or delay to lading to any party other than the Rail Services Buyer. [See Section 8.3.3 → All claims restrictions → )]]
- Norfolk Southern will not be under any obligation to process any claim by any person other than the Rail Services Buyer. [See Section 8.3.3 → All claims restrictions → )]]

Yang Ming is the company listed on the waybill as the rail service buyer. Any claims you have should be filed with them. [See Section 8.3.3 → All Restrictions (continued) → )]]

Your claim will remain on file; however, until we receive evidence to the contrary of this information your claim shall be considered respectfully declined in its entirety.

Should you have any questions concerning this matter please contact me at your convenience, referring to the NS Claim number(s) shown above.

Very truly yours,

Glen Brown
Email: Glen.Brown@nscorp.com

Operating Subsidiary: Norfolk Southern Railway Corporation

EXHIBIT 1

NSAUTO 0015



Norfolk Southern Corporation
Freight Claims Settlement
1200 Peachtree Street NE, BOX—153F
Atlanta, GA 30309

Glen A. Brown
Intermodal Claims
Phone: (404) 658-2031
Fax: (404) 658-2038
Toll Free: (800) 742-6315

February 14, 2007

*Submitted via Fax and U.S. Mail*
*FAX #: (914) 921 - 1023*

**NS Claim: 841621 I**

ATTN: Thomas Eagan
Maloof Browne & Eagan LLC
411 Theodore Fremd Ave., Suite 190
Rye, NY 10580

Mr. Eagan:

Please refer to your claim number 2503.82 that covers derailment damages to the shipment that moved in the containers listed below, waybilled April 6, 2006.
Norfolk Southern's Intermodal Rules Circular No. 2, Section 8 governs all shipments.
http://www.nscorp.com/intermodal/ShowDoc/english/intermodal/system_information/general/intermodal_rules_circular.pdf

| | |
|---|---|
| YMLU 822340 | Yang Ming Claim 842698 I |
| CRXU 950540 | Yang Ming Claim 842699 I |
| BHCU 494082 | Yang Ming Claim 842700 I |
| YMLU 819001 | Yang Ming Claim 842701 I |
| CRXU 982953 | Yang Ming Claim 842702 I |
| YMLU 813183 | Yang Ming Claim 842703 I |
| TRLU 811644 | Yang Ming Claim 842704 I |
| CRXU 984107 | Yang Ming Claim 842815 I |
| XINU 803340 | Yang Ming Claim 842816 I |
| YMLU 821789 | Yang Ming Claim 842817 I |
| YMLU 826447 | Yang Ming Claim 842818 I |
| INKU 636398 | Yang Ming Claim 842819 I |
| FSCU 690448 | Yang Ming Claim 842820 I |
| TGHU 803581 | Yang Ming Claim 842821 I |
| YMLU 829410 | Yang Ming Claim 842822 I |
| CLHU 858610 | Yang Ming Claim 842823 I |

In order to complete the investigation of your claim we need the following information:
- Per the Intermodal Rules Circular Norfolk Southern will not be liable for any loss, damage, or delay to lading to any party other than the Rail Services Buyer. [See Section 8.3.3 → All claims restrictions → j)]
- Norfolk Southern will not be under any obligation to process any claim by any person other than the Rail Services Buyer. [See Section 8.3.3 → All claims restrictions → j)]

Yang Ming is the company listed on the waybill as the rail service buyer. Any claims you have should be filed with them. [See Section 8.3.3 → All Restrictions (continued) → j)]

Your claim will remain on file; however, until we receive evidence to the contrary of this information your claim shall be considered respectfully declined in its entirety. Should you have any questions concerning this matter please contact me at your convenience, referring to the NS Claim number(s) shown above.

Very truly yours,

Glen Brown
Email: Glen.Brown@nscorp.com

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TE 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
(914) 921-1200
*Attorneys for Plaintiffs*



FILED
DEC 1 4 2007
USDC WP SDNY

**'07 CIV 11276**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SOMPO JAPAN INSURANCE COMPANY OF
AMERICA, and SOMPO JAPAN INSURANCE,
INC.,

**07 Civ.**

**COMPLAINT**

                              *Plaintiffs,*

      - against -

YANG MING MARINE TRANSPORT
CORPORATION,

                             *Defendants.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiffs Sompo Japan Insurance Company of America ("Sompo America") and

Sompo Japan Insurance, Inc. ("Sompo Japan") by their undersigned attorneys, Maloof Browne &

Eagan LLC, for their Complaint allege, upon information and belief, as follows:

        1.     This action arises under the Court's federal question jurisdiction (28 U.S.C.

1331 and 49 U.S.C. 14706), Maritime jurisdiction under 28 U.S.C. 1333 and under Rule 9(h) of the

F.R.C.P. and/or supplemental jurisdiction (28 U.S.C. 1367) as hereinafter more fully appears.

