UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA and SOMPO JAPAN INSURANCE, INC., | : **07 Civ. 11276 (DC)** |
| | : |
| *Plaintiffs,* | : |
| - against - | |
| | : |
| YANG MING MARINE TRANSPORT CORPORATION, | |
| | : |
| *Defendant.* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT AS TO THE LIABILITY OF
<u>DEFENDANT YANG MING MARINE TRANSPORT CORPORATION</u>**

David T. Maloof
Thomas M. Eagan
Maloof Browne & Eagan LLC
411 Theodore Fremd Avenue – Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023

*Attorneys for Plaintiffs Sompo Japan
Insurance Company of America and
Sompo Japan Insurance, Inc.*

## **TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………………...3

STATEMENT OF UNDISPUTED FACTS………………………………………………………4

ARGUMENT……………………………………………………………………………………...4

I.    THE YANG MING BILL OF LADING PROVIDES THAT ITS INTERMODAL TRANSPORATION CONTRACT WITH NORFOLK SOUTHERN WILL CONTROL THE CARRIERS' LIABILITY IN PLACE OF THE BILL OF LADING FOR MULTIMODAL LOSSES ……………………………………………………………………..4

II.    A CASE FROM THIS DISTRICT HAS ALREADY FOUND, AND YANG MING DID NOT CONTEST, THAT, PURSUANT TO THE SAME BILL OF LADING, THE TERMS OF A TRANSPORTATION CONTRACT WITH AN UNDERLYING CARRIER WOULD GOVERN IN THE EVENT OF A MULTIMODAL LOSS; YANG MING IS THEREFORE COLLATERALLY ESTOPPED FROM ARGUING TO THE CONTRARY IN THIS CASE…………………………………………………….7

III.    THE INTERMODAL TRANSPORTATION AGREEMENT EXPRESSLY PROVIDES THAT NORFOLK SOUTHERN IS LIABLE FOR DAMAGES TO CARGO ARISING OUT OF A TRAIN DERAILMENT ……………………………………………………….10

CONCLUSION…………………………………………………………………………………..11

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TM 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York  10580
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, and SOMPO JAPAN INSURANCE, INC., | : <br><br> **07 Civ. 11276 (DC)** <br> : |
| *Plaintiffs,* | : |
| - against - | |
| | : |
| YANG MING MARINE TRANSPORT CORPORATION, | : |
| *Defendant.* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR PARTIAL SUMMARY JUDGMENT AS TO THE LIABILITY OF
<u>DEFENDANT YANG MING MARINE TRANSPORT CORPORATION</u>**

**INTRODUCTION**

This memorandum of law is submitted on behalf of Plaintiffs, Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc. (collectively "Sompo" or "Plaintiffs"), in support of its Motion for Partial Summary Judgment as to the Liability of Defendant Yang Ming Marine Transport Corporation ("Yang Ming"), on the ground that the Intermodal Transportation Agreement in effect between Yang Ming and Norfolk Southern Railway Company ("Norfolk Southern") expressly states that Norfolk Southern, and thus Yang Ming, is liable for the loss that is the subject matter of the present action.  Plaintiffs submit that resolution of this issue will streamline this litigation.

3

**STATEMENT OF UNDISPUTED FACTS**

This case arises out of a train derailment in the United States that damaged a variety of cargoes, consisting of Kubota Tractors, Unisia Auto Parts and Hoshizaki Electric Sushi Cases, which were all carried under Yang Ming through bills of lading. (Declaration of Todd A. Barton, Exhs. 1, 2, 3 & 7). These cargoes originated in Japan, were carried by sea to Long Beach, California, and then were carried by rail for the inland U.S. leg of their journey. En route to their ultimate destination, the train derailed, causing damage to the cargoes. (Barton Decl., Exh. 7).

