Charles L. Howard (admitted *pro hac vice*)
Keenan Cohen & Howard P.C.
One Pitcairn Place
165 Township Line Rd.
Jenkintown, PA 19046
(215) 609-1110

*Attorneys for Defendants*
*Norfolk Southern Corporation, Norfolk Southern*
*Railway Company and The Kansas City Southern*
*Railway Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, and SOMPO JAPAN INSURANCE, INC. | **NO.: 07 CIV. 2735** |
| *Plaintiffs,* | JUDGE CHIN |
| - against - | **DECLARATION OF CHARLES L. HOWARD IN SUPPORT OF DEFENDANTS' MOTION, PURSUANT TO FED. R. CIV. 12(b)(3) and (6), TO DISMISS COUNTS ONE, THREE, FOUR, FIVE, SEVEN, EIGHT, NINE, ELEVEN AND TWELVE OF PLAINTIFFS' COMPLAINT PARTIAL SUMMARY JUDGMENT** |
| YANG MING MARINE TRANSPORT CORPORATION, | |
| *Defendant.* | |

I, Charles L. Howard, declare that I am a principal of Keenan Cohen & Howard P.C., attorneys

for defendant Yang Ming Marine Transport Corporation.

1.      Attached hereto as Exhibit A is a true and accurate copy of "Statement of

Relatedness" served by plaintiffs' counsel in this matter.

2.      Attached hereto as Exhibit B are true and accurate copies of excerpts from

plaintiffs' complaint and defendants' answer thereto filed in the case captioned and docketed as

*Sompo Japan Ins. Co. of America, et al., v. Norfolk Southern Ry. Co., et al.,* U.S.D.C. for the

S.D.N.Y., 07 Civ. 2735 ("the Related Case").

      3.     Attached hereto as Exhibit C is a true and accurate copy of p. 6 from plaintiffs'

response to transfer venue in the Related Case.

      4.     Attached hereto as Exhibit D is a true and accurate copy of pp. 1 – 20 of the

transcript from the hearing held in the Related Case on November 21, 2007.


                                                     /s/ Charles L. Howard
                                                    Charles L. Howard

Dated: February 25, 2008

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned counsel, hereby certify that on February 25, 2008, a true and correct copy of the foregoing Declaration of Charles L. Howard in Support of Defendants' Motion, Pursuant to Fed. R. Civ. 12(b)(3) and (6), to Dismiss Counts One, Three, Four, Five, Seven, Eight, Nine, Eleven and Twelve of Plaintiffs' Complaint Partial Summary Judgment was filed electronically.  Notice of this filing will be sent to the following party, listed below, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

David T. Maloff, Esquire
Thomas M. Eagan, Esquire
MALOFF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411

*Attorneys for Plaintiffs*

By:    /s/ Charles L. Howard
       Charles L. Howard

# EXHIBIT A

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TM 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York  10580
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, and SOMPO JAPAN INSURANCE, INC., | : |
|  | : |
| Plaintiffs, | : |
| - against - |  |
|  | : |
| YANG MING MARINE TRANSPORT CORPORATION, | : |
|  | : |
| Defendants. |  |

07 Civ. 11276

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## STATEMENT OF RELATEDNESS

Plaintiff submits this Statement of Relatedness concerning the above-captioned matter and another case pending in this District—*Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc. v. Norfolk Southern Railway Company, Norfolk Southern Corporation and The Kansas City Railway Company*, 07 Civ. 2735 (DC).

The underlying facts in both matters are the same.  In both cases, Yang Ming Transport Co. issued bills of lading to carry shipments by sea aboard the M/V Cherokee Bridge from Japan to Long Beach, California, and from there via rail to inland U.S. destinations.  The train carrying the shipments derailed in Texas.

Both cases involve the same plaintiffs and cargo—Kubota tractors, Unisia Autoparts and Hoshizaki sushi cases.

The 07 Civ. 2735 case is against the rail defendants Norfolk Southern Railway

Company, Norfolk Southern Corporation and The Kansas City Southern Railway Company.


Dated: Rye, New York
       December 7, 2007

MALOOF BROWNE & EAGAN LLC

By:_____
       David T. Maloof (DM 3350)
       Thomas M. Eagan (TM 1713)
       411 Theodore Fremd Avenue – Suite 190
       Rye, New York 10580
       Tel:  (914) 921-1200
       Fax: (914) 921-1023
       *Attorneys for Plaintiff*


\\SERVER1\Company\WP-DOCS\2503.81\120607 Stmnt of Relatedness.doc

# EXHIBIT B

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TE 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x



SOMPO JAPAN INSURANCE COMPANY OF
AMERICA, and SOMPO JAPAN INSURANCE,
INC.

