DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TM 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York  10580
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA and SOMPO JAPAN INSURANCE, INC., | : |
| *Plaintiffs,* | 07 Civ. 11276 (DC) |
| - against - | : |
| YANG MING MARINE TRANSPORT CORPORATION, | PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS NINE COUNTS OF THE COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) AND 12(b)(3) |
| *Defendant.* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc. (collectively "Sompo" or "Plaintiffs") hereby respectfully submit this Memorandum of Law in Opposition to Defendant Yang Ming Marine Transport Corporation's ("Yang Ming") Motion to Dismiss nine of the twelve counts pled by Plaintiffs in their Complaint pursuant to Rules 12(b)(6) and 12(b)(3) of the Federal Rules of Civil Procedure.

**STATEMENT OF FACTS**

This case arises, quite simply enough, out of a train derailment in the United States that damaged a variety of cargoes, consisting of Kubota Tractors, Unisia Auto Parts and Hoshizaki Electric Sushi Cases, which were all carried under Yang Ming through bills of lading. (See Complaint attached as Exhibit 5 to the Declaration of Todd A. Barton ("Barton Decl."), ¶¶

1

6, 12 & 17). These cargoes originated in Japan, were carried by sea to Long Beach, California, and then were carried by rail for the inland U.S. leg of their journey. This carriage was arranged by Defendant Yang Ming, including the domestic inland rail portion pursuant to a rail transportation contract with Norfolk Southern Railway Company ("Norfolk Southern"). (Barton Decl., Exh. 2).[1] En route to its ultimate destination, the train derailed, causing damage to the cargoes. (*See* Defendant's Motion to Dismiss, Statement of Facts, ¶ 2).

## ARGUMENT

### I

### THE CARMACK AMENDMENT CONTROLS YANG MING'S LIABILITY IN THIS CASE AS A MATTER OF LAW, AND IF THE COURT SO FINDS PLAINTIFFS WILL AGREE TO DISMISS THE TORT AND BAILMENT CLAIMS IN ITS COMPLAINT

This Court should rule that the Carmack Amendment governs Defendant Yang Ming's liability in this case. If the Court so rules, Plaintiffs will agree to dismiss counts three, seven and eleven (the "tort claims"), as well as counts four, eight and twelve (the "bailment claims"). Plaintiffs do not dispute that if Carmack applies, Plaintiffs' non-contract/Carmack causes of action are preempted. *E.g.*, *Project Hope v. M/V IBN Sina*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) (holding that Carmack preempts "state and common law claims"); *Cleveland v. Beltman North American Co., Inc.*, 30 F.3d 373, 381 (2d Cir. 1994) (holding that Carmack preempts "a federal common law cause of action . . . ."). In point of fact, Plaintiffs pled common

---

[1] Plaintiffs have instituted an action against Norfolk Southern and the Kansas City Southern Railway Company in a related case, *Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc. v. Norfolk Southern Railway Company, Norfolk Southern Corporation and The Kansas City Railway Company*, No. 07 Civ. 2735 (DC). (*See* Statement of Relatedness, Barton Decl., Exh. 3).

2

law tort and bailment causes of action simply in the alternative in the event that the Court found that the Carmack Amendment did <u>not</u> control Defendant Yang Ming's liability.

    A.    **<u>The Carmack Amendment Controls Pursuant to Law</u>**

The issue before the Court on this motion has already been decided in a related case. (Statement of Relatedness, Barton Decl., Exh. 3). In granting the plaintiffs' motion for partial summary judgment in *Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc.*, No. 07 Civ. 2735 (DC) (S.D.N.Y. March 20, 2008), this Court ruled as follows:

> Rail carriers who enjoy the financial benefits of doing business with insureds are required, <u>in conjunction with the shipping companies</u>, to ensure that a full offer of Carmack liability is made to enjoy any contractual limit of liability.

*Id.* at 28 (emphasis added). The Court proceeded:

> It is not lost on the Court that the parties contracting directly with the insureds and the rail carriers and the entities best suited the full Carmack offer—the shipping companies—are not parties in this case. Yang Ming is the defendant in a related case before me . . . .

*Id.* Thus, this Court has already recognized that both rail carriers and intermodal carriers utilizing their services bear the same burdens under the Carmack Amendment.