        2.     Plaintiff Sompo America is an insurance company organized and existing

under the laws of the State of New York with its principal place of business in New York, New

York, and is the insurer of one or more of the Shipments that are the subject of this action, as more

fully described below.

1



EXHIBIT

3.      Plaintiff Sompo Japan is an insurance company organized and existing under the laws of Japan, and is the insurer of one or more of the Shipments that are the subject of this action, as more fully described below.

4.      Defendant Yang Ming Marine Transport Corporation (hereinafter "Yang Ming") is a corporation organized and existing under laws of a foreign country, was and is doing business as a common carrier of goods by sea and rail for hire, was the delivering rail carrier of the Shipments at issue, has its U.S. general agent located in the Port of New York, and does business in the State of New York.

5.      Venue is proper here within the meaning of 28 U.S.C. § 1391 and 49 U.S.C. 11706(d)(2). The defendant resides within this District within the meaning of 28 U.S.C. § 1391(c), and defendant consents to the venue in the Southern District of New York.

## A. KUBOTA TRACTOR SHIPMENT

6.      On or about March 31, 2006, at the Port of Tokyo, Japan, there was shipped by Kubota Corporation and delivered to Yang Ming and loaded aboard the M/V Cherokee Bridge a consignment of Agricultural Tractors, then being in good order and condition, in Containers YMLU8294100, FSCU6904489, CLHU8586100, XINU8033402, YMLU8217892, YMLU8264472, CRXU9841070, YMLU8190019, TGHU8035818, YMLU8131839, CRXU9505408, INKU6363983, BHCU4940820, CRXU9829536, TRLU8116442, YMLU8223405 (the "Kubota Shipment"). Defendant accepted the Kubota Shipment and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, Defendant agreed to transport and carry said Kubota Shipment to Georgia via sea and rail, and there deliver the Shipment in like good order and condition to Sompo America's assured and/or designee. The Kubota Shipment was described in certain bills of lading numbered YMLUW251121377, YMLUW251121405, YMLUW261121400, YMLUW251121404,

2

YMLUW251121378,    YMLUW251121379,    YMLUW251121380,    YMLUW251121381,

YMLUW251121382,    YMLUW251121383,    YMLUW251121384,    YMLUW251121385,

YMLUW251121386,    YMLUW251121387,    YMLUW251121388,    YMLUW251121389,

YMLUW251121398, and YMLUW251121402, all dated on or about March 31, 2006.

       7.    All portions of the carriage were part of an international and interstate transportation of goods.

       8.    Defendant made delivery of the Kubota Shipment, but not in like good order and condition as when shipped, delivered to and received by them, but on the contrary, short and seriously injured and impaired in value, all in violation of Defendant's obligations and duties as common carriers of merchandise by sea and rail for hire, and to perform their services with respect to the Kubota Shipment in a careful, workmanlike manner, and otherwise in violation of their duties, including duties to properly inspect, maintain and repair its rail lines.

       9.    Plaintiff Sompo America insured the Kubota Shipment. Plaintiff Sompo America has incurred, and will incur, losses as a result of the damage to the Kubota Shipment. Plaintiff Sompo America is duly entitled to maintain this action.

      10.    Plaintiff Sompo America and its assured have performed all conditions on their parts to be performed.

      11.    By reason of the foregoing, Plaintiff Sompo America has sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in a sum estimated to be up to or exceeding U.S. $975,000.00.

**B. UNISIA SHIPMENT**

      12.    On or about March 31, 2006, at the Port of Yokohama, Japan, there was shipped by Hitachi, Ltd. and delivered to Yang Ming and loaded aboard the M/V Cherokee Bridge a

consignment of Automobile Parts in Containers YMLU4455172 and TEXU7204601, then being in good order and condition (the "Unisia Shipment"). Defendant accepted the Unisia Shipment and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, Defendant agreed to transport and carry said Unisia Shipment to Georgia via sea and rail, and there deliver the Shipment in like good order and condition to Sompo America's assured and/or designee. The Unisia Shipment was described in a certain bill of lading numbered YMLUW261105356 dated on or about March 31, 2006.