**ARGUMENT**

**I.**

**THE YANG MING BILL OF LADING PROVIDES THAT ITS INTERMODAL TRANSPORATION CONTRACT WITH NORFOLK SOUTHERN WILL CONTROL THE CARRIERS' LIABILITY IN PLACE OF THE BILL OF LADING FOR MULTIMODAL LOSSES**

The "Multimodal Transport Clause" of the Yang Ming bill of lading—Clause 7(B)(2)—*specifically* requires that if there is a separate contract between Yang Ming and an underlying carrier, the "terms and conditions" of that private contract shall "govern" in lieu of the Yang Ming bill of lading. Clause 7(B)(2) provides, in pertinent part:

> **Notwithstanding the foregoing**, in the event there is a private contract of Carriage between the Carrier and any Underlying Carrier, **such Multimodal Transportation will [be] governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length** and copies of such contract(s) shall be available to the Merchant at any office of the Carrier upon request.

(Barton Decl., Exh. 4, ¶ 7(2)(B)).

In the present case, the rail carrier charged with the inland U.S. portion of this intermodal carriage, Norfolk Southern, had their own underlying carrier contract, which was

4

entitled "Intermodal Transportation Agreement" and was entered into on August 12, 2004. By virtue of the express terms of the Yang Ming bill of lading—specifically, Clause 7(b)(2)—it is this Intermodal Transportation Agreement that "governs" Plaintiffs' claims against Yang Ming.

Simply enough, the Intermodal Transportation Agreement declares the carrier is liable for damage to containerized cargo due to a train derailment. Specifically, Clause 12.B(1) provides, in pertinent part:

> [Norfolk Southern] will be liable for and will hold [Yang Ming] harmless against loss of or damage to freight in containers transported at the rates and charges provided in this Agreement and Exhibit 1 **only to the extent that the sole proximate cause of said loss or damage is a railroad accident, derailment, or collision between railroad equipment negligently caused by [Norfolk Southern]**.

(Barton Decl., Exh. 5, ¶ 12.B(1)).

There is no question that the shipment at issue involves a "Multimodal Transport" shipment. The term "Multimodal Transport" is defined in the Yang Ming bill of lading as follows:

> "Multimodal Transport" arises if the Place of Receipt and/or the Place of Delivery are indicated on the face hereof in the relevant spaces.

(Barton Decl., Exh. 4, ¶ 1(12)). On the Yang Ming bills of lading in question, both such boxes are filled in. (Barton Decl., Exhs. 1, 2 & 3).

There also can be no question that Norfolk Southern is an "Underlying Carrier" within the meaning of the Yang Ming bill of lading. The term "Underlying Carrier" is defined therein as follows:

> "Underlying Carrier" includes any water, rail, motor, air or other carrier utilized by the Carrier for any parts of the transportation [of] the shipment covered by the Bill.

5

(Barton Decl., Exh. 4, ¶ 1(17)).  Norfolk Southern most certainly was a "rail . . . carrier utilized by the Carrier [Yang Ming]" for the inland U.S. portion of this multimodal shipment. Furthermore, the phrase "Underlying Carrier" in the Yang Ming bill of lading previously has been interpreted by this Court as including a multimodal rail carrier.  *See New York Marine & General Insurance Co. v. S/S Ming Prosperity*, 920 F.Supp. 416, 427 (S.D.N.Y. 1996).

That Yang Ming would want to opt out of its ocean bill of lading makes perfect sense.  Most multimodal bills of lading these days import maritime law (i.e., the Carriage of Goods By Sea Act ("COGSA"), now found at Note, 46 U.S.C.A. §30701) throughout the transit. *See, e.g.*, *Sompo Japan Ins. Co. of America v. Union Pac. R.R.,* 456 F.3d 54, 56 (2d Cir. 2006); *Norfolk Southern Railway Co. v. Kirby,* 543 U.S. 14, 25 (2004).  Yang Ming, in contrast, inserted this "Multimodal Transport" clause—Clause 7(B)(2)—into its bill of lading to take advantage of certain exculpatory provisions that routinely appear in inland carrier contracts, but that do not generally appear in ocean bills of lading.  For example, inland carrier contracts typically contain a notice of claim provision (usually a requirement that formal claim be filed within nine months), while bills of lading under COGSA do not.  Thus, having expressly chosen to opt out of the Yang Ming bill of lading and be governed by this separate contract when Multimodal Transport is at issue, Yang Ming cannot now choose to opt back into it so as to avoid liability.