                             *Plaintiffs,*

        - against -

NORFOLK SOUTHERN RAILWAY
COMPANY, NORFOLK SOUTHERN
CORPORATION, and THE KANSAS CITY
SOUTHERN RAILWAY COMPANY

                             *Defendants.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**07 CIV. 2735**

07 Civ

**JUDGE CHIN**

<u>COMPLAINT</u>

        Plaintiffs Sompo Japan Insurance Company of America ("Sompo America") and

Sompo Japan Insurance, Inc. ("Sompo Japan") by their undersigned attorneys, Maloof Browne &

Eagan LLC, for their Complaint allege, upon information and belief, as follows:

        1.      This action arises under the Court's federal question jurisdiction (28 U.S.C.

1331 and 49 U.S.C. 14706) and/or supplemental jurisdiction (28 U.S.C. 1367) as hereinafter more

fully appears.

        2.      Plaintiff Sompo America is an insurance company organized and existing

under the laws of the State of New York with its principal place of business in New York, New

York, and is the insurer of one or more of the Shipments that are the subject of this action, as more

fully described below.

1

3.    Plaintiff Sompo Japan is an insurance company organized and existing under the laws of Japan, and is the insurer of one or more of the Shipments that are the subject of this action, as more fully described below.

4.    Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (hereinafter "Norfolk Southern") are corporations organized and existing under laws of Virginia, were and are doing business as a common carrier of goods by rail for hire, were the delivering rail carriers of the Shipments at issue, and operate a railroad or route within this District, and do business in the State of New York.

5.    The Kansas City Southern Railway Company (hereinafter "Kansas City") is a corporation organized and existing under the laws of the state of Missouri, and was and is doing business as a common carrier of goods by rail for hire, and does business within this District. Kansas City was a rail carrier and/or delivery rail carrier of the Shipments at issue and/or owned, operated and maintained the rail line on which the Shipments at issue were damaged.

6.    Venue is proper here within the meaning of 28 U.S.C. § 1391 and 49 U.S.C. 11706(d)(2). All defendants reside within this District within the meaning of 28 U.S.C. § 1391(c).

## A. KUBOTA TRACTOR SHIPMENT

7.    On or about March 31, 2006, at the Port of Tokyo, Japan, there was shipped by Kubota Corporation and loaded aboard the M/V Cherokee Bridge a consignment of Agricultural Tractors, then being in good order and condition, in Containers YMLU8294100, FSCU6904489, CLHU8586100, XINU8033402, YMLU8217892, YMLU8264472, CRXU9841070, YMLU8190019, TGHU8035818, YMLU8131839, CRXU9505408, INKU6363983, BHCU4940820, CRXU9829536, TRLU8116442, YMLU8223405 (the "Kubota Shipment"). The Kubota Shipment was discharged in

2

Barry N. Gutterman, Esq. (BG6410)
Robert Briere, Esq. (RB6080)
Barry N. Gutterman & Associates, P.C.
Attorneys for Defendants
Norfolk Southern Railway Company,
Norfolk Southern Corporation
and Kansas City Southern Railway Company
60 East 42nd Street, 46th Floor
New York, New York 10165
(212) 983-1466

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X

SOMPO JAPAN INSURANCE COMPANY, and SOMPO
JAPAN INSURANCE, INC.

                    Plaintiffs,                          **07 Civ 2735 (Judge Chin)**

v.

NORFOLK SOUTHERN RAILWAY COMPANY, NORFOLK
SOUTHERN CORPORATION and KANSAS CITY
SOUTHERN RAILWAY COMPANY

                    Defendants.

----------------------------------------------------------------------

**NORFOLK SOUTHERN RAILWAY COMPANY'S AND KANSAS CITY SOUTHERN
RAILWAY'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' COMPLAINT**

Defendants, Norfolk Southern Railway Company ("NSRC") and Kansas City Southern

Railway Company ("KCS")(collectively, "the Defendants") by and through their attorneys,

Barry N. Gutterman & Associates, P.C., hereby answer Plaintiffs' Complaint and aver

Affirmative Defenses, and in support thereof states as follows:

1.      The allegations contained in paragraph of 1 plaintiff's complaint are conclusions

of law to which no response is required and are accordingly denied. To the extent that any of

said allegations can be construed as factual allegations, they are denied with proof demanded at trial.

2.      The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in paragraph 2 of plaintiff's complaint and, therefore, those allegations are denied with proof demanded at trial.

3.      The Defendants are without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in paragraph 3 of plaintiff's complaint and, therefore, those allegations are denied with proof demanded at trial.

4.      NSRC admits the allegations in paragraph 4 of plaintiff's complaint.  KCS is without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in paragraph 4 of plaintiff's complaint and, therefore, denies those allegations with proof demanded at trial.

5.      KCS denies that it was the "delivery rail carrier" of the Shipments at issue herein and denies that it does business in this district.  NSRC is without sufficient knowledge and information upon which to form a belief as to the truth of the allegations contained in paragraph 5 of plaintiff's complaint and, therefore, denies those allegations with proof demanded at trial.

6.      The allegations contained in paragraph 6 of plaintiff's complaint are conclusions of law to which no response is required and are accordingly denied.  To the extent that any of said allegations can be construed as factual allegations, they are denied.