Of course, even if the Court was inclined to reexamine anew its position in the related case, Yang Ming's liability still would be governed by the Carmack Amendment as a matter of law. Under the well-settled law of this jurisdiction, the Carmack Amendment governs the inland portion of a multimodal carriage pursuant to a through bill of lading. *Sompo Japan Insurance Company of America v. Union Pacific Railroad Company*, 456 F.3d 54, 75 (2d Cir. 2006) (holding that "Carmack applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading, even where the parties have extended COGSA's liability provisions to domestic rail carriers."). Such a rule

makes sense because ocean carriers/intermediaries like Yang Ming are liable as "rail carriers" under Carmack. The Carmack Amendment sets for the following liability scheme for cargo loss or damage during rail transit:

> A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this subsection is for the actual loss or injury to the property caused by—
>
> (1) the receiving rail carrier;
>
> (2) the delivering rail carrier . . . .

49 U.S.C. § 11706(a). The Carmack Amendment further defines "rail carrier" as

> a person providing common carrier railroad transportation for compensation . . . .

49 U.S.C. § 10102(5). "Transportation," in turn, is defined as follows:

> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of . . . property . . . by rail, <u>regardless of ownership or an agreement concerning use</u>; and
>
> (B) <u>services related to that movement</u>, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of . . . property . . . .

49 U.S.C. § 10102(9)(A-B) (emphasis added). Therefore, consistent with *Sompo v. Union Pacific* and this Court's recent decision in the related case, nothing in the plain language of the Carmack Amendment precludes liability to be imposed upon Yang Ming for this loss under the Carmack Amendment.

4

Furthermore, the case law supports the imposition of Carmack liability for ocean carriers/intermediaries such as Yang Ming. For instance, in the parallel motor carrier context, it has been held in this jurisdiction that a delivering Non-Vessel Owning Common Carrier ("NVOCC") can be held jointly liable with a delivering motor carrier under the Carmack Amendment. In *Project Hope v. M/V IBN Sina*, 250 F.3d 67 (2d Cir. 2001), the NVOCC, Blue Ocean Lines, was found to be jointly and severally liable for cargo spoliation under the Carmack Amendment along with the motor carrier, Mill Transportation Company ("Mill"), who performed the actual land leg of an anticipated multimodal carriage from points in Virginia to Cairo, Egypt. *Id.* at 70, 76 n.7. After holding that COGSA did not apply, *id.* at 73, the Court upheld an award of joint and several liability against Mill and Blue Ocean Lines, even though the humulin being transported had spoiled during the land leg of the shipment. *Id.* at 76. The Court explained that the liability of both parties to the plaintiff was under the Carmack Amendment. *Id.* at 76 n.7.

Another decision in the motor carrier context found an ocean carrier/intermediary liable under Carmack as a receiving carrier because it issued a "through bill of lading for transportation of the cargo." *Kyodo U.S.A., Inc. v. COSCO N. Am., Inc. et al.*, 2001 WL 1835158, at * 5 (C.D. Cal. 2001). In *Kyodo*, the court focused on the purpose behind Carmack:

> The purpose of the Carmack Amendment is to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods."

Id. at * 4 (quoting *Reider v. Thompson*, 339 U.S. 113, 119 (1950)). Consistent with this purpose, the court found that the defendant ocean carrier was liable under Carmack because it was the "initial" or "receiving" carrier, or the "'one who first contracts to transport the shipment', because it is that carrier 'with which the shipper does business and to which it looks.'" *Id.* at 4

5

n.7 (quoting *Mississippi Valley Barge Line Co. v. U.S.*, 285 F.2d 381, 389 (8th Cir. 1960)). Because "the Carmack Amendment 'create[s] in the initial carrier unity of responsibility for the transportation to destination[,]'" the ocean carrier was liable under Carmack. *Id.* at *4 (quoting *Missouri, Kansas, & Texas R. Co. v. Ward*, 244 U.S. 383, 386 (1917)). *See also, e.g.*, *Canon USA v. Nippon Liner Sys.*, 1992 WL 82509, at *6 (N.D. Ill. 1992) (NVOCC that owned no trucks still held to be receiving carrier under Carmack); *Tokio Marine & Fire Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*, 2003 WL 23181013 (C.D. Cal 2003) (implying that an ocean carrier/intermediary's liability for cargo loss or damage during land transit can be founded upon the Carmack Amendment, but finding that Carmack did not apply to the transportation contract at issue for other reasons). Therefore, it is clear that, as a matter of law, Defendant Yang Ming is liable under the Carmack Amendment.