13.    All portions of the carriage were part of an international and interstate transportation of goods.

14.    Defendant made delivery of the Unisia Shipment, but not in like good order and condition as when shipped, delivered to and received by them, but on the contrary, short and seriously injured and impaired in value, all in violation of Defendant's obligations and duties as common carriers of merchandise by sea and rail for hire, and to perform their services with respect to the Unisia Shipment in a careful, workmanlike manner, and in otherwise violation of their duties, including duties to properly inspect, maintain and repair its rail lines.

15.    Plaintiff Sompo America insured the Unisia Shipment. Plaintiff Sompo America has incurred, and will incur, losses as a result of damage to the Unisia Shipment. Plaintiff Sompo America is duly entitled to maintain this action. Plaintiff Sompo America and its assured have performed all conditions on their parts to be performed.

16.    By reason of the foregoing, Plaintiff Sompo America has sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in a sum estimated to be up to or exceeding U.S. $400,000.00

4

## C. HOSHIZAKI ELECTRIC SHIPMENT

17.     On or about April 11, 2006, at the port of Kobe, Japan, there was shipped by Hoshizaki Electric Company and delivered to Yang Ming and loaded aboard the M/V Cherokee Bridge a consignment of Icemakers and Sushi Cases in Containers YMLU4515760, YMLU4746964 and YMLU4889482, then being in good order and condition (the "Hoshizaki Shipment"). Defendant accepted the Hoshizaki Shipment and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, Defendant agreed to transport and carry said Hoshizaki Shipment to Georgia via sea and rail, and there deliver the Shipment in like good order and condition to Sompo Japan's assured and/or designee. The Hoshizaki Shipment was described in a certain bill of lading numbered YMLUW251752204, dated on or about March 26, 2006.

18.     All portions of the carriage were part of an international and interstate transportation of goods.

19.     Defendant made delivery of the Hoshizaki Shipment, but not in like good order and condition as when shipped, delivered to and received by them, but on the contrary, short and seriously injured and impaired in value, all in violation of Defendant's obligations and duties as common carriers of merchandise by sea and rail for hire, and to perform their services with respect to the Hoshizaki Shipment in a careful, workmanlike manner, and otherwise in violation of their duties, including duties to properly inspect, maintain and repair its rail lines.

20.     Plaintiff, Sompo Japan insured the Hoshizaki Shipment. Plaintiff Sompo Japan has incurred, and will incur, losses as a result of damage to the Hoshizaki Shipment. Plaintiff Sompo Japan is duly entitled to maintain this action. Plaintiff Sompo Japan has performed all conditions on their parts to be performed.

21.     By reason of the foregoing, Plaintiff Sompo Japan has sustained damages, as

5

nearly as the same can now be estimated, no part of which has been paid although duly demanded, in

a sum estimated to be up to or exceeding U.S. $245,000.00.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER CARMACK AMENDMENT AND STAGGERS RAIL ACT AS TO THE KUBOTA SHIPMENT

22.    Plaintiff Sompo America incorporates herein by reference the allegations of

paragraphs 1 through 21 above.

23.    By reason of the foregoing, Defendant was a rail carrier within the meaning of

the Carmack Amendment and Staggers Rail Act of 1980 and breached their duty of a rail carrier

under said law and under the contract of carriage.

24.    By reason of the foregoing, Defendant has caused damage to Plaintiff Sompo

America in an amount estimated to be up to and exceeding US $975,000.00.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER COGSA, 46 U.S.C. §1300 ET. SEQ. AND/OR APPLICABLE TREATIES AS TO THE KUBOTA SHIPMENT

25.    Plaintiff incorporates herein by reference the allegations of paragraphs 1-24

above.

26.    By reason of the foregoing, Defendant was a common carrier of merchandise

by water for hire within the meaning of the Carriage of Goods By Sea Act, 46 U.S.C. § 1300, et.

seq., and/or applicable treaties for the carriage of goods by sea and breached its duties as a carrier

under that Act and under the contract of carriage entered into by the Defendant pursuant to that Act

and/or treaties.

6

27.    By reason of the foregoing, the Defendant has caused damage to Plaintiff, and to the others on whose behalf Plaintiff sues, in an amount, as nearly as can now be estimated, up to or exceeding U.S. $975,000.00.

## THIRD CAUSE OF ACTION

### TORT DAMAGE TO PROPERTY
### NEGLIGENCE AND/OR GROSS NEGLIGENCE AND/OR RECKLESSNESS AND/OR WILLFUL CONDUCT AS TO THE KUBOTA SHIPMENT

28.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 27 above.