In summary, the Yang Ming bill of lading expressly provides that when Multimodal Transport is undertaken, as was the case here, to the extent there exists a "private contract of Carriage between the Carrier and any Underlying Carrier", such Multimodal Transportation is governed by, in this case, the Intermodal Transportation Agreement.  This private contract between Yang Ming and Norfolk Southern expressly provides for carrier liability in the event of damage to cargo arising out of a train derailment.

## II.

### A CASE FROM THIS DISTRICT HAS ALREADY FOUND, AND YANG MING DID NOT CONTEST, THAT, PURSUANT TO THE SAME BILL OF LADING, THE TERMS OF A TRANSPORTATION CONTRACT WITH AN UNDERLYING CARRIER WOULD GOVERN IN THE EVENT OF A MULTIMODAL LOSS; YANG MING IS THEREFORE COLLATERALLY ESTOPPED <u>FROM ARGUING TO THE CONTRARY IN THIS CASE</u>

In fact, the Court is relieved from having to decide whether the Yang Ming bill of lading incorporates by reference—and is thus governed by—the Intermodal Transportation Agreement; three months ago Judge Castel already settled the identical legal question involving the identical bill of lading against the same Defendant, Yang Ming.

Collateral estoppel—also known as issue preclusion—"ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a difference cause of action involving a party to the prior litigation.'" *Burlington Northern Railroad Company v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231 (3d Cir. 1995) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). In this Circuit, four elements must be satisfied for the doctrine to be applied:

> (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.

*Limonium Maritime S.A. v. Mizushima Marinera, S.A.*, 1999 WL 46721 at *7 (S.D.N.Y. 1999) (quoting *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)). Furthermore, "[c]omplete identity of parties in the two suits is not required for the application of issue preclusion." *Burlington Northern*, 63 F.3d at1232. As the Third Circuit has aptly explained, the United States Supreme Court, in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979), has endorsed the use of "offensive non-mutual collateral estoppel,"

7

whereby "a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding, . . . subject to an overriding fairness determination by the trial judge." *Burlington Northern*, 63 F.3d at 1232 (quoting *Parklane Hosiery*, 439 U.S. at 326) (footnotes and citations omitted).

In *Nippon Express U.S.A. (Illinois), Inc. v. M/V Chang Jiang Bridge and Yang Ming Marine Transport Corporation*, No. 06 Civ. 694 (Castel, J., December 13, 2007) (Barton Decl., Exh. 6), Judge Castel was asked to decide whether the same Yang Ming bill of lading at issue in this case incorporated by reference a private contract with a stevedore. *Id.* at 1-2. Plaintiff had raised this issue in its opposition memorandum to Defendant Yang Ming's motion to dismiss. In Defendant Yang Ming's reply, it did not contest the issue of incorporation by reference; Yang Ming simply argued that the stevedore was not an "Underlying Carrier", and thus the private contract between Yang Ming and the stevedore could not control per the terms of the Yang Ming bill of lading. In fact, even Judge Castel noted that "Yang Ming argues that the Stevedore Contract has not been incorporated into the Bill of Lading because that contract is not "a private contract of Carriage between the Carrier and an[] Underlying Carrier" as defined by the Bill of Lading." *Nippon Express*, No. 06 Civ. 694 at 8.

In deciding this question, Judge Castel explained the issue as follows:

> As the parties have framed the issue, if TransBay, acting as stevedore, is an "[u]nderlying [c]arrier" pursuant to the Bill of Lading, then the Stevedore Contract's terms and conditions govern . . . . If TransBay is not an "[u]nderlying [c]arrier" pursuant to the Bill of Lading, then the claims and the parties are subject to the [Yang Ming bill of lading].

*Id.* at 8. Following a reasoned analysis, Judge Castel concluded that because the stevedore was not an "Underlying Carrier" pursuant to the Yang Ming bill of lading, the stevedore contract did not control. *Id.* at 9-12. Importantly, however, as quoted above, if Judge Castel **had** found the

8

stevedore to be an "Underlying Carrier" pursuant to the Yang Ming bill of lading, then the terms of the private stevedore contract would govern. *Id.* at 8.