7.      NSRC admits that it accepted the Kubota Shipment when interchanged to its track and, in consideration of certain freight charges thereupon paid or agreed to be paid, agreed to carry the Kubota Shipment to Georgia via rail and there deliver the Shipment in good order and condition to the rail destination identified on the governing bill of lading.  KCS admits that it

2

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA and SOMPO JAPAN INSURANCE, INC. | : | 07 Civ. 2735 (DC) |
| _Plaintiffs,_ | : | |
| - against - | : | |
| NORFOLK SOUTHERN RAILWAY COMPANY, NORFOLK SOUTHERN CORPORATION and THE KANSAS CITY RAILWAY COMPANY | : | |
| _Defendants._ | | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER PURSUANT
TO 28 U.S.C. 1404(a)**

David T. Maloof
Thomas M. Eagan
Maloof Browne & Eagan LLC
411 Theodore Fremd Avenue, Ste. 190
Rye, New York 10580
Phone: (914) 921-1200
Fax: (914) 921-1023
Email: dmaloof@maloofandbrowne.com
teagan@maloofandbrowne.com

Attorneys for Plaintiffs Sompo Japan Insurance

locale:

> "(2)(a) A civil action under this section may only be brought--
>
>        *          *          *
>
> ... (ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such a judicial district."

49 U.S.C. §11706 (d) (2) (A).[6]

       The Southern District of New York is admittedly a District where Norfolk Southern runs routes (see footnote 2 above), It is also the principal place of business of Sompo America. Congress has thus mandated that a cargo plaintiff has the right to sue in this District. Thus, while the Carmack Amendment's forum selection provisions do not entirely nullify the 1404(a) transfer motion, Defendants, by agreeing to operate under that statute, have added to their burden in seeking the transfer for "convenience" that they now seek.

       To overcome such a forum selection agreement, the Defendant must establish that a trial in the contractual forum will be "so gravely difficult and inconvenient" that he or she will for all practical purposes be deprived of his or her day in court. *Orix Credit Alliance, Inc., v. Brown,* 1994 WL 392240 (S.D.N.Y. 1994), *quoting M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18, 92 S. Ct. 1907, 32, 32 L. Ed. 2d 513 (1972).

---

[6] Defendant Norfolk Southern has assumed here the complete defense of and is fully defending the originating rail carrier, Defendant Kansas City Southern Railway Company. Kansas City thus raises no independent venue issues of its own.

# EXHIBIT D

# In The Matter Of:

*SOMPO JAPAN INSURANCE COMPANY v.*
*NORFOLK SOUTHERN RAILWAY*

---

*November  21, 2007*

---

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 7bl1somc.txt, Pages 1-45

**Word Index included with this Min-U-Script®**

## Page 1

7b11somc

[1] UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
[2] ------------------------------x
[3] SOMPO JAPAN INSURANCE COMPANY
OF AMERICA,
[4]
[5]                Plaintiff,
[6]      v.                          07-CV-2735 (DC)
[7] NORFOLK SOUTHERN RAILWAY
COMPANY, NORFOLK SOUTHERN
[8] CORPORATION, THE KANSAS CITY
SOUTHERN RAILWAY COMPANY,
[9]
[10]               Defendants.
       ------------------------------x
[11]                                 New York, N.Y.
                                    November 21, 2007
[12]                                 10:19 a.m.
[13] Before:
[14]            HON. DENNY CHIN,
[15]                          District Judge
       APPEARANCES
[16] MALOOF, BROWNE & EAGAN, LLC
[17]      Attorneys for Plaintiff
BY:  DAVID T. MALOOF, ESQ.
[18]      THOMAS M. EAGAN, ESQ.
[19] KEENAN COHEN & HOWARD, P.C.
      Attorneys for Defendants
[20] BY:  CHARLES L. HOWARD, ESQ.
[21]
[22]
[23]
[24]
[25]

## Page 2

[1]           (In open court)
[2]      THE COURT:  Okay.  We have two motions.  One of the
[3] motions is transfer, the other is the motion for partial
[4] summary judgment.  I've read the papers.  And I know the
[5] parties had wanted to put in surreplies, so this is your
[6] opportunity to supplement the papers.  Who wants to go first?
[7]      MR. MALOOF:  I'd be happy to go first.  For the
[8] plaintiff, your Honor, David Maloof, Maloof, Browne & Eagan.
[9]      THE COURT:  Good morning.
[10]     MR. MALOOF:  Good morning.  Happy Thanksgiving eve.
[11]     THE COURT:  Thank you.
[12]     MR. MALOOF:  I thought I'd argue the venue motion
[13] first.
[14]     MR. HOWARD:  Then shouldn't I go first because it's my
[15] motion?
[16]     THE COURT:  The moving party should go first.
[17]     MR. MALOOF:  Okay.  Thank you.
[18]     MR. HOWARD:  Your Honor, may I move to the podium?
[19] Because it's a long way down here for me.
[20]     THE COURT:  Whatever you'd like.  Sure.
[21]     MR. HOWARD:  Good morning.  May it please the Court,
[22] my name is Charles Howard and I represent the defendants in
[23] this action.
[24]     The defendants have moved to transfer venue of this
[25] matter to the Northern District of Georgia pursuant to 28 USC