    In a recent opinion, Judge Kaplan of this district distinguished *Sompo v. Union Pacific*, 456 F.3d 54, on the grounds that the decision only dealt with the liability of a <u>rail carrier</u> during the inland leg of a multimodal shipment, but otherwise "shed[] [no] light" on the issue of "whether an NVOCC or other non-rail carrier[] [is] entitled to the benefit of the COGSA package limitation under the parties' contracts." *Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.*, 2007 WL 541958, at *2 (S.D.N.Y. 2007). *Rexroth* is currently pending appeal before the Second Circuit, although oral argument has not yet been scheduled.

    Plaintiffs respectfully disagree with Judge Kaplan's reading of *Sompo v. Union Pacific*. As an initial matter, the holding of *Sompo v. Union Pacific* was <u>not</u> expressly limited to govern only the liability of a subsequent rail carrier. Instead, the Second Circuit's holding was that the Carmack Amendment would determine liability generally for the loss or damage to cargo during "the domestic rail portion of an international shipment originating in a foreign country

6

and traveling under a through bill of lading . . . ." *Sompo v. Union Pacific*, 456 F.3d at 75. The Second Circuit's lengthy opinion in *Sompo* did not, at any point, differentiate between or provide any exception concerning what law would apply depending upon who the carriers were during the rail transit. Therefore, it has to be assumed that any entity contracting to act as a carrier for transportation that includes rail transit is subject to the Carmack Amendment. By accepting freight and utilizing Norfolk Southern's rail cars and routes to complete the shipment, Yang Ming clearly functioned as a "rail carrier" under the Carmack Amendment. Just as Non-Vessel Owning Common Carriers ("NVOCC") are liable under COGSA to the same extent as ocean carriers, *e.g.*, *D.I. Eng. Corp. v. Nippon Express USA, (Illinois), Inc.*, 2000 WL 1218410, at *2 n.1 (S.D.N.Y. 2000), Yang Ming is liable to the same extent as Norfolk Southern in the present matter. Indeed, Yang Ming's argument herein that Carmack will impose liability against only <u>one</u> delivering rail carrier necessarily recognizes that it <u>could be liable as a rail carrier under the Carmack Amendment</u>.

Yang Ming can certainly not be surprised by the application of the Carmack Amendment in this case.[2] After all, the preemptive scope of the Carmack Amendment is, by now, well-settled. *E.g.*, *Project* Hope, 250 F.3d at 73 n.6; *Cleveland v. Beltman North American Co., Inc.*, 30 F.3d 373, 381. It is simply inconceivable that a large intermediary and ocean carrier such as Yang Ming could not know that claims for damage to cargo traveling interstate arising out of the breach of a rail contract are universally governed by the Carmack Amendment. Even implied contractual causes of action are preempted by the Carmack Amendment as a matter of law. *See, e.g.*, C*leveland v. Beltman North American Co.*, 30 F.3d 373, (2d Cir. 1994) (holding

---

[2] In a related case, *Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc. v. Norfolk Southern Railway Company et al.*, No. 07 Civ. 2735 (DC), this Court recently found that Norfolk Southern never offered in writing Carmack's "full liability" option to the shipper herein. *Id.* at 20-29.

that a claim for breach of the implied covenant of good faith and fair dealing under federal common law was preempted by Carmack).

Moreover, this Court's recent ruling, cited *supra*, undermines any suggestion that the Carmack Amendment, under circumstances such as those presented in this case, can only determine the liability of a rail carrier who actually owns rail cars. By finding that Carmack applies with equal force to both the shipping company—such as Defendant Yang Ming—and the railroad, the Court has rightly precluded the argument that Carmack will not govern the liability of an intermodal carrier such as Yang Ming for cargo loss and/or damage occurring during the domestic rail leg of a multimodal shipment. *See Sompo Japan Insurance Company of America*, No. 07 Civ. 2735 (DC) at p. 28 (S.D.N.Y. March 20, 2008).