29.    Defendant, directly or through its employees, agents or independent contractors, willfully, recklessly or negligently and/or with gross negligence failed to exercise the degree of care in relation to the Kubota Shipment which a reasonably careful man would exercise under like circumstances, and/or willfully, recklessly or negligently and/or with gross negligence failed to carry the Kubota Shipment such as were reasonably required and would be sufficient to prevent the damage to the Kubota Shipment.

30.    The Kubota Shipment suffered loss as alleged herein, as a proximate result of defendant's said willful, reckless and/or negligent conduct.

31.    Defendant is accordingly liable to Plaintiff Sompo America in an amount estimated to be or exceed U.S. $975,000.

## FOURTH CAUSE OF ACTION

### BREACH OF BAILMENT OBLIGATIONS
### AS TO THE KUBOTA SHIPMENT

32.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 31 above.

7

33.    Defendant at relevant times acted as carrier of goods for hire by land, and/or bailee of or otherwise had a duty to care for the Kubota Shipment at the time it was in their custody. Defendant thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to safely keep, care for, and deliver the Kubota Shipment in the same condition as when entrusted to them, and/or to perform its services or to ensure that those service were performed with reasonable care and in a non-negligent and workmanlike manner. Defendant breached those obligations and negligently failed to deliver to Plaintiff Sompo America's assured's designees or consignees the Kubota Shipment in as complete and good condition as when entrusted to them.

34.    By reason of the foregoing, the Defendant has caused damage as alleged herein to Plaintiff Sompo America, and is liable to Plaintiff Sompo America for such damages in an amount estimated to be or exceed U.S. $975,000.00.

### FIFTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER CARMACK AMENDMENT AND STAGGERS RAIL ACT AS TO THE UNISIA SHIPMENT

35.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 34 above.

36.    By reason of the foregoing, Defendant was a rail carrier within the meaning of the Carmack Amendment and Staggers Rail Act of 1980 and breached their duty of a rail carrier under said law and under the contract of carriage.

37.    By reason of the foregoing, Defendant has caused damage to Plaintiff Sompo America in an amount estimated to be up to and exceeding US $400,000.00.

8

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER COGSA, 46 U.S.C. §1300 ET. SEQ. AND/OR APPLICABLE TREATIES AS TO THE UNISIA SHIPMENT

38.    Plaintiff incorporates herein by reference the allegations of paragraphs 1-37 above.

39.    By reason of the foregoing, Defendant was a common carrier of merchandise by water for hire within the meaning of the Carriage of Goods By Sea Act, 46 U.S.C. § 1300, et. seq., and/or applicable treaties for the carriage of goods by sea and breached its duties as a carrier under that Act and under the contract of carriage entered into by the Defendant pursuant to that Act and/or treaties.

40.    By reason of the foregoing, the Defendant has caused damage to Plaintiff, and to the others on whose behalf Plaintiff sues, in an amount, as nearly as can now be estimated, up to or exceeding U.S. $400,000.00.

### SEVENTH CAUSE OF ACTION

### TORT DAMAGE TO PROPERTY NEGLIGENCE AND/OR GROSS NEGLIGENCE AS TO THE UNISIA SHIPMENT

41.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 40 above.

42.    Defendant, directly or through its employees, agents or independent contractors, willfully, recklessly or negligently and/or with gross negligence failed to exercise the degree of care in relation to the Unisia Shipment which a reasonably careful man would exercise under like circumstances, and/or willfully, recklessly or negligently and/or with gross negligence failed to provide adequate security measures for the Unisia Shipment such as were reasonably required and would be sufficient to prevent the damage to the Unisia Shipment.

43.    The Unisia Shipment suffered loss as alleged herein, as a proximate result of defendant's said willful, reckless and/or negligent conduct.

44.    Defendant is accordingly liable to Plaintiff Sompo America in an amount estimated to be or exceed U.S. $400,000.00.

### EIGHTH CAUSE OF ACTION

### BREACH OF BAILMENT OBLIGATIONS
### AS TO THE UNISIA SHIPMENT

45.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 44 above.

46.    Defendant at relevant times acted as a carrier of goods for hire by land, and/or bailee of or otherwise had a duty to care for the Unisia Shipment at the time it was in their custody. Defendant thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to safely keep, care for, and deliver the Unisia Shipment in the same condition as when entrusted to them, and/or to perform its services or to ensure that those service were performed with reasonable care and in a non-negligent and workmanlike manner. Defendant breached those obligations and negligently failed to deliver to Plaintiff Sompo America's assured's designees or consignees the Unisia Shipments in as complete and good condition as when entrusted to them.