The requirements for collateral estoppel to apply are more than satisfied in this case:

- The issue in *Nippon Express* and in the present case is whether a private contract with an "Underlying Carrier" pursuant to the Yang Ming bill of lading is incorporated by reference and therefore governs the relationship of the contracting parties;

- The issue was actually decided by Judge Castel (Barton Decl., Exh. 6);

- The defendant in both cases was Yang Ming Marine Transport Corporation;

- Yang Ming was given a full and fair opportunity to litigate the issue in *Nippon Express*, choosing not to oppose the issue of incorporation by reference; and

- The issue was necessary to support a final judgment on the merits because it concerned the operation of a forum selection clause.

Furthermore, the fact that Plaintiff was not a party in *Nippon Express* does not preclude application of collateral estoppel to settle this issue. See *Parklane Hosiery*, 439 U.S. at 326.

### III.

### THE INTERMODAL TRANSPORTATION AGREEMENT EXPRESSLY PROVIDES THAT NORFOLK SOUTHERN IS LIABLE FOR DAMAGES TO CARGO ARISING OUT OF A TRAIN DERAILMENT

Having established that the Intermodal Transportation Agreement governs the relationship between Yang Ming and Norfolk Southern in this case, rather than the Yang Ming bill of lading, Yang Ming's liability follows as a pure matter of contract law.

Again, the Intermodal Transportation Agreement provides, in pertinent part:

9

> [Norfolk Southern] will be liable for and will hold [Yang Ming] harmless against loss of or damage to freight in containers transported at the rates and charges provided in this Agreement and Exhibit 1 **only to the extent that the sole proximate cause of said loss or damage is a railroad accident, derailment, or collision between railroad equipment negligently caused by [Norfolk Southern]**.

(Barton Decl., Exh. 5, ¶ 12.B(1)).  Therefore, Clause 12.B(1) of the Intermodal Transportation Agreement governs both carriers'—Norfolk Southern and Yang Ming's—liability in this case.  In other words, if Norfolk Southern is liable, Yang Ming also is liable.

Clause 12.B(1) is unambiguous.  Norfolk Southern, and thus Yang Ming, is liable for damage to freight in containers if the sole cause of the damage is, *inter alia*, a derailment.  Of course, this is precisely what happened in the present case. (Barton Decl., Exh. 7).

Yang Ming may attempt, however, to urge a different reading of the provision.  Specifically, Yang Ming may suggest that it can only be liable if the derailment was caused by its own negligence.  Essentially, Yang Ming would want to read the final phrase, "negligently caused by [Norfolk Southern]," as applicable to the preceding three events: railroad accidents, derailments and collisions between railroad equipment.  This interpretation, however, is simply untenable according to basic rules of grammatical construction.

Yang Ming essentially would ask the Court to ignore the "doctrine of last antecedent."  This doctrine "requires 'qualifying words, phrases, and clauses to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote.'"  *Chao v. Community Trust Co.*, 474 F.3d 75, 81 (3d Cir. 2007) (quoting *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 365 (3d Cir 2004)).  In this case, because the "negligence" phrase of Clause 12.B(1) is found only in the "collisions" part of the sentence and it is not set off by commas itself, the phrase only modifies "collisions between railroad equipment," and ***not*** accidents or derailments.  *See id.* (recognizing that in *Nat'l Sur.*

10

*Corp. v. Midland Bank,* 551 F.2d 21, 34 (3d Cir.1977), a "lack of a comma limited application of the qualifying language to the word immediately preceding it".).

In summary, the express language of the Intermodal Transportation Agreement clearly establishes a strict liability standard for both accidents and derailments, while limiting liability to negligence only in the case of collisions of railroad equipment.  This contract governs the liability of Yang Ming in this case.  Because it was a derailment that damaged the subject cargo in the present case, Yang Ming is liable for the damage to the subject cargo without limitation.

### **CONCLUSION**

Plaintiffs' motion should be granted.

Dated: Rye, New York
February 22, 2008

MALOOF BROWNE & EAGAN LLC

By: /s/ Thomas M. Eagan
David T. Maloof (DM 3350)
Thomas M. Eagan (TM 1713)
411 Theodore Fremd Avenue – Suite 190
Rye, New York 10580
Tel:  (914) 921-1200
Fax: (914) 921-1023
*Attorneys for Plaintiff*

\\SERVER1\Company\WP-DOCS\2503.81\022208 Memo In Support Mtn Partial SJ.doc