## Page 3

[1] 1404.  The required analysis is well settled.  It's case
[2] specific and it's fairly straightforward.  Motion to transfer
[3] under Section 1404 should be granted if the action could have
[4] been brought in the transferee court and if a transfer would
[5] serve the interests of justice and the convenience of the
[6] witnesses and parties.  This action could have been brought in
[7] Georgia.  Sompo concedes as much in its briefing.  If this case
[8] is truly a Carmack case -- and of course, NS does not concede
[9] that Carmack is the controlling law -- but if it is a Carmack
[10] case, venue is certainly proper in Georgia against Norfolk
[11] Southern as it was the delivering carrier where the point of
[12] destination is located.  This case --
[13]     THE COURT:  You're not arguing that venue was improper
[14] in Southern District of New York, right, you're just arguing
[15] that it's more convenient down there?
[16]     MR. HOWARD:  Venue is proper in the Southern District
[17] of New York.
[18]     THE COURT:  Okay.
[19]     MR. HOWARD:  Otherwise we'd be under a different
[20] section here.
[21]     THE COURT:  Yes.
[22]     MR. HOWARD:  And if it's not under Carmack, then 28
[23] USC 1391 would control, and venue would also be proper under
[24] that statute, since certainly Norfolk Southern is subject to
[25] personal jurisdiction in the Northern District of Georgia.

## Page 4

[1]      Since the case could have been brought in Georgia, the
[2] Court would then have to move to the interests of justice and
[3] convenience of the witnesses and parties analysis.  That's a
[4] six- or seven-factor test.  And the first factor is the
[5] convenience of witnesses, both nonparty and party.  Courts have
[6] regularly held that the convenience of nonparties is a more
[7] significant factor than the convenience of parties.  There are
[8] literally witnesses all over the globe, both party and
[9] nonparty, who have information relevant to the issues in this
[10] lawsuit and for whom travel to either Georgia or New York would
[11] be inconvenient.  However, if this is truly a Carmack claim,
[12] the factual issues which will be presented at trial are very
[13] narrow, the first of which would be the condition of the
[14] freight at origin.  In all likelihood that will be established
[15] by testimony from Sompo's insureds or their representatives,
[16] all of whom are located either in Japan or in China.  For them,
[17] transoceanic, transcontinental travel is going to be required
[18] regardless of whether this case is venued in New York or
[19] Atlanta, Georgia.
[20]      The second issue that will have to be addressed at
[21] trial is the condition --
[22]      **THE COURT:**  I mean, that factor doesn't cut either
[23] way.
[24]      **MR. HOWARD:**  No, condition of origin goes either way.
[25] Doesn't matter.

Page 5

[1]    THE COURT: Okay.

[2]    MR. HOWARD: Condition at destination will in all
[3] likelihood be established by testimony from the individuals,
[4] all of whom are nonparties, who were specifically retained to
[5] determine the nature and extent of the damage to the freight.
[6] They are located in Georgia. They are identified specifically
[7] in defendants' brief, and documentation of who they are, what
[8] they know, what issues they have information about and where
[9] they are located is also included in Norfolk Southern's brief.

[10]    In response --

[11]    THE COURT: On that point, the plaintiff argues that
[12] from their perspective, the damages were investigated by
[13] witnesses who are now in New York.

[14]    MR. HOWARD: Well, we learned from the affidavits
[15] of -- is it Perfect or Perfect?

[16]    MR. MALOOF: Perfect.

[17]    MR. HOWARD: -- Mr. Perfect and Mr. Costanzo that they
[18] hired surveyors who are down in Georgia, they communicated with
[19] their insureds, they reviewed and evaluated the numerous claim
[20] documents concerning the condition and value of the cargo, and
[21] calculated and approved the amount payable to the insureds
[22] under the various policies. In other words, anything Mr.
[23] Perfect and Mr. Costanzo would have to offer about the
[24] condition of freight at destination would be pure hearsay
[25] obtained from the nonparties, all of whom are located in

Page 6

[1] Georgia, and those are the ones who actually conducted the
[2] investigation. I did not see anywhere in Mr. Perfect's or
[3] Mr. Costanzo's affidavits where it says that they actually did
[4] the investigation, that they actually did the survey. Your
[5] Honor, what they did is they read reports that had been sent to
[6] them by the surveyors who were down in Georgia.

[7]    Sompo also argues in its brief that the testimony of
[8] the surveyors -- and I'm quoting -- "would be fairly
[9] meaningless." That's interesting in light of the fact that
[10] condition at destination is one of the three elements which
[11] Sompo is required to prove to establish its prima facie case
[12] under Carmack.