**B.  There Can Be More Than One Delivering Rail Carrier Under the Carmack Amendment; Yang Ming Is Thus Either A Receiving Rail Carrier, A Delivering Rail Carrier, Or Both**

Yang Ming's argument regarding the propriety of Plaintiffs' Carmack Amendment claims further hangs precariously on the delicate premise that there can be only <u>one</u> delivering rail carrier under the Carmack Amendment. Essentially, Yang Ming argues that this Court's determination in the related case that Norfolk Southern was the delivering rail carrier precludes a finding that Yang Ming, too, was a delivering rail carrier, and thus Yang Ming cannot be liable under the Carmack Amendment. Yang Ming's argument, however, goes against fundamental concepts of transportation law.[3]

First, no published case (Carmack has been around since 1906) has been cited to support this novel premise, and nowhere does the Carmack Amendment instruct that there can

---

[3] Any seasoned transportation lawyer would agree that multiple carriers over a single leg of a shipment are a commonplace occurrence in, for example, ocean and motor carriage, where NVOCCs or large trucking companies arrange with subcontractors through established networks to perform the actual carriage.

8

only be one delivering rail carrier.  Instead, "delivering rail carrier" is defined as "the rail carrier performing the line-haul transportation nearest the destination . . . ."  49 U.S.C. § 11706.  Neither this nor Carmack's definition of "rail carrier," cited *supra*, limits the number of delivering rail carriers to only one.  To construe this language as such would clearly stretch its plain meaning.

Furthermore, the decisions cited *supra* that find liability under Carmack for ocean carriers and/or intermediaries for cargo loss or damage occurring during the inland leg of a multimodal transport preclude any argument that Carmack contemplates liability for only one carrier at a time.  Indeed, even if Defendant Yang Ming is not a "delivering rail carrier" it is most certainly a "receiving rail carrier" within the meaning of the Carmack Amendment, as it indisputably began the transit of the goods in Japan, and is accordingly liable.  *See Kyodo U.S.A., Inc.*, 2001 WL 1835158, at * 5.[4]

In addition, the fact that a "carrier" need not be an owner or operator of a mode of transportation necessarily means that such an entity plus the owner/operator can simultaneously be deemed a "carrier" for liability purposes.  *See Kyodo U.S.A., Inc.*, 2001 WL 1835158, at * 5; *Canon USA*, 1992 WL 82509, at *6 (NVOCC that owned no trucks still held to be receiving carrier under Carmack).  A leading treatise on transportation law, cited by both the Second Circuit and this Court,[5] is on point:

> [T]he terms *carrier* and *common carrier* can encompass entities that may neither own nor operate the means of transportation. . . .

---

[4] Plaintiffs have already alleged, in the alternative, in paragraphs 6, 12 and 17 of the Complaint (Barton Decl., Exh. 5), that Yang Ming took delivery of the shipments in Japan, thus making them a receiving carrier (as well as the delivering carrier).

[5] *See Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc.*, 235 F.3d 53, 60 (2d Cir. 2000); *Tamrock USA, Inc. v. M.V. Maren Maersk*, 1995 WL 459254, at *2 n.35 (S.D.N.Y. 1995).

> Where a party engaged in another business . . . holds itself out as a common carrier, motor carrier, or freight forwarder and undertakes the responsibility of carriage, such party may be held liable as such.

Saul Sorkin, 1 *Goods In Transit*, § 1.06[7] (Matthew Bender & Co., Inc. 2007). Specifically in reference to rail contracts, Carmack even contemplates that more than one rail carrier may provide services on a given carriage:

> Under both ICCTA and the former Staggers Rail Act, one or more rail carriers subject to the jurisdiction of the administrative agency may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions.

Sorkin, *supra*, §6.02[4].

Taken together, this means that Yang Ming, as an ocean carrier/intermediary that contracted for the rail services of Norfolk Southern to complete a multimodal carriage pursuant to a through bill of lading, can simultaneously be deemed a "delivering rail carrier" under the Carmack Amendment.

Hedging its bets, Yang Ming also argues that it simply cannot be a "delivering rail carrier" under the Carmack Amendment because it merely arranged the carriage in question and did not have "actual or constructive possession" of the shipment. It cites *Riss & Company v. U.S.A.*, 213 F.Supp. 791, 798 (W.D. Mo. 1962), for this proposition.[6] First, the discussion, *supra*—for example in *Sorkin—*easily dispels any notion that because it does not own rail cars Yang Ming cannot also be considered a "delivering rail carrier" under Carmack. Furthermore, *Riss & Company* does not preclude the possibility that there can be more than one "delivering rail carrier" under § 11706. Instead, *Riss & Company* simply stands for the proposition that "the delivering rail carrier is one who receives actual or constructive possession of a shipment in

---

[6] It must be noted that a single 1962 decision from the Western District of Missouri (among the many Carmack decisions issued nationwide each year) is not binding precedent in this Circuit, and its age may make it less than persuasive.