47.    By reason of the foregoing, the Defendant has caused damage as alleged herein to Plaintiff Sompo America, and is liable to Plaintiff Sompo America for such damages in an amount estimated to be or exceed U.S. $400,000.00.

## NINTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER CARMACK AMENDMENT AND STAGGERS RAIL ACT AS TO THE HOSHIZAKI SHIPMENT

48.    Plaintiff Sompo Japan incorporates herein by reference the allegations of paragraphs 1 through 47 above.

49.    By reason of the foregoing, Defendant was a rail carrier within the meaning of the Carmack Amendment and Staggers Rail Act of 1980 and breached its duty of a rail carrier under said law and under the contract of carriage.

50.    By reason of the foregoing, Defendant has caused damage to Plaintiff Sompo Japan in an amount estimated to be up to and exceeding US $245,000.00.

## TENTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER COGSA, 46 U.S.C. §1300 ET. SEQ. AND/OR APPLICABLE TREATIES AS TO THE HOSHIZAKI SHIPMENT

51.    Plaintiff incorporates herein by reference the allegations of paragraphs 1-50 above.

52.    By reason of the foregoing, Defendant was a common carrier of merchandise by water for hire within the meaning of the Carriage of Goods By Sea Act, 46 U.S.C. § 1300, et. seq., and/or applicable treaties for the carriage of goods by sea and breached its duties as a carrier under that Act and under the contract of carriage entered into by the Defendant pursuant to that Act

11

and/or treaties.

53.    By reason of the foregoing, the Defendant has caused damage to Plaintiff, and to the others on whose behalf Plaintiff sues, in an amount, as nearly as can now be estimated, up to or exceeding U.S. $245,000.00.

**ELEVENTH CAUSE OF ACTION**

**TORT DAMAGE TO PROPERTY
NEGLIGENCE AND/OR GROSS NEGLIGENCE
AS TO THE HOSHIZAKI SHIPMENT**

54.    Plaintiff Sompo Japan incorporates herein by reference the allegations of paragraphs 1 through 53 above.

55.    Defendant, directly or through its employees, agents or independent contractors, willfully, recklessly or negligently and/or with gross negligence failed to exercise the degree of care in relation to the Hoshizaki Shipment which a reasonably careful man would exercise under like circumstances, and/or willfully, recklessly or negligently and/or with gross negligence failed to provide adequate security measures for the Hoshizaki Shipment such as were reasonably required and would be sufficient to prevent the damage to the Hoshizaki Shipment.

56.    The Hoshizaki Shipment suffered losses as alleged herein, as a proximate result of defendant's said willful, reckless and/or negligent conduct.

57.    Defendant is accordingly liable to Plaintiff Sompo Japan in an amount estimated to be or exceed U.S. $245,000.00.

## TWELFTH CAUSE OF ACTION

### BREACH OF BAILMENT OBLIGATIONS
### AS TO THE HOSHIZAKI SHIPMENT

58.    Plaintiff Sompo Japan incorporates herein by reference the allegations of paragraphs 1 through 57 above.

59.    Defendant at relevant times acted as a carrier of goods for hire by land, and/or bailee of or otherwise had a duty to care for the Hoshizaki Shipment at the time it was in its custody. Defendants thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to safely keep, care for, and deliver the Hoshizaki Shipment in the same condition as when entrusted to them, and/or to perform its services or to ensure that those service were performed with reasonable care and in a non-negligent and workmanlike manner.  Defendant breached those obligations and negligently failed to deliver to Plaintiff Sompo Japan's assured's designees or consignees the Hoshizaki Shipments in as complete and good condition as when entrusted to them.

60.    By reason of the foregoing, the Defendant has caused damage as alleged herein to Plaintiff Sompo Japan, and are liable to Plaintiff Sompo Japan for such damages in an amount estimated to be or exceed U.S. $245,000.00.

WHEREOF, Plaintiff pray:

1.    That judgment may be entered in favor of Plaintiffs against Defendant for the amount of each Plaintiffs' damages, together with interest and costs, and the disbursements of this action;

2.    That this Court will grant to Plaintiffs such other and further relief as may be just and proper.

13

Dated: Rye, New York
      December 7, 2007

MALOOF BROWNE & EAGAN LLC

By: _____

David T. Maloof (DM 3350)
Thomas M. Eagan (TE 1713)
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
(914) 921-1200
*Attorneys for Plaintiffs Sompo Japan
Insurance Company of America and Sompo
Japan Insurance, Inc.*

14