[13]    Of course, the question is, without this "meaningless"
[14] testimony, how is Sompo going to establish that particular
[15] element? Sompo in its brief suggests it can do that with
[16] photographic evidence recorded by the surveyors themselves
[17] without indicating how it would establish the foundation for
[18] the admissibility of those photographs without foundational
[19] testimony from those who actually took the pictures. It is
[20] doubtful that Mr. Perfect would agree with Sompo's counsel that
[21] the information possessed by the surveyors is fairly
[22] meaningless in light of his email of August 23rd, 2006 to one
[23] of the surveyors in which he commented on the importance of
[24] that surveyor's work. And that email is at Exhibit J to our
[25] brief.

Page 7

[1]    Sompo also argues that defendants -- and I'm
[2] quoting -- "suddenly claimed that completing discovery from New
[3] York --"

[4]    THE COURT: Do you agree that Mr. Perfect, for
[5] example, evaluated the reports and decided how much to pay out,
[6] right?

[7]    MR. HOWARD: Certainly.

[8]    THE COURT: He's definitely a witness.

[9]    MR. HOWARD: He's a witness on the third element of
[10] the Carmack claim, which would be the damages, yes. He would
[11] be a party witness.

[12]    THE COURT: All right. Go ahead.

[13]    MR. HOWARD: Sompo also argues that defendants -- and
[14] I'm quoting -- "have suddenly claimed that completing discovery
[15] from New York would be unduly burdensome." Nowhere, however,
[16] in the defendants' brief do the defendants argue that discovery
[17] in New York would be unduly burdensome. In fact,
[18] notwithstanding the fact that Sompo appears to quote the
[19] defendants as having used the term "unduly burdensome," that
[20] term does not appear anywhere in Norfolk Southern -- in
[21] defendants' brief.

[22]    THE COURT: Are there any other witnesses other than
[23] the surveyors in Georgia?

[24]    MR. HOWARD: There are the surveyors and there was a
[25] witness as to the salvage value of one of the shipments. There

Page 8

[1] may have been at least one, one witness, I think it's Mr.
[2] Robinson, who's a witness as to the salvage value of -- I
[3] believe it was the tractors, but I'm not sure.

[4]    THE COURT: Okay.

[5]    MR. HOWARD: The whole discovery issue, the defendants
[6] don't even mention the word discovery in their brief. That's
[7] simply a strawman argument.

[8]    Now Sompo in its brief, on pages 4 and 5, provide the
[9] very convenient chart --

[10]    THE COURT: Is it true that your clients litigated
[11] these kinds of cases in the Southern District of New York for
[12] years without any objection to venue and that it was only after
[13] that decision -- where was it, in the Fifth Circuit -- that
[14] there's been a change of heart?

[15]    MR. MALOOF: The Second Circuit, your Honor.

[16]    THE COURT: In the Second Circuit.

[17]    MR. HOWARD: Your Honor, I certainly looked at the
[18] chart of cases that the plaintiffs provided in their brief. I
[19] did not go back and research each one of those cases to find
[20] out what the issues were, to find out whether venue had even
[21] been discussed. We did not represent certainly Norfolk
[22] Southern in the overwhelming number of those cases. I think it
[23] was only a few that our firm might have had any involvement.
[24] But I really can't answer that question. I don't know whether
[25] those cases are in fact these kinds of cases. Certainly

Page 9

[1] Sompo's --

[2]     **THE COURT:** Certainly we hear all the time cargo cases

[3] in this Court --

[4]     **MR. HOWARD:** Absolutely.

[5]     **THE COURT:** -- that seemingly have no connection to

[6] the Southern District of New York.

[7]     All right. Go ahead.

[8]     **MR. HOWARD:** Okay. I'm going to be looking at the

[9] chart that the plaintiffs provided on pages 4 and 5 of their

[10] brief. There they, in sort of bullet point form, they go

[11] through each of the jurisdictions. And the first one is New

[12] York. And here they make reference to, again, this is to Mr.

[13] Perfect and Mr. Costanzo. I've already addressed those two,

[14] and yes, they are party witnesses, and they would have

[15] testimony certainly with respect to the third element of the

[16] Carmack claim, which is the amount of damages.

[17]     **THE COURT:** Yes. I mean, I think most of these

[18] contacts don't favor Georgia or New York. I think the question

[19] really is New York versus Georgia. And so we have Mr. Perfect,

[20] Mr. Costanzo in New York, and then we have the surveyors and

[21] perhaps a salvage person in Georgia.

[22]     **MR. HOWARD:** Right.

[23]     **THE COURT:** And that's basically those --

[24]     **MR. HOWARD:** The Georgia witnesses are all nonparties,

[25] Mr. Perfect and Mr. Costanzo are parties. They're certainly

Page 10

[1] going to go to testify regardless of where this case is venued.