10

Interstate commerce for delivery to the consignee . . . ." *Riss & Company*, 213 F.Supp. at 798. In this case, Defendant Yang Ming <u>did</u> have at least constructive possession of the subject shipment through its contractual agent, Norfolk Southern, whom it recruited to deliver via rail said shipment to the consignee.

In sum, if Yang Ming's liability is not controlled by contract, the Carmack Amendment governs.

## II

## IN THE ALTERNATIVE, THE YANG MING BILL OF LADING POTENTIALLY REQUIRES THE APPLICATION OF COGSA, AND THEREFORE PLAINTIFF'S COMMON LAW TORT AND BAILMENT CLAIMS SHOULD NOT BE DISMISSED BECAUSE COGSA IS A HYBRID CAUSE OF ACTION

In the event this Court finds that the Carmack Amendment does not control Yang Ming's liability in this case, then the Carriage of Goods By Sea Act ("COGSA") applies. Because, in this Circuit, COGSA is a hybrid contract/tort/bailment cause of action, Plaintiff's common law claims should not be dismissed.

Clause 7(2)(A) of the Yang Ming bill of lading states as follows:

> With respect to Multimodal Transportation from, to, or within the United States, when the Goods are in the custody of the Carrier, or any Underlying Carrier, <u>such Multimodal Transport will be governed by the provisions of Clause 7(1)</u>.

(Barton Decl., Exh. 1). In turn, Clause 7(1) states, in relevant part:

> [I]n the event that this Bill covers shipments to or from the United States, then COGSA shall be compulsorily applicable and shall (except as may be otherwise specifically provided elsewhere herein) also govern before the Goods are loading [sic] on and after they are discharged from the Vessel provided, however, that the Goods at said times are in the actual custody of the carrier or any Underlying Carrier or Sub-Contractor.

(Barton Decl., Exh. 1). Therefore (subject to the preemptive effect of the Carmack Amendment, as discussed *supra*), by virtue of this so-called Himalaya clause, Yang Ming has extended the reach of COGSA "beyond the tackles" to govern its liability for damage to the subject cargo.

However, contrary to Yang Ming's argument that COGSA preempts "common law remedies for freight loss and damage," the application of COGSA does not require dismissal of Plaintiff's common law tort and bailment claims because COGSA is not preemptive in this regard. Instead, COGSA is a hybrid contract/tort/bailment cause of action, and therefore Plaintiffs tort and bailment claims survive. *Rationis Enterprises, Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 587 (2d Cir. 2005) ("[W]e have explicitly held that a COGSA claim may be a 'mixed tort, contract and bailment cause of action.'"); *Texport Oil Co. v. M/V Amolyntos*, 11 F.3d 361, 367 (2d Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (same).

To support its COGSA preemption argument, Yang Ming cites two Second Circuit decisions.[7] First, Yang Ming cites *Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) Ltd. et al.*, 230 F.3d 549 (2d Cir. 2000), for the proposition that Plaintiffs' federal common law tort and bailment claims are preempted by COGSA. *Hartford Fire Ins. Co.* does not stand for this principle of law. Instead, in that case the Second Circuit held that because the bill of lading "involv[ed] land carriage that [was] more than 'incidental' to sea carriage," *id.* at 556, subject matter jurisdiction was not premised upon admiralty, but upon diversity. Because

---

[7] Yang Ming also cites *Junior Gallery Ltd. et al. v. Neptune Orient Lines, Ltd. et al.*, 1998 WL 770558 (S.D.N.Y. Nov. 3, 1998) (Chin, J.), and *Miller Export Corp. v. Hellenic Lines, Ltd.*, 534 F.Supp. 707, 710-11 (S.D.N.Y. 1982), both for the proposition that COGSA preempts state law causes of action. Because Plaintiffs do not raise any state law claims in this action, these decisions are not persuasive. Furthermore, as discussed in the text above, Plaintiffs' tort and bailment claims survive because of COGSA's well-recognized hybrid nature in the Second Circuit.

federal common law principles such as the "fair opportunity" doctrine "[are] not freely transferable to the diversity setting," *id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988)), these federal common law concepts were not imported into the Court's analysis. The decision, however, nowhere states that COGSA preempts federal common law causes of action sounding in tort and bailment.