[2]     As for the nonparty witnesses in Georgia, as we argue

[3] in our brief, they would not be subject to the subpoena power

[4] of this particular Court, although they would be subject to the

[5] subpoena power of the court in Georgia.

[6]     In fact, that's the next factor I wanted to address,

[7] which was the availability of process to compel the attendance

[8] of unwilling witnesses. Under the Federal Rules of Civil

[9] Procedure this Court could not compel the testimony of nonparty

[10] witnesses who reside in Georgia to attend trial. The Northern

[11] District of Georgia, however, could compel such testimony and

[12] therefore, live testimony of those individuals who have

[13] firsthand personal knowledge of the condition of the freight at

[14] destination is more likely to occur if this case is venued in

[15] Georgia than it is here in the Southern District of New York.

[16]     As for Sompo's argument that depositions would

[17] suffice, the courts in this district have recognized that, for

[18] example, a de bene esse deposition is "a poor substitute for

[19] live testimony," and we cite to a case on that point in our

[20] brief. Sompo did not really address this issue in its briefing

[21] other than to erect a strawman argument that I've already

[22] addressed that depositions can take place telephonically, and

[23] it also says it would pay to fly witnesses to trial. That

[24] offer by Sompo's counsel certainly doesn't address the fact

[25] that this Court cannot compel any of the nonparty witnesses to

Page 11

[1] come up here to testify.

[2]     Sompo also cited to a case, Duncan v. IBM, for the

[3] proposition that electronic testimony through video

[4] transmission would certainly suffice. That particular case is

[5] clearly distinguishable. In Duncan, the plaintiff sued IBM

[6] here in New York. The plaintiff wanted live testimony from IBM

[7] employees who resided in New York. The defendant IBM wanted

[8] the case moved to Texas because it wanted live testimony from

[9] witnesses who were familiar with the plaintiffs who reside in

[10] Texas. The court essentially held that it didn't matter which

[11] forum it picked; one of the parties' witnesses were going to be

[12] inconvenienced. That's not the case here, because of the

[13] Georgia witnesses, all of whom are nonparties.

[14]     The next factor is the locus of the operative facts.

[15] And again, as I already mentioned, the elements of a Carmack

[16] claim help define what facts are operative. Where is the locus

[17] of operative facts with respect to the condition at origin?

[18] That's either in Japan or China. Where is the locus of

[19] operative facts with respect to the condition at destination?

[20] That's clearly in Georgia, your Honor, where the freight was

[21] delivered, unloaded and inspected for damage. More

[22] importantly, none of the operative facts occurred here in New

[23] York City other than Mr. Perfect and Mr. Costanzo calculating

[24] what the damages are. Sompo did not address that issue

[25] directly in its briefing other than indirectly through the

Page 12

[1] affidavits of Mr. Perfect and Costanzo.

[2]     Sompo has also made much of the fact that the

[3] derailment occurred in Texas and perhaps this case should be

[4] venued in Texas. Again, Texas has nothing to do with -- going

[5] back to the chart on page 5 of Sompo's brief, plaintiffs make

[6] much of the fact that the history of the track maintenance as

[7] well as witnesses of the condition of the cargo where the rail

[8] cars flipped will all be relevant, but those facts would not be

[9] relevant under a Carmack claim, your Honor, because Carmack is

[10] essentially a strict liability statute where all that's

[11] important where liability is established once the plaintiff

[12] proves that there was good -- the freight was in good condition

[13] at origin, it was in bad condition at destination and that

[14] there was some damages.

[15]     **THE COURT:** Potentially, I mean, it's not just a

[16] Carmack claim, right?

[17]     **MR. HOWARD:** If in fact it is a COGSA claim, there is

[18] a negligence claim in COGSA and then the witnesses in Texas

[19] might have -- or what happened in Texas might be relevant.

[20] However, as the Court has already noted, Texas witnesses are

[21] going to be inconvenienced one way or the other. They're

[22] either going to go to New York City or to Atlanta, Georgia.

[23]     **THE COURT:** Why don't you finish up.

[24]     **MR. HOWARD:** Yes, I will.

[25]     Plaintiffs also argued about the fact that they chose

**Page 13**

[1] this forum and that should have some weight. That factor,
[2] however, has little significance in light of the fact that
[3] defendants seek only transfer. In a case where we were seeking
[4] dismissal say under 1406, that might have some more relevance
[5] or more significance, but it doesn't.
[6]     Plaintiffs choice of forum should also be given
[7] reduced emphasis when the facts of litigation bear little
[8] material connection to the chosen forum. Again, the only nexus
[9] that this case has to New York City is that is where the
[10] insurance claims made by Sompo insureds were handled.
[11]     THE COURT: Is the law a consideration in why your
[12] clients have made this motion?
[13]     MR. HOWARD: The law is --
[14]     THE COURT: Meaning substantive law.
[15]     MR. HOWARD: Substantive law is the same. It's either
[16] going to be Carmack or it's going to be COGSA.
[17]     THE COURT: But we have the Sompo decision in the
[18] Second Circuit here, which I gather your clients don't like.
[19]     MR. HOWARD: So what we have then is a split among the
[20] circuits, and there's a remedy to that. If in fact there is
[21] a --
[22]     THE COURT: But my question is, there is a split in
[23] the circuit.
[24]     MR. HOWARD: Yes, there is.
[25]     THE COURT: And isn't it true that a significant part