Yang Ming also cites *Senator Linie Gmbh & Co. v. Sunway Line, Inc. et al.*, 291 F.3d 145 (2d Cir. 2002), for the similar proposition. This decision, however, rest soundly upon general principles of federalism by holding that 46 U.S.C. § 1304(6) "would displace otherwise inconsistent maritime common law." *Id.* at 166.[8] Because, however, COGSA is consonant with common law claims for, *inter alia*, tort and bailment, *see Rationis Enterprises, Inc.*, 426 F.3d at 587, COGSA would not supercede these claims because they are not "otherwise inconsistent" with the federal statute. *See Senator Linie Gmbh*, 291 F.3d at 166.

### III

### VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK BECAUSE YANG MING DOES BUSINESS IN NEW YORK COUNTY AND OTHERWISE HAS SUFFICIENT CONTACTS WITH THIS DISTRICT

Defendant Yang Ming finally argues that counts one, five and nine of the Complaint—the Carmack Amendment claims—should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure because venue is inappropriate in the Southern District of New York under Carmack. Yang Ming, however, has waived Carmack venue and has, in fact, expressly permitted Plaintiffs to bring this action in this Court.

---

[8] Indeed, even the Second Circuit recognized that its finding of super cession in *Senator Linie Gmbh*—that "the strict liability rule of § 1304(6) supercedes the varying and uncertain rule of maritime common law"—was limited to "the rare circumstances of a case such as this . . . ." *Id.* at 169.

"Upon a motion to dismiss under Rule 12(b)(3) the Plaintiff has the burden of pleading venue." *Person v. Google Inc.*, 456 F.Supp.2d 488, 493 (S.D.N.Y. 2006). In ruling upon such a motion, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [plaintiff's] favor." *Id.* (quoting *Caremark Therapeutic Servs. v. Leavitt,* 405 F.Supp.2d 454, 457 (S.D.N.Y. 2005)).

Yang Ming argues that venue is inappropriate in the Southern District of New York under the Carmack Amendment. Carmack contains a special set of venue provisions, which provide, in pertinent part:

> A civil action under this section may only be brought—
>
> . . . .
>
> (ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located . . . .

49 U.S.C. § 11706(d)(2)(A)(ii). However, Yang Ming contractually opted out of Carmack's venue provisions by inserting in its bill of lading a forum selection clause choosing England as the situs for all disputes arising under the bill:

> Except as otherwise provided specifically herein any claim or dispute arising under this Bill shall be . . . determined in the English courts to the exclusion of the jurisdiction of the courts of any other place.

(Barton Decl., Exh. 1, ¶ 26).[9]

---

[9] While there are cases that have ruled that the Carmack Amendment prohibits enforcement of forum selection clauses, *e.g.*, *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F.Supp.2d 1098, 1103 (C.D. Cal. 2006); *Kyodo U.S.A., Inc. v. Cosco N. Am., Inc.*, 2001 WL 1835158 at *3 (C.D. Cal 2001), here, at the very least, Yang Ming is estopped from arguing that Carmack's venue provisions apply in this case. In the early stages of this litigation, the England forum selection clause in Yang Ming's bill of lading forced Plaintiffs to retain (at considerable expense) foreign counsel and file a claim form in court there to protect against the time bar. The claim form was never served because Yang Ming assured Plaintiffs that we could sue in a United

14

That is not the end of the matter. Yang Ming's counsel then waived its own forum selection clause by letter dated November 29, 2007, in which it stated as follows, in pertinent part:

> In the event, that the plaintiffs formally pursue claims against Yang Ming related to this matter, Yang Ming will agree to waive the forum selection clause in the Yang Ming bill of lading and to submit to the jurisdiction of the United States District Courts.

(Barton Decl., Exh. 4). Such a waiver is valid and enforceable. *See Botman International, B.V. v. International Produce Imports, Inc.*, 205 Fed.Appx. 937, (3d Cir. 2006) ("[T]he applicability of a forum selection or choice-of-law clause is not a jurisdictional issue and a party may waive its right to enforce it."). Nothing in counsel's letter limited Plaintiffs to suing in any particular District Court. Accordingly, the general venue rules under 28 U.S.C. § 1391 apply in this case to determine the appropriate forum for this action.