**Page 14**

[1] of why your client wants it to not be in the Second Circuit is
[2] the substantive law interpreting the Carmack Act?
[3]     MR. HOWARD: We want to be out of the Second Circuit
[4] as badly as they want to stay here, so yes, that is a
[5] motivating factor behind both the plaintiffs and the
[6] defendants. But there will be --
[7]     THE COURT: Right. But hasn't the Supreme Court
[8] suggested that a 1404 transfer motion shouldn't be used for
[9] this purpose?
[10]     MR. HOWARD: Yes. They did that in a case that
[11] involved -- where the court had diversity jurisdiction and
[12] where a transfer from one venue to another would result in
[13] application of another state's substantive law, which would
[14] have resulted in the plaintiff being thrown out of court.
[15]     THE COURT: Right.
[16]     MR. HOWARD: That's the --
[17]     THE COURT: Isn't this conceptually similar?
[18]     MR. HOWARD: No. They still have a remedy for their
[19] freight loss and damage claim in Georgia.
[20]     THE COURT: But it's a substantially reduced remedy,
[21] in light of the split in the circuits.
[22]     MR. HOWARD: Yes. It would be a reduced remedy in
[23] light of the split in the circuits. And then they would have
[24] the ultimate remedy to the Supreme Court to resolve the split
[25] in the circuits.

**Page 15**

[1]     THE COURT: Why isn't this similar then to the Van
[2] Dusen case?
[3]     MR. HOWARD: Because if a transfer's made, they're not
[4] out of court. That's what happened in Van Dusen. It was under
[5] one state's law there was a remedy, under another state's law
[6] there was no remedy. Here they have a remedy.
[7]     THE COURT: All right. I understand your points.
[8]     MR. HOWARD: In our brief we cite to the Mitsui Marine
[9] case and the Royal and Sun Alliance v. British Airways case,
[10] which both say that the plaintiff's choice of forum should be
[11] given less weight when in fact it's a subrogee, insurance
[12] company subrogee that's bringing the claim. The Royal and Sun
[13] Alliance case was resolved here in this court, and that case
[14] presents the exact same -- I'll call them 1404 facts presented
[15] in this case for transfer. That is that the nonparty
[16] witnesses, all of whom were located in the transferee forum and
[17] all of whom had direct firsthand personal knowledge of the
[18] condition of freight at destination versus party witnesses who
[19] were located here in New York who were employees of a subrogee
[20] insurer and who did little more than handle claims and would do
[21] little more at trial than authenticate documents and establish
[22] the accuracy of damage figures but, more importantly, cannot
[23] testify as to the condition of the freight at destination, the
[24] court in the Royal and Sun Alliance matter said that such
[25] testimony given by the nonparty witnesses essentially goes to

**Page 16**

[1] the heart of the case, since it is a -- goes to one of the
[2] elements of plaintiff's prima facie Carmack claim.
[3]     I just want to respond to a couple points made by
[4] plaintiffs in their response. They argue that shipping freight
[5] subject to Carmack somehow means that the freight was shipped
[6] pursuant to a forum selection clause. They don't provide the
[7] Court with any authority for that proposition. And just
[8] because a rail carrier moves freight does not necessarily mean
[9] that a freight loss and damage claim will necessarily be
[10] governed by Carmack. It could very well be covered by a
[11] contract between the rail carrier and the rail services buyer.
[12]     And I've already addressed the Court's concern that
[13] there will be a change in the applicable law.
[14]     In closing, the balancing test which is required when
[15] resolving a 1404 motion to transfer venue weighs heavily in
[16] favor of transferring this case to the Northern District of
[17] Georgia. The defendants submit that such transfer is warranted
[18] and request that the Court transfer this matter to the Northern
[19] District of Georgia.
[20]     THE COURT: All right. Thank you.
[21]     MR. MALOOF: Good morning, your Honor. David Maloof.
[22] There have been a couple of developments. One is that
[23] we filed this morning a second case against Norfolk Southern
[24] which arises out of the same derailment, so we've asked that it
[25] be designated a related case, and I have a courtesy copy if

Page 17

[1] you'd like the complaint.

[2] **THE COURT:** Okay. Thank you. It's the same
[3] derailment?

[4] **MR. MALOOF:** The same derailment.

[5] **THE COURT:** Different parties or...

[6] **MR. MALOOF:** It's a different plaintiff, same
[7] defendants. Liability issues are the same. Where it might be
[8] significant is that one of the cargos was surveyed in
[9] Tennessee, not in Georgia.