> Section 1391 of title 28 of the United States Code provides, in pertinent part:
>
> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
>
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. <u>In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State</u>, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

---

States District Court, as explained above. Certainly Yang Ming cannot now be permitted to revert back to square one by asserting Carmack venue.

15

28 U.S.C. § 1391 (b)-(c) (emphasis added). Because New York has "more than one judicial district," the test for general venue in this case is whether Yang Ming's "contacts would be sufficient to subject it to personal jurisdiction [in the Southern District of New York] if that district were a separate state . . . ." *Id.* The jurisdictional analysis under 28 U.S.C. § 1391 is conducted pursuant to federal law, thereby "implicat[ing] the 'minimum contacts' analysis articulated by [*International Shoe Company v. State of Washington*, 326 U.S. 310 (1945)] and its progeny . . . ." *Bicicletas Windsor, S.A. v. Bicycle Corp. of America*, 783 F.Supp. 781, 786 (S.D.N.Y. 1992).

Defendant Yang Ming's contacts with the Southern District of New York are sufficient to subject it to personal jurisdiction here. First, Defendant Yang Ming's general agent, Yang Ming (America) Corporation, is incorporated in this district (New York County). It is settled that the presence of a general agent that transacts business within a district is sufficient to confer personal jurisdiction over the principal. *E.g.*, *Watson v. Societe Nationale Industrielle Aerospatiale*, 225 Fed.Appx. 716, (9th Cir. 2007) (post-§ 1391-amendment decision applying the general agency theory of personal jurisdiction); *Cai v. Daimlerchrysler AG*, 480 F.Supp.2d 1245, (D.Or. 2007) (same); *Santapaola v. Marine Oil Services of New York*, 2003 WL 942360, at *1 (S.D.N.Y. 2003) (indicating that the presence of a general agent in New York was material to personal jurisdiction over the defendant); *see also, e.g.*, *Dominicus Americana Bohio v. Gulf & Western Industries, Inc.*, 473 F.Supp. 680, 692 (S.D.N.Y. 1979); *Connolly v. Farrell Lines, Inc.*, 268 F.2d 653, (1st Cir. 1959).

In addition, Defendant Yang Ming itself transacts business in this District and avails itself of this Court's protections. Yang Ming's own website identifies one of its loading

16

port offices at "New York, NY port."[10] (Barton Decl., Exh. 6). In addition, Yang Ming consistently uses the Port of New York as a Calling Port. For instance, its own website reveals that as many as nineteen vessels arrive at the Port of New York in a two-week period.[11] (Barton Decl., Exh. 7). A simple search of PACER also indicates that, since 1986, Yang Ming entities have instituted approximately twenty lawsuits in the Southern District of New York. (Barton Decl., Exh. 8). Having taken advantage of the benefits and protections of this District's laws, Yang Ming cannot now claim that it is not subject to personal jurisdiction here. *See e.g.*, *Computer Associates Intern., Inc. v. Altai, Inc.*, 126 F.3d 365, 371 (2d Cir. 1997) ("Essential to the exercise of personal jurisdiction in each case is 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985))).

In sum, under 28 U.S.C. § 1391, venue is appropriate in the Southern District of New York.

## CONCLUSION

The Court should deny Defendant's Motion.

---

[10] http://www.yml.com.tw/chinese_version/yml_services/files/DOC_Center_FAQ.pdf.
[11] Yang Ming invites its website users to conduct their own search of incoming vessels by port at https://www.yml.com.tw/vessel_tracking/vessel_tracking.html.

Dated: Rye, NY
March 25, 2008

                        MALOOF BROWNE & EAGAN LLC

                        By: /s/ Thomas M. Eagan
                           David T. Maloof (DM 3350)
                           Thomas M. Eagan (TE 1713)
                        411 Theodore Fremd Avenue, Suite 190
                        Rye, NY 10580
                        Tel: (914) 921-1200
                        Fax: (914) 921-1023
                        Email: dmaloof@maloofandbrowne.com
                                    teagan@maloofandbrowne.com
                        *Attorneys for Plaintiffs Sompo Japan Insurance Company of America and Sompo Japan Insurance, Inc.*