[10] And what I've also prepared --

[11] **THE COURT:** Why is that? Why would it have been --

[12] **MR. MALOOF:** I think that's where the receiver was and
[13] so they waited until it went to the receiver to do the survey.

[14] **THE COURT:** Why was the cargo surveyed in Georgia
[15] here?

[16] **MR. MALOOF:** Because that's where the receivers were,
[17] so they took it on to destination.

[18] I also have a chart now of the six claims that would
[19] be pending for the Court. I've given one to Mr. Howard.

[20] **THE COURT:** Why don't you address the fact that the
[21] surveyors are in Georgia or, in this other case, in Tennessee.

[22] **MR. MALOOF:** Thank you, your Honor. Actually, I think
[23] one of the surveyors is in Texas, and in connection with these
[24] new claims which have been filed, the survey was done in
[25] Tennessee.

Page 18

[1] But with respect to the surveyors that are in Georgia,
[2] I have already stipulated, and I'll do it now officially, that
[3] we will agree to telephone depositions of those surveyors and
[4] we will pay to fly them to New York for trial. I actually
[5] overstated that in my brief. I think I said I would fly all
[6] Georgia witnesses to trial, but that would leave me open to
[7] him, you know, nominating a hundred witnesses, so I want to be
[8] a little careful. But we certainly would pay to fly all of the
[9] surveyors to trial in New York and also this Mr. Robinson who
[10] was involved with the salvage. Now the issue he makes there
[11] is, well, so plaintiff will pay to fly them here but maybe they
[12] won't come. In fact, the surveyors work for the railroad. I
[13] mean, they hire them to do this. I've never had a surveyor say
[14] he doesn't want to make more money to fly to New York.

[15] **THE COURT:** I think they are witnesses who are used to
[16] this kind of thing.

[17] **MR. MALOOF:** Yes. And all of those companies have
[18] offices in New York.

[19] **THE COURT:** You don't need to say anymore. I know
[20] what I'm going to do.

[21] **MR. MALOOF:** Okay.

[22] **THE COURT:** The motion is denied. The motion to
[23] transfer is denied. It seems to me that there is not a lot of
[24] dispute on the facts. I don't hear a substantial quarrel with
[25] the chart in the plaintiff's memorandum on pages 4 and 5. The

Page 19

[1] condition at origin, the witnesses are in Japan and China. The
[2] witnesses with respect to the derailment are in Texas. That
[3] may or may not be part of the case. I mean, at the moment it
[4] is part of the case. And potentially there could be a lot of
[5] witnesses there; and California, worldwide, etc., that would be
[6] the same. So really, what it boils down to is New York versus
[7] Georgia.

[8] In favor of transfer is the fact that the surveyors
[9] are nonparties, but they're professional witnesses in the sense
[10] that this is what they do, they're surveyors, and all the time
[11] surveyors are involved in litigation where they have to travel.
[12] I mean, I don't think it's a big deal for them. I can't
[13] imagine that they would refuse to travel to New York to testify
[14] at trial. They can certainly be subpoenaed in Georgia for a
[15] deposition, a trial deposition.

[16] There are witnesses in New York: Mr. Perfect, Mr.
[17] Costanzo. They don't have firsthand knowledge but they are the
[18] ones who evaluated the claims, they're the ones who decided how
[19] much to pay out. So indeed, they are witnesses on damages.
[20] And I think they essentially balance each other out.

[21] I don't think the operative facts really are in
[22] Georgia. If you look at the new case, for example, the
[23] surveyors are in Tennessee. It's just where it happened to
[24] wind up.

[25] I think I agree that there is less deference given to

Page 20

[1] the plaintiff's choice, but there still has to be some
[2] deference; there still is some deference. In addition, this is
[3] a district where the defendants do business, they're subject to
[4] jurisdiction here, they operate in the Southern District.

[5] I think the Carmack venue provision, I don't know if
[6] it's a -- I'll call it a choice of forum selection clause, but
[7] it makes it clear that the railroads are subject to
[8] jurisdiction where they operate.

[9] I think clearly a substantial part of the defendants'
[10] desire to move is the law, the state of the law. This is not
[11] exactly the same as the Van Dusen case in that the plaintiffs
[12] would not be without a remedy, but it potentially could be a
[13] substantially curtailed remedy. But I think really, the
[14] motivation here is not the convenience of the parties or the
[15] witnesses, the motivation is the law.

[16] And for all these reasons, I find that the interests
[17] of justice support keeping the case here in New York. I do not
[18] find that the convenience of the witnesses and parties would be
[19] better served in Atlanta. Accordingly, the transfer motion is
[20] denied.

[21] The next motion?

[22] **MR. EAGAN:** Good morning, your Honor. Thomas Eagan
[23] for the plaintiffs.

[24] **THE COURT:** This one is a little bit more complicated.

[25] **MR. EAGAN:** Yes. What we've done on this motion too