DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TM 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York 10580
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SOMPO JAPAN INSURANCE COMPANY OF
AMERICA, and SOMPO JAPAN INSURANCE,
INC.,

                      *Plaintiffs,*

      - against -

YANG MING MARINE TRANSPORT
CORPORATION,

                    *Defendant.*

    :

    :

    :

    :

    :

    :

    :

    :

**07 Civ. 11276 (DC)**

**DECLARATION OF
TODD A. BARTON IN
SUPPORT OF PLAINTIFFS'
OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS NINE COUNTS OF
THE COMPLAINT PURSUANT
TO F.R.C.P. 12(b)(6) AND
12(b)(3)**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       I, Todd A. Barton, declare that I am an associate of Maloof Browne & Eagan

LLC, attorneys for Plaintiffs Sompo Japan Insurance Company of America and Sompo Japan

Insurance, Inc.

       1.      I attach as Exhibit 1 a true copy of the Yang Ming bill of lading terms and

conditions from their website.

       2.      I attach as Exhibit 2 a true copy of an "Intermodal Transportation

Agreement" as produced by Norfolk Southern Railway Company in a related litigation.

       3.      I attach as Exhibit 3 a true copy of the Statement of Relatedness filed in

this case.

4.      I attach as Exhibit 4 a true copy of a letter, dated November 29, 2007, sent by Charles L. Howard of Keenan Cohen & Howard P.C. to Thomas M. Eagan, Esq. of Maloof Browne & Eagan LLC.

5.      I attach as Exhibit 5 a true copy of the Complaint.

6.      I attach as Exhibit 6 a true copy of the "Contact/FAQ Sheet" from Yang Ming's website, available at http://www.yml.com.tw/chinese_version/yml_services/files/ DOC_Center_FAQ.pdf.

7.      I attach as Exhibit 7 a true copy of search results from the "Vessel Tracking" portion of Yang Ming's website for a search of all vessels calling at the port of "New York, NY, United States of America," for the period March 19, 2008 to April 2, 2008, available at https://www.yml.com.tw/vessel_tracking/vessel_tracking.html.

8.      I attach as Exhibit 8 a true copy of selected search results from PACER from a search that I conducted for all cases filed in the Southern District of New York involving Defendant Yang Ming and/or related entities.

I declare the foregoing is true and correct under penalty of perjury of the laws of the United States.

Dated: Rye, New York
       March 25 , 2008

_____
Todd A. Barton


EXHIBIT 1

## INTERMODAL TRANSPORTATION AGREEMENT

THIS AGREEMENT is made and entered into this *12th* day of *August*, 2004, by and between NORFOLK SOUTHERN RAILWAY COMPANY, acting for itself and its rail carrier subsidiaries, having an office at Three Commercial Place, Norfolk, VA 23510 (hereinafter referred to as "NS"); and Yang Ming (America) Corp. having an office at 525 Washington Blvd., 25th floor, Jersey City, NJ 07310, as agent for Yangming Marine Transport Corporation, Ltd., 271 Ming De 1st Rd. Chidu, Keelung, Taiwan 206, R.O.C. and Yangming (UK) Ltd., 2nd Floor, Valentines House, 51-69 Ilford Hill, Essex IG1 2DG, England (hereinafter referred to as "Yangming").

### RECITALS:

The parties desire to enter into an agreement whereby NS shall provide rail transportation of containers between points shown as origins and destinations in Exhibit 1.

NS shall perform the transportation services at the favorable rates described herein in exchange for Yangming's commitment to tender to NS certain minimum volume of loaded and empty containers for linehaul via NS, and to pay NS the charges specified in this Agreement.

### AGREEMENT:

NOW, THEREFORE, for and in consideration of the provisions herein contained, the parties agree as follows:

1. TERM.

This Agreement will have a term commencing on June 1st, 2004 and continuing through May 31, 2009. This agreement may be renewed upon mutual agreement of the parties for another five year term, provided such an agreement is reached no less than 60 days prior to the end of the initial term. If an agreement concerning renewal is not achieved, then this agreement will terminate on May 31, 2009.

2. SCOPE OF SERVICE.

Except as otherwise stated herein, all loads or empties shipped and all transportation provided hereunder will be subject to the following documents:

A. Norfolk Southern Railway Company Exempt Intermodal Transportation Rules Circular No. 2, or successor document, in

Page 1                                    07/29/04



EXHIBIT 2

effect on the date of tender for each shipment hereinafter referred to as the "Rules Circular").

B.    Terms and conditions of the bill of lading in the form set forth in the Rules Circular which is in effect on the date of tender of a container for rail transportation.

3.    RATES.

Subject to the terms and conditions of this Agreement, Quote Number NSPQ 4395, and Exhibit 1, attached hereto and made a part hereof as if set forth fully in this Agreement, NS will provide rail transportation service as follows:

A.    NS will provide rail transportation between any two (2) points in Exhibit 1 at the applicable base rate listed in Exhibit 1 that are in effect on the date of tender of the shipment at the origin point.    If no base rate is listed in Exhibit 1 between two (2) points, special quotations or the linehaul rate between the two (2) points in NS's TOFC Rate Matrix 8407 series in effect on the date of tender of the shipment will apply.

B.    The base rates in Exhibit 1 will govern until May 31, 2005. Thereafter, the base rates will be adjusted annually, beginning June 1, 2005, and on June 1 of any subsequent year while this Agreement remains in effect.    The amount of each annual increase of the base rates will be equal to the amount of the increase specified in the unadjusted Rail Cost Adjustment Factor (RCAF) as of the date prior to June 1, which is the closest to June 1.    The unadjusted RCAF shall be compared with the previous year's unadjusted RCAF to determine the amount of the increase, but said increase shall not exceed three and one-half percent (3.5%) per year.

C.    The rates in Exhibit 1 may be used by Yangming, but are not applicable to traffic which is (i) moving for any steamship lines other than Yangming; (ii) controlled by any steamship lines other than Yangming.    Any third party business related to other steamship line controlled traffic must be agreed upon by the parties under a separate rate authority and must move under a special quote, with such rates to be negotiated between the parties.

D.    Rates for the transportation of materials in tank containers are included in the applicable NSPQ 50227 and notwithstanding anything contained in this Agreement to the contrary may be adjusted upon 30 days written notice.

07/29/04

NSGENL 0002

F.    Rates for the transportation of coiled metals in containers (to the extent permitted by the Rules Circular) are included in the applicable NSPQ 17500.  Notwithstanding anything contained in this Agreement to the contrary, the rates for the transportation of coiled metals in containers may be adjusted upon 30 days written notice.

G.    Traffic moving under the rates listed in Exhibit 1 and in NSPQ 8407 shall be subject to fuel related surcharges adopted by NS from time to time.  Fuel surcharges may be applied with five (5) days' notice.  NS agrees that Fuel Surcharges on rates contained in this Agreement will only apply if a general fuel surcharge ("FSC") is declared by NS on Intermodal shipments.  If NS declares a general FSC of less than 5.1%, then the Yangming fuel surcharge will be equal to the NS general FSC.  If NS declares a general FSC between 5.1 and 9.9% (inclusive), then the fuel surcharge on Yangming traffic covered by this Agreement shall only be 5%.  If NS declares a general FSC that exceeds 9.9%, then the Yangming fuel surcharge will equal the NS general FSC.  The Yangming fuel surcharge shall be removed when the NS general FSC is lifted by NS.

H.    At its discretion, NS may eliminate a lane or lanes covered by this Agreement due to a redesign of service.  If this occurs, rates for this lane(s) shall be suspended.  However, if service for such lane(s) is resumed and the interchanged point for such lanes(s) is not changed, then such suspended rate shall be reactivated upon the request of Yangming.

4.    EQUIPMENT.

A.    Yangming will furnish containers and chassis at the expense of Yangming.  Except for such charges caused by the negligent act or negligent omission of NS, NS will not be responsible for any per diem, mileage, rental, or other such use or ownership charge applicable to said containers or chassis ("Ownership Charge").  In the event such Ownership Charges are caused by the negligent act of, or negligent omission by NS, then NS shall be responsible for such charges in direct proportion to the negligence of NS as compared to the negligence of all other actors in causing the imposition of such Ownership Charge.  If any owner, lessor, lessee, or other party makes any claim against NS for any aforesaid Ownership Charge applicable to any container or chassis furnished by Yangming, NS will refer the claim to Yangming who will resolve it with the appropriate party.

B.    In the event that equipment (containers and/or chassis) provided by Yang Ming is either lost, damaged or destroyed beyond repair while in possession of NS, Yangming shall be entitled to reimbursement as follows:

07/29/04

NSGENL 0003

(1)  On Yangming-owned equipment, the amount of reimbursement due will be the cost to repair the equipment to serviceable standards or the depreciated value of the equipment, whichever is less.  Depreciated value of the equipment shall be determined by using applicable AAR cost factors to determine the reproduction cost, less depreciation of ten percent (10%) per year, for each year the equipment has been in service up to a maximum of nine (9) years.  Yangming-owned equipment would retain a residual value of ten percent (10%) on all owned equipment.

(2)  On any other equipment provided by Yangming, a copy of the bill for damages or replacement cost will be submitted to NS along with a copy of the bill showing Yangming has paid lessor/owner in full for damages to, or replacement of, equipment.  Yangming shall be reimbursed in full by NS not more than sixty (60) days from the date the bill is submitted to NS or Yangming for payment.

(c)  Notwithstanding anything in the foregoing to the contrary, NS shall not be liable for consequential, punitive, indirect or special damages.

5.    VOLUME COMMITMENT AND INCENTIVES.

A.    For the purposes of this Agreement, a "Contract Period" shall be a twelve month period of time beginning with June 1.

B. During each Contract Period beginning with June 1, 2004, Yangming shall tender to NS a minimum of 90% of the traffic that it transports or arranges for transportation in the lanes listed in Exhibit 1, which may move via NS at Yangming's discretion.  If the total number of such containers tendered to NS is less than 90% of the total available, then Yangming shall pay NS liquidated damages of ████████████████████████ per container for each container necessary to fulfill said minimum commitment.

B.    As an incentive for future growth, at the end of each Contract Period, NS will refund to Yangming a percentage of Yangming's linehaul revenue paid to NS based upon the following schedule:

| If Yangming's Volume Increases by: | NS will refund to Yangming: |
| --- | --- |
| 1,500 units over base volume | 1.0% of linehaul revenue Yangming has paid pursuant to this agreement for the prior year |
| 3,000 units over base volume | 1.5% of linehaul revenue Yangming has paid pursuant to this agreement for the prior year |

Page 4                                          07/29/04

REDACTED

NSGENL 0004

The base volume of the first Contract Period will be equal to the total volume moved by Yangming in the lanes listed in Exhibit 1 during the 12 month period immediately proceeding the effective date of this Agreement (June 1, 2003 through May 31, 2004). Thereafter, the total volume moved in the lanes listed in Exhibit 1 during the previous Contract Period, will be used as the base volume for the following Contract Period.

## 6. Service Provision

NS and Yangming have agreed upon train schedules for particular lanes listed in Exhibit 2, and NS will have a goal of meeting those schedules 80% of the time during the term of this Agreement. On time is defined as being within two hours of scheduled availability, as that term is described in the applicable schedules. Measurements will be made on a container-by-container basis, and will not apply to containers for which there is incomplete paperwork, which have missed the cut-off at origin, are bad ordered, are subject to force majeure conditions, or other conditions not directly controlled by NS.

In the event NS does not meet the performance standard in one or more of the applicable lanes as measured over a two calendar month period, Yangming shall have the right, upon written notice, to temporarily divert traffic from NS in the applicable lane.  Upon receipt of written notice Yangming, NS shall have 60 days to respond to such notice by providing and implementing action plans to improve service to acceptable level.

If NS has returned service to an acceptable level, then Yangming will return the diverted traffic to NS over the applicable lane.

If, after this 60 day period, however, NS's service does not meet the performance standard described above, Yangming shall have the right to divert such traffic in such lanes on an indefinite basis, until such time as NS demonstrates, by providing applicable data, to YangMing that the train service performance over the applicable lane has improved to 80% for two months, at which time then Yangming shall return the diverted traffic to NS over the applicable lane, as soon as is practical.

## 7. PITTSBURGH TERMINAL SPACE.

A. NS will guarantee Yangming 30 daily slots at the Pittsburgh Intermodal facility for storage of empty containers. Initial lift to/from the car is included in the linehaul rate. Yangming understands that empty units will not always be left on pool chassis and can be grounded at NS' discretion.   All subsequent lifts shall have a ██████fee per lift. Any special

Page 5                                          07/29/04

request for lifts shall also be subject to a ▆▆ charge. Should Yangming exceed the daily slot limit, all units beyond the limit will be subject to ▆▆ storage charge per unit per day.

B. A slot is defined as a grounded empty 20' or 40' container, a 20' or 40' chassis bare or mounted.

C. The allocation of 30 free spaces at Pittsburgh in part 7.A above represents a higher number of spaces than previously allocated to Yangming. This higher allocation is based upon the anticipation that outbound loaded volumes from Pittsburgh will increase in the future. The outbound loaded volumes will be reviewed each ninety (90) days to check to see if such an increase in volume develops. If there is not a significant and consistent increase in the loaded outbound volumes from Pittsburgh, the space allocation will reduced to 20 spaces.

8. E-RAIL STORAGE.

Storage for loaded and empty containers at E-Rail will be negotiated directly between Yangming and The Rail-Bridge Terminals Corporation. Linehaul rates in Exhibit 1 to and from E-Rail include only haulage and delivery to and from this terminal. All lifts, CY service, equipment management, gate and other accessorial charges and services must be negotiated separately by Yangming and the terminal operator of E-Rail. NS is not the terminal operator, and does not include any of the above charges in Yangming's rates.

9. CUSTOMS BONDS.

All in bond shipments tendered to NS by Yangming will be under the Customs bond of Yangming. If contrary to the intent of this Agreement, the understanding of Yangming and NS, and applicable Customs regulations, any governmental employee, representative, or agent treats any container tendered to NS by Yangming as being covered by the Customs bond of NS, Yangming will perform all acts required to permit the container to clear Customs and will indemnify and hold NS harmless from and against claims, demands, losses, damages, penalties, fines, judgments, costs, and expenses, including but not limited to litigation costs and attorneys' fees, resulting directly or indirectly from any failure by Yangming to comply with all applicable Customs regulations.

10. HAZARDOUS MATERIALS.

A. Yangming and NS will comply with all applicable international, federal, state, and local laws, rules,

Page 6                              07/29/04

REDACTED

regulations, and ordinances governing air, water, noise, solid waste, hazardous material and commodities, and other pollution. Tender of a hazardous material or commodity for rail transportation and handling of hazardous materials and commodities during rail transportation will be governed by the Rules Circular, except as otherwise stated in this subsection.

B.    Before tendering for rail transportation a container that contains a hazardous material or commodity, Yangming will:  (1) comply or arrange for compliance with all applicable federal regulations governing the transportation of hazardous materials and commodities, including but not limited to regulations concerning notification, loading, blocking and bracing, placarding, commodity mix, and commodity containers; (2) provide to NS identification by proper shipping name and hazardous class of each hazardous material and commodity; and (3) identify the specific container in which each hazardous material or commodity is tendered, in accordance with the Rules Circular.

C.    If a spill, release, or leakage from a container of any hazardous material or commodity, whether or not sudden in nature, occurs during rail transportation, NS will isolate the container or remove from the train the rail car holding the container, will take any immediate emergency action, and will make the notifications required by law to the appropriate agencies. Yangming will notify the originating shipper and upon request of the originating shipper, will assist in the cleanup response. No container leaking a hazardous material or commodity will be permitted to leave a NS intermodal facility until responsibility for the leaking container and the lading therein is determined, until the leakage is stopped, and until all notifications required by law are made.

D.    In addition to any allocation of responsibility in the Rules Circular, if Yangming or its customers fail to comply fully with or perform its undertakings under this subsection for a hazardous material or commodity in a container or if a hazardous material or commodity is spilled, released, or leaked from a container during rail transportation and complete information required by applicable federal regulations was not provided to NS before the container was tendered for rail transportation, Yangming will indemnify and hold harmless NS against all claims and all liability, cost, and expense of cleanup resulting from the nature or condition of the hazardous material or commodity or from spill, release, or leakage of the hazardous material or commodity.

11.    FORCE MAJEURE.

Page 7                              07/29/04

If any party is unable to meet its obligations under this Agreement because of an occurrence beyond its control and arising without its fault or negligence, including but not limited to war, insurrection, riot, rebellion, or acts of the public enemy or lawful authorities; strike, lockout, or walkout; embargo; fire, explosion, or flood; Act of God; authority of law; or any other of NS or Yangming, said obligations of the party or parties affected by the Force Majeure occurrence will be excused for the duration of said occurrence.    The party declaring the existence of Force Majeure will notify the other parties in writing promptly that Force Majeure exists, the nature of Force Majeure, and when Force Majeure is terminated.    In the event of Force Majeure, the minimum volume commitment for the Contract Period in which the Force Majeure incident occurs shall be reduced proportionately.    The party experiencing Force Majeure will use its best efforts to remove the causes of Force Majeure and will resume performance of its obligations under this Agreement immediately after said causes are removed.    The suspension of any obligation under this Agreement as a result of the existence of Force Majeure will not cause the term of this Agreement to be extended and will not affect any rights or obligations accrued under this Agreement prior to existence of Force Majeure.

    12.    LOSS AND DAMAGE.

        A.    Except as provided in subsection B of this section, NS will be liable for and will hold Yangming harmless against loss of or damage to property of the parties to this Agreement or third parties and injury to or death of third parties, including but not limited to officers, employees, and agents of the parties to this Agreement or third parties, only to the extent that the sole proximate cause of said loss, damage, injury, or death is the negligence of NS in the performance of the services hereunder.

        B.    (1)    NS will be liable for and will hold Yangming harmless against loss of or damage to freight in containers transported at the rates and charges provided in this Agreement and Exhibit 1 only to the extent that the sole proximate cause of said loss or damage is a railroad accident, derailment, or collision between railroad equipment negligently caused by NS. NS's liability for freight loss and damage will be subject to the dollar limitation set forth in the Rules Circular at the time a claim for freight loss and damage is made.

            (2)    At its sole discretion and upon written notice to NS, Yangming may elect for NS's liability for freight loss and damage to be at the level established pursuant to 49 U.S.C. ∍ 11707, subject to establishment by NS and payment by Yangming of a separate linehaul rate for transportation of said

NSGENL 0008

freight in containers under this Agreement at a level higher than the base rates provided in Exhibit 1.

(3)   Yangming will comply with the time limits and procedures for making claims set forth in the Rules Circular at the time a claim for freight loss and damage is made.   Upon written notice to NS, Yangming may assign to third parties its right to make claims against NS for freight loss and damage.

C.   In the event where loss or damage is caused by the mutual negligence of the parties, the liabilities of each will be shared, and determined on the basis of the relative faults of the parties and the percent of the liabilities incurred as a result of the relevant negligent acts or omissions by each party.

D.   NS will not be liable for punitive, indirect, or consequential damages as a result of this Agreement.   No arbitration award issued pursuant to Section 16 of this Agreement will grant such damages or fees.

E.   The parties to this Agreement will use their best efforts to mitigate all damages arising under this Agreement.

## 13.   PAYMENT OF FREIGHT CHARGES.

A.   All linehaul freight charges for any shipments will be paid to NS by Yangming within fifteen (15) days after receipt by Yangming via EDI, or such other method as the parties determine is appropriate.

B.   If there is a default in timely payment by Yangming, then NS may advise Yangming upon ten (10) days' written notice that it will accept shipments for transportation on a cash basis only.

## 14.   DELETION OF ANY UNLAWFUL TERMS.

If any provision of this Agreement is determined to be unlawful, said provision will be deleted, and this Agreement, without the deleted provision, will continue in full force and effect; provided, however, if a party is materially adversely affected by the deletion, the party may cancel this Agreement without penalty.

## 15.   NOTICE.

07/29/04

NSGENL 0009

A.  Any notice or other communication under this Agreement will be in writing and will be considered given if delivered in person or if sent by telecopy, overnight courier, certified, registered, or first class U.S. mail, or electronic transmission, addressed as shown in this section.  Any notice will be deemed to be delivered, given, and received for all purposes as of the date received, if delivered by hand or telecopy, or as of the date which is two (2) days after the date on which the notice was deposited with the overnight courier or of the electronic transmission, or as of the date which is five (5) days after the date on which the notice was deposited in a regularly maintained receptacle for the deposit of U.S. mail, if sent by registered, certified or first class U.S. mail.  Upon written notice to the other party, a party may change its address at any time.

B.  Notices under this Agreement will be addressed as follows:

As to NS:

Vice President, Intermodal Marketing
Three Commercial Place
Norfolk, VA  23510


As to Yangming:

Assistant Vice President
Intermodal & Equipment Control
525 Washington Blvd.  25th Floor
Jersey City, NJ  07310


16.    TERMINATION.

In the event of a breach of this Agreement, the party claiming the breach may give notice to the other party of such breach, and must give the other party sixty (60) days within which to effect a cure.  If such breach is not cured within such sixty (60) .day period, then the aggrieved party may terminate this Agreement upon thirty (30) days' written notice. Notwithstanding this clause, the parties may agree to specific remedies for deterioration of service which may obtain subject to Article 5 hereof, short of cancellation for breach.

17.    ASSIGNMENT.

Page 10                    07/29/04

Neither Yangming nor NS may assign its rights or duties hereunder to a third party without the written consent of the other party.

18.    ARBITRATION.

Any controversy or claim in excess of $10,000 arising out of or relating to this Agreement or the breach hereof will be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Each party will bear its own costs and expenses of arbitration.

19.    SUPERCESSION.

In the event that there is any conflict between the terms of this Agreement and the terms of NS's Intermodal Rule Circular, the provisions of this Agreement shall apply.

20.    CONFIDENTIALITY.

This Agreement, the Exhibits, and the information therein are confidential and proprietary. If a party voluntarily reveals the terms of this Agreement to third persons, the other parties may be harmed thereby. The parties will not reveal the terms of this Agreement except (1) as may be required by law or regulation, (2) in response to legal service of process, (3) as required by AAR rules, (4) to a parent, subsidiary or affiliated company, internal auditor, or inspection bureau, (5) to the U.S. Bureau of Labor Statistics, or (6) if the information regarding this Agreement is in the public domain and all parties consent to the disclosure. The parties will seek confidentiality and agree not to disclose the terms of this Agreement further from any of the foregoing parties to whom they may disclose this Agreement.

21.    NO THIRD PARTY BENEFICIARIES.

This Agreement is intended for the sole benefit of NS and Yangming. Nothing in this Agreement is intended or may be construed to give any person, firm, corporation, or other entity, other than NS and Yangming and their parents, subsidiaries, and affiliates any legal or equitable right, remedy, or claim under this Agreement.

Page 11                                  07/29/04

22.  <u>WAIVER OF BREACH</u>.

At any time during the term of this Agreement, NS or Yangming may waive any breach or default of the other party under this Agreement without affecting or impairing any right arising from any other breach of or default under this Agreement. Any waiver at any time of any breach or default under any provision, condition, obligation, or requirement of this Agreement will extend only to the particular breach or default so waived and will not impair or affect the existence of this Agreement or the right of NS or Yangming to take action in the event of any subsequent breach or default.

23.  <u>GOVERNING LAW</u>.

This Agreement will be deemed executed in the Commonwealth of Virginia and will be subject to and interpreted in accordance with the laws of the United States of America and of the Commonwealth of Virginia.

24.  <u>CAPTIONS AND COUNTERPARTS</u>.

All headings in this Agreement are inserted for convenience only and will not affect construction or interpretation of this Agreement. This Agreement may be executed in any number of counterparts, each of which may be deemed an original for any purpose.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have caused Agreement to be executed by their duly authorized officers as of the day and year first above written.

NORFOLK SOUTHERN RAILWAY COMPANY

By: _____

Title: _VP- Intermodal IMXtg._

Yang Ming (America) Corp as agent
For YANGMING MARINE TRANSPORT CORPORATION, LTD

By: _____

Title: _SVP. OPERATIONS_

July 29, 2004

Page 12                                   07/29/04

NSGENL 0012

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TM 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue - Suite 190
Rye, New York 10580
(914) 921-1200
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SOMPO JAPAN INSURANCE COMPANY OF        :
AMERICA, and SOMPO JAPAN INSURANCE,               07 Civ. 11276
INC.,                                                                     :

                              *Plaintiffs*,                     :
          - against -

                                                                     :
YANG MING MARINE TRANSPORT
CORPORATION,                                                    :

                              *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## STATEMENT OF RELATEDNESS

        Plaintiff submits this Statement of Relatedness concerning the above-captioned

matter and another case pending in this District—*Sompo Japan Insurance Company of America*

*and Sompo Japan Insurance, Inc. v. Norfolk Southern Railway Company, Norfolk Southern*

*Corporation and The Kansas City Railway Company*, 07 Civ. 2735 (DC).

        The underlying facts in both matters are the same. In both cases, Yang Ming

Transport Co. issued bills of lading to carry shipments by sea aboard the M/V Cherokee Bridge

from Japan to Long Beach, California, and from there via rail to inland U.S. destinations. The

train carrying the shipments derailed in Texas.

        Both cases involve the same plaintiffs and cargo—Kubota tractors, Unisia

Autoparts and Hoshizaki sushi cases.


EXHIBIT 3

The 07 Civ. 2735 case is against the rail defendants Norfolk Southern Railway

Company, Norfolk Southern Corporation and The Kansas City Southern Railway Company.


Dated: Rye, New York
      December 7, 2007

MALOOF BROWNE & EAGAN LLC

By:_____

    David T. Maloof (DM 3350)
    Thomas M. Eagan (TM 1713)
411 Theodore Fremd Avenue – Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
*Attorneys for Plaintiff*

LAW OFFICES

# KEENAN COHEN & HOWARD P.C.

CHARLES L. HOWARD
DIRECT DIAL: 215-609-1105
CHOWARD@FREIGHTLAW.NET

ONE PITCAIRN PLACE
SUITE 2400
165 TOWNSHIP LINE ROAD
JENKINTOWN, PA 19046

215-609-1110
(FAX) 215-609-1117

November 29, 2007

**VIA FACSIMILE and REGULAR MAIL**

Thomas M. Eagan, Esquire
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411

> Re:  **Sompo Japan v. Kansas City Railway and Norfolk Southern Railway Co.
> U.S.D.C., for the Southern District of New York; No. 07-cv-2735**
> *Our File No.: 4613-149*

Dear Tom:

As we discussed after the hearing last Wednesday, it is now time for Sompo to begin responding to the defendants' outstanding discovery requests. As you know, the defendants served the plaintiffs with their first set of interrogatories and document requests in late August of this year. In addition, the defendants served the plaintiffs with a notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6). I agreed to an indefinite extension of time for Sompo to respond to the discovery in light of the motions which the parties had pending with the Court. Now that the motions have been heard, I must now insist that Sompo provide responses to the discovery.

Please provide me with plaintiffs' formal responses to the defendants' interrogatories and document requests not later than Monday, December 10, 2007. In addition, please provide me with the name(s) of the individual who will be designated by the plaintiffs to testify on their behalf in response to defendants' 30(b)(6) notices. I am assuming that more than one individual will be so designated. In any event, we need to begin scheduling those depositions as soon as possible. Please provide me with plaintiffs' list of such designees and the date(s) on which and locations where they will be available for deposition. We would like to complete the 30(b)(6) depositions by the middle of January of 2008.

The defendants also expect to take the depositions of Messrs. Perfect and Costanza, regardless of whether or not they are 30(b)(6) designees. I have prepared Rule 45 subpoenas for both gentlemen. Please let me know whether you will accept service of those subpoenas on their behalf, or whether you will require that I formally serve them with the subpoenas. In addition,



Thomas M. Eagan, Esquire
November 29, 2007
Page 2

please provide me with dates on which they will be available for deposition. I would like to complete their depositions before the end of December 2007.

As you also know, in September, the defendants served a number of Rule 45 subpoenas on the non-parties who are located in Georgia. We agreed to postpone those depositions pending resolution of the parties' motions. The defendants will now be actively pursuing those depositions.

Mr. Bartek of East Coast Maritime Services was the only person who received a subpoena and who contacted me regarding scheduling. I believe you had previously indicated to me that you had been in contact with some of the others regarding our agreement to postpone the non-party depositions. Rather than re-serve each of them with another subpoena, I would ask that you provide me with information concerning whatever communications you may have had with them concerning future scheduling of their depositions. It's to everyone's benefit that their depositions be scheduled at a mutually convenient time and place. In addition to Mr. Bartek, the defendants served Rule 45 subpoenas on GAB Robins of Duluth, Georgia; Robinson Salvage of Carrolton, Georgia; and VeriClaim of Atlanta, Georgia. In addition to those individuals, the defendants will also be preparing and serving Rule 45 subpoenas on VeriClaim of Houston, Texas and Duncan Shoemaker of San Pedro, California.

On a matter unrelated to discovery, this firm will be representing the interests of Yang Ming in connection with the claims at issue in this matter. Yang Ming does not agree to any further extensions of the tolling agreement currently in place between plaintiffs and Yang Ming. Accordingly, the tolling agreement between the parties expires as of December 18, 2007.

In the event, that the plaintiffs formally pursue claims against Yang Ming related to this matter, Yang Ming will agree to waive the forum selection clause in the Yang Ming bill of lading and to submit to the jurisdiction of the United States District Courts.

Please contact me as soon as possible to discuss the scheduling issues raised herein.

Very truly yours,

KEENAN COHEN & HOWARD P.C.

By: _____
Charles L. Howard

CLH/

DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TE 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
(914) 921-1200
*Attorneys for Plaintiffs*



FILED
DEC 1 4 2007
USDC WP SDNY

**'07 CIV 11276**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, and SOMPO JAPAN INSURANCE, INC., | 07 Civ. |
| *Plaintiffs,* | **COMPLAINT** |
| - against - | |
| YANG MING MARINE TRANSPORT CORPORATION, | |
| *Defendants.* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs Sompo Japan Insurance Company of America ("Sompo America") and
Sompo Japan Insurance, Inc. ("Sompo Japan") by their undersigned attorneys, Maloof Browne &
Eagan LLC, for their Complaint allege, upon information and belief, as follows:

1.    This action arises under the Court's federal question jurisdiction (28 U.S.C.
1331 and 49 U.S.C. 14706), Maritime jurisdiction under 28 U.S.C. 1333 and under Rule 9(h) of the
F.R.C.P. and/or supplemental jurisdiction (28 U.S.C. 1367) as hereinafter more fully appears.

2.    Plaintiff Sompo America is an insurance company organized and existing
under the laws of the State of New York with its principal place of business in New York, New
York, and is the insurer of one or more of the Shipments that are the subject of this action, as more
fully described below.

1



EXHIBIT 5

3.      Plaintiff Sompo Japan is an insurance company organized and existing under the laws of Japan, and is the insurer of one or more of the Shipments that are the subject of this action, as more fully described below.

4.      Defendant Yang Ming Marine Transport Corporation (hereinafter "Yang Ming") is a corporation organized and existing under laws of a foreign country, was and is doing business as a common carrier of goods by sea and rail for hire, was the delivering rail carrier of the Shipments at issue, has its U.S. general agent located in the Port of New York, and does business in the State of New York.

5.      Venue is proper here within the meaning of 28 U.S.C. § 1391 and 49 U.S.C. 11706(d)(2). The defendant resides within this District within the meaning of 28 U.S.C. § 1391(c), and defendant consents to the venue in the Southern District of New York.

## A. KUBOTA TRACTOR SHIPMENT

6.      On or about March 31, 2006, at the Port of Tokyo, Japan, there was shipped by Kubota Corporation and delivered to Yang Ming and loaded aboard the M/V Cherokee Bridge a consignment of Agricultural Tractors, then being in good order and condition, in Containers YMLU8294100, FSCU6904489, CLHU8586100, XINU8033402, YMLU8217892, YMLU8264472, CRXU9841070, YMLU8190019, TGHU8035818, YMLU8131839, CRXU9505408, INKU6363983, BHCU4940820, CRXU9829536, TRLU8116442, YMLU8223405 (the "Kubota Shipment"). Defendant accepted the Kubota Shipment and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, Defendant agreed to transport and carry said Kubota Shipment to Georgia via sea and rail, and there deliver the Shipment in like good order and condition to Sompo America's assured and/or designee. The Kubota Shipment was described in certain bills of lading numbered YMLUW251121377, YMLUW251121405, YMLUW261121400, YMLUW251121404,

2

YMLUW251121378,    YMLUW251121379,    YMLUW251121380,    YMLUW251121381,

YMLUW251121382,    YMLUW251121383,    YMLUW251121384,    YMLUW251121385,

YMLUW251121386,    YMLUW251121387,    YMLUW251121388,    YMLUW251121389,

YMLUW251121398, and YMLUW251121402, all dated on or about March 31, 2006.

7.    All portions of the carriage were part of an international and interstate transportation of goods.

8.    Defendant made delivery of the Kubota Shipment, but not in like good order and condition as when shipped, delivered to and received by them, but on the contrary, short and seriously injured and impaired in value, all in violation of Defendant's obligations and duties as common carriers of merchandise by sea and rail for hire, and to perform their services with respect to the Kubota Shipment in a careful, workmanlike manner, and otherwise in violation of their duties, including duties to properly inspect, maintain and repair its rail lines.

9.    Plaintiff Sompo America insured the Kubota Shipment. Plaintiff Sompo America has incurred, and will incur, losses as a result of the damage to the Kubota Shipment. Plaintiff Sompo America is duly entitled to maintain this action.

10.    Plaintiff Sompo America and its assured have performed all conditions on their parts to be performed.

11.    By reason of the foregoing, Plaintiff Sompo America has sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in a sum estimated to be up to or exceeding U.S. $975,000.00.

**B. UNISIA SHIPMENT**

12.    On or about March 31, 2006, at the Port of Yokohama, Japan, there was shipped by Hitachi, Ltd. and delivered to Yang Ming and loaded aboard the M/V Cherokee Bridge a

3

consignment of Automobile Parts in Containers YMLU4455172 and TEXU7204601, then being in good order and condition (the "Unisia Shipment"). Defendant accepted the Unisia Shipment and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, Defendant agreed to transport and carry said Unisia Shipment to Georgia via sea and rail, and there deliver the Shipment in like good order and condition to Sompo America's assured and/or designee. The Unisia Shipment was described in a certain bill of lading numbered YMLUW261105356 dated on or about March 31, 2006.

13.    All portions of the carriage were part of an international and interstate transportation of goods.

14.    Defendant made delivery of the Unisia Shipment, but not in like good order and condition as when shipped, delivered to and received by them, but on the contrary, short and seriously injured and impaired in value, all in violation of Defendant's obligations and duties as common carriers of merchandise by sea and rail for hire, and to perform their services with respect to the Unisia Shipment in a careful, workmanlike manner, and in otherwise violation of their duties, including duties to properly inspect, maintain and repair its rail lines.

15.    Plaintiff Sompo America insured the Unisia Shipment. Plaintiff Sompo America has incurred, and will incur, losses as a result of damage to the Unisia Shipment. Plaintiff Sompo America is duly entitled to maintain this action. Plaintiff Sompo America and its assured have performed all conditions on their parts to be performed.

16.    By reason of the foregoing, Plaintiff Sompo America has sustained damages, as nearly as the same can now be estimated, no part of which has been paid although duly demanded, in a sum estimated to be up to or exceeding U.S. $400,000.00

4

## C. HOSHIZAKI ELECTRIC SHIPMENT

17.    On or about April 11, 2006, at the port of Kobe, Japan, there was shipped by

Hoshizaki Electric Company and delivered to Yang Ming and loaded aboard the M/V Cherokee

Bridge a consignment of Icemakers and Sushi Cases in Containers YMLU4515760, YMLU4746964

and YMLU4889482, then being in good order and condition (the "Hoshizaki Shipment"). Defendant

accepted the Hoshizaki Shipment and in consideration of certain agreed freight charges thereupon

paid or agreed to be paid, Defendant agreed to transport and carry said Hoshizaki Shipment to

Georgia via sea and rail, and there deliver the Shipment in like good order and condition to Sompo

Japan's assured and/or designee. The Hoshizaki Shipment was described in a certain bill of lading

numbered YMLUW251752204, dated on or about March 26, 2006.

18.    All portions of the carriage were part of an international and interstate

transportation of goods.

19.    Defendant made delivery of the Hoshizaki Shipment, but not in like good

order and condition as when shipped, delivered to and received by them, but on the contrary, short

and seriously injured and impaired in value, all in violation of Defendant's obligations and duties as

common carriers of merchandise by sea and rail for hire, and to perform their services with respect to

the Hoshizaki Shipment in a careful, workmanlike manner, and otherwise in violation of their duties,

including duties to properly inspect, maintain and repair its rail lines.

20.    Plaintiff, Sompo Japan insured the Hoshizaki Shipment. Plaintiff Sompo

Japan has incurred, and will incur, losses as a result of damage to the Hoshizaki Shipment. Plaintiff

Sompo Japan is duly entitled to maintain this action. Plaintiff Sompo Japan has performed all

conditions on their parts to be performed.

21.    By reason of the foregoing, Plaintiff Sompo Japan has sustained damages, as

nearly as the same can now be estimated, no part of which has been paid although duly demanded, in a sum estimated to be up to or exceeding U.S. $245,000.00.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT AND OF DUTIES UNDER CARMACK AMENDMENT AND STAGGERS RAIL ACT AS TO THE KUBOTA SHIPMENT

22.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 21 above.

23.    By reason of the foregoing, Defendant was a rail carrier within the meaning of the Carmack Amendment and Staggers Rail Act of 1980 and breached their duty of a rail carrier under said law and under the contract of carriage.

24.    By reason of the foregoing, Defendant has caused damage to Plaintiff Sompo America in an amount estimated to be up to and exceeding US $975,000.00.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT AND OF DUTIES UNDER COGSA, 46 U.S.C. §1300 ET. SEQ. AND/OR APPLICABLE TREATIES AS TO THE KUBOTA SHIPMENT

25.    Plaintiff incorporates herein by reference the allegations of paragraphs 1-24 above.

26.    By reason of the foregoing, Defendant was a common carrier of merchandise by water for hire within the meaning of the Carriage of Goods By Sea Act, 46 U.S.C. § 1300, et. seq., and/or applicable treaties for the carriage of goods by sea and breached its duties as a carrier under that Act and under the contract of carriage entered into by the Defendant pursuant to that Act and/or treaties.

6

27.    By reason of the foregoing, the Defendant has caused damage to Plaintiff, and to the others on whose behalf Plaintiff sues, in an amount, as nearly as can now be estimated, up to or exceeding U.S. $975,000.00.

## THIRD CAUSE OF ACTION

### TORT DAMAGE TO PROPERTY
### NEGLIGENCE AND/OR GROSS NEGLIGENCE AND/OR RECKLESSNESS AND/OR WILLFUL CONDUCT AS TO THE KUBOTA SHIPMENT

28.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 27 above.

29.    Defendant, directly or through its employees, agents or independent contractors, willfully, recklessly or negligently and/or with gross negligence failed to exercise the degree of care in relation to the Kubota Shipment which a reasonably careful man would exercise under like circumstances, and/or willfully, recklessly or negligently and/or with gross negligence failed to carry the Kubota Shipment such as were reasonably required and would be sufficient to prevent the damage to the Kubota Shipment.

30.    The Kubota Shipment suffered loss as alleged herein, as a proximate result of defendant's said willful, reckless and/or negligent conduct.

31.    Defendant is accordingly liable to Plaintiff Sompo America in an amount estimated to be or exceed U.S. $975,000.

## FOURTH CAUSE OF ACTION

### BREACH OF BAILMENT OBLIGATIONS
### AS TO THE KUBOTA SHIPMENT

32.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 31 above.

7

33.    Defendant at relevant times acted as carrier of goods for hire by land, and/or bailee of or otherwise had a duty to care for the Kubota Shipment at the time it was in their custody. Defendant thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to safely keep, care for, and deliver the Kubota Shipment in the same condition as when entrusted to them, and/or to perform its services or to ensure that those service were performed with reasonable care and in a non-negligent and workmanlike manner. Defendant breached those obligations and negligently failed to deliver to Plaintiff Sompo America's assured's designees or consignees the Kubota Shipment in as complete and good condition as when entrusted to them.

34.    By reason of the foregoing, the Defendant has caused damage as alleged herein to Plaintiff Sompo America, and is liable to Plaintiff Sompo America for such damages in an amount estimated to be or exceed U.S. $975,000.00.

### FIFTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER CARMACK AMENDMENT AND STAGGERS RAIL ACT AS TO THE UNISIA SHIPMENT

35.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 34 above.

36.    By reason of the foregoing, Defendant was a rail carrier within the meaning of the Carmack Amendment and Staggers Rail Act of 1980 and breached their duty of a rail carrier under said law and under the contract of carriage.

37.    By reason of the foregoing, Defendant has caused damage to Plaintiff Sompo America in an amount estimated to be up to and exceeding US $400,000.00.

8

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER COGSA, 46 U.S.C. §1300 ET. SEQ. AND/OR APPLICABLE TREATIES AS TO THE UNISIA SHIPMENT

38.    Plaintiff incorporates herein by reference the allegations of paragraphs 1-37 above.

39.    By reason of the foregoing, Defendant was a common carrier of merchandise by water for hire within the meaning of the Carriage of Goods By Sea Act, 46 U.S.C. § 1300, et. seq., and/or applicable treaties for the carriage of goods by sea and breached its duties as a carrier under that Act and under the contract of carriage entered into by the Defendant pursuant to that Act and/or treaties.

40.    By reason of the foregoing, the Defendant has caused damage to Plaintiff, and to the others on whose behalf Plaintiff sues, in an amount, as nearly as can now be estimated, up to or exceeding U.S. $400,000.00.

### SEVENTH CAUSE OF ACTION

### TORT DAMAGE TO PROPERTY NEGLIGENCE AND/OR GROSS NEGLIGENCE AS TO THE UNISIA SHIPMENT

41.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 40 above.

42.    Defendant, directly or through its employees, agents or independent contractors, willfully, recklessly or negligently and/or with gross negligence failed to exercise the degree of care in relation to the Unisia Shipment which a reasonably careful man would exercise under like circumstances, and/or willfully, recklessly or negligently and/or with gross negligence failed to provide adequate security measures for the Unisia Shipment such as were reasonably required and would be sufficient to prevent the damage to the Unisia Shipment.

43.    The Unisia Shipment suffered loss as alleged herein, as a proximate result of defendant's said willful, reckless and/or negligent conduct.

44.    Defendant is accordingly liable to Plaintiff Sompo America in an amount estimated to be or exceed U.S. $400,000.00.

### EIGHTH CAUSE OF ACTION

### BREACH OF BAILMENT OBLIGATIONS
### AS TO THE UNISIA SHIPMENT

45.    Plaintiff Sompo America incorporates herein by reference the allegations of paragraphs 1 through 44 above.

46.    Defendant at relevant times acted as a carrier of goods for hire by land, and/or bailee of or otherwise had a duty to care for the Unisia Shipment at the time it was in their custody. Defendant thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to safely keep, care for, and deliver the Unisia Shipment in the same condition as when entrusted to them, and/or to perform its services or to ensure that those service were performed with reasonable care and in a non-negligent and workmanlike manner.  Defendant breached those obligations and negligently failed to deliver to Plaintiff Sompo America's assured's designees or consignees the Unisia Shipments in as complete and good condition as when entrusted to them.

47.    By reason of the foregoing, the Defendant has caused damage as alleged herein to Plaintiff Sompo America, and is liable to Plaintiff Sompo America for such damages in an amount estimated to be or exceed U.S. $400,000.00.

### NINTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER CARMACK AMENDMENT AND STAGGERS RAIL ACT AS TO THE HOSHIZAKI SHIPMENT

48.    Plaintiff Sompo Japan incorporates herein by reference the allegations of paragraphs 1 through 47 above.

49.    By reason of the foregoing, Defendant was a rail carrier within the meaning of the Carmack Amendment and Staggers Rail Act of 1980 and breached its duty of a rail carrier under said law and under the contract of carriage.

50.    By reason of the foregoing, Defendant has caused damage to Plaintiff Sompo Japan in an amount estimated to be up to and exceeding US $245,000.00.

### TENTH CAUSE OF ACTION

### BREACH OF CONTRACT AND OF DUTIES UNDER COGSA, 46 U.S.C. §1300 ET. SEQ. AND/OR APPLICABLE TREATIES AS TO THE HOSHIZAKI SHIPMENT

51.    Plaintiff incorporates herein by reference the allegations of paragraphs 1-50 above.

52.    By reason of the foregoing, Defendant was a common carrier of merchandise by water for hire within the meaning of the Carriage of Goods By Sea Act, 46 U.S.C. § 1300, et. seq., and/or applicable treaties for the carriage of goods by sea and breached its duties as a carrier under that Act and under the contract of carriage entered into by the Defendant pursuant to that Act

and/or treaties.

53.    By reason of the foregoing, the Defendant has caused damage to Plaintiff, and to the others on whose behalf Plaintiff sues, in an amount, as nearly as can now be estimated, up to or exceeding U.S. $245,000.00.

### ELEVENTH CAUSE OF ACTION

### TORT DAMAGE TO PROPERTY
### NEGLIGENCE AND/OR GROSS NEGLIGENCE
### AS TO THE HOSHIZAKI SHIPMENT

54.    Plaintiff Sompo Japan incorporates herein by reference the allegations of paragraphs 1 through 53 above.

55.    Defendant, directly or through its employees, agents or independent contractors, willfully, recklessly or negligently and/or with gross negligence failed to exercise the degree of care in relation to the Hoshizaki Shipment which a reasonably careful man would exercise under like circumstances, and/or willfully, recklessly or negligently and/or with gross negligence failed to provide adequate security measures for the Hoshizaki Shipment such as were reasonably required and would be sufficient to prevent the damage to the Hoshizaki Shipment.

56.    The Hoshizaki Shipment suffered losses as alleged herein, as a proximate result of defendant's said willful, reckless and/or negligent conduct.

57.    Defendant is accordingly liable to Plaintiff Sompo Japan in an amount estimated to be or exceed U.S. $245,000.00.

## TWELFTH CAUSE OF ACTION

## BREACH OF BAILMENT OBLIGATIONS
## AS TO THE HOSHIZAKI SHIPMENT

58.     Plaintiff Sompo Japan incorporates herein by reference the allegations of paragraphs 1 through 57 above.

59.     Defendant at relevant times acted as a carrier of goods for hire by land, and/or bailee of or otherwise had a duty to care for the Hoshizaki Shipment at the time it was in its custody. Defendants thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to safely keep, care for, and deliver the Hoshizaki Shipment in the same condition as when entrusted to them, and/or to perform its services or to ensure that those service were performed with reasonable care and in a non-negligent and workmanlike manner. Defendant breached those obligations and negligently failed to deliver to Plaintiff Sompo Japan's assured's designees or consignees the Hoshizaki Shipments in as complete and good condition as when entrusted to them.

60.     By reason of the foregoing, the Defendant has caused damage as alleged herein to Plaintiff Sompo Japan, and are liable to Plaintiff Sompo Japan for such damages in an amount estimated to be or exceed U.S. $245,000.00.

WHEREOF, Plaintiff pray:

1.     That judgment may be entered in favor of Plaintiffs against Defendant for the amount of each Plaintiffs' damages, together with interest and costs, and the disbursements of this action;

2.     That this Court will grant to Plaintiffs such other and further relief as may be just and proper.

13

Dated: Rye, New York
        December 7, 2007

MALOOF BROWNE & EAGAN LLC

By: _____

        David T. Maloof (DM 3350)
        Thomas M. Eagan (TE 1713)
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
(914) 921-1200
*Attorneys for Plaintiffs Sompo Japan
Insurance Company of America and Sompo
Japan Insurance, Inc.*

F:\WP-DOCS\2503.81\120607 YM Complaint.doc

14

**Yang Ming Line**
**Global E-Commerce Program**
**Contact / FAQ Sheet**

**Date: April 1, 2004**

For your convenience, listed below you will find pertinent information detailed to facilitate your getting the most satisfaction and efficiency out of utilizing Yang Ming Line's newest improvement to our customer-driven Global E-Commerce Program.

1. Q: <u>How do I send shipping instruction to Yang Ming</u>?
   **A**: There are 4 ways of submitting your shipping instruction:
   
   a. <u>Via toll free Efax</u> (Same as what you are sending now. Either of following number will be working and documents will be handled by YML internal personnel.)
   YML BAL – 1-800-729-5732
   YML BOS – 1-800-783-8897
   YML CHI – 1-800-886-5061
   YML HOU – 1-800-530-5920
   YML LAX – 1-800-753-5176
   YML NYC – 1-800-794-9573
   YML OAK – 1-800-753-5302
   YML PLD – 1-800-850-7064
   YML SAV – 1-800-794-9552
   YML SEA – 1-800-303-9601
   YML WIL – 1-800-787-3051
   
   b. <u>Via E-mail attachment</u>
   If you prefer to send the Shipping instruction from your E-mail as an attachment, please send to mbdc@yml.com.tw. For Los Angeles local shipment, please send to helenmin@ymlusa.com.
   
   c. <u>Via EDI (Electronic Data Interchange)</u>
   You can send in EDI ANSI X12 format 304 (for shipping instruction), and YML will return format 310 (for B/L proof copy and printing). Please contact Yang Ming (America) IT department (E-mail address: paultang@ymlusa.com or tiffany@yml.com.tw) for assistance.
   
   d. <u>Via YML Website Application/Shipping Instruction</u>
   Currently YML is developing the shipping instruction application for customers to input their shipping instruction on the Web and turn into official Bills of Lading and release. This program will be available before the end of 2004.

2. Q: <u>What Should I do in case Efax line is busy or fails</u>?
   **A**:
   a. Please try it later again.
   b. Or, you could use any other Efax number listed above.
   c. Last, contact your Yang Ming (America) Regional Documentation Coordinator.

3. Q: <u>To whom should I send the licensed export declaration hard copy</u>?
   **A**: Please submit your yellow sheet of licensed export declaration along with Shipping Instruction to the Yang Ming America LOADING port office for the paper work preparation.

## Loading Port offices are listed as:

| | |
|---|---|
| Boston, MA port | |
| Houston, TX port | including Houston port, New Orleans port |
| Los Angeles, CA port | |
| New York, NY port | |
| Oakland, CA port | |
| Portland, OR port | |
| Savannah, GA port | including Savannah port, Miami port, Charleston |
| Seattle, WA port | Including Seattle port, Tacoma port |
| Wilmington, NC port | including Norfolk port, Wilmington port |


EXHIBIT 6

4. Q: <u>When can I expect to see the B/L proof copy</u>?
   A: The next working day after you send shipping instruction to Yang Ming provided that:
   a. Shipping Instruction contents are clear and sufficient for B/L preparation.
   b. No discrepancy is detected among booking, load list and shipping instruction.

5. Q: <u>How will I get the B/L proof copy</u>?
   A:
   a. If you could put your E-mail address on your shipping instruction copy for us, we will send the B/L proof copy back to your E-mail address listed.
   b. Or, if we couldn't obtain your E-mail address, we will fax back to the fax number shown on the Shipping Instruction.
   c. Or, if you are the Internet B/L release customer, you can **preview** the proof copy of B/L from www.yml.com.tw B/L Print function.
   d. Or, if you are EDI partners with YML, you can get the EDI format 310 for your B/L proof copy.

6. Q: <u>What if I found any discrepancy from B/L copy and need YML to correct the B/L for me, who should I contact</u>?
   A:
   a. Please send the E-mail to the sender's E-mail address listed in your proof copy remarks.
   b. Or, please send the correction request to above Efax number with your correction indicated.
   c. If the correction needed is *urgent* and vessel has sailed out from USA ports, please contact our Yang Ming (America)Regional Documentation Coordinators.

   **Regional Documentation Coordinators listed as followings**:

| Office | Person in charge | Telephone | E-mail | USA Local Fax |
|---|---|---|---|---|
| Baltimore, MD | Kathie Bellis | 410-633-4666 | kbellis@hostmd.com | 410-633-2993 |
| Boston, MA | Joe Murray | 617-443-0616 | joemurray@ymlusa.com | 617-428-6037 |
| | steven Ferreira | | stevenferreira@ymlusa.com | |
| Chicago, IL | Linda Jedrejcak | 630-572-5729 | lindajedrejcak@ymlusa.com | 630-572-0742 |
| | Mike Tsao | 630-572-5734 | miketsao@ymlusa.com | |
| Houston, TX | Moses Gloria | 281-295-8625 | mosesgloria@ymlusa.com | 281-295-8553 |
| Los Angeles, CA | Helen Min | 213-533-8564 | helenmin@ymlusa.com | 213-624-0418 |
| New York, NY | Alfonso Dizon | 201-420-5840 | alfonsodizon@ymlusa.com | 201-418-0385 |
| Oakland, CA | Dorothy Tam | 510-628-1306 | dorothytam@ymlusa.com | 510-286-2031 |
| Portland, OR | Chuck Willis | 503-227-0656 | chuckwillis@ymlusa.com | 503-227-0393 |
| Savannah, GA | Barbara Edwards | 912-443-4984 | barbaraedwards@ymlusa.com | 912-238-0339 |
| | Ginger Jeffers | 912-443-4983 | gingerjeffers@ymlusa.com | 912-238-0339 |
| Seattle, WA | Cindy Lee | 206-824-8888 | cindylee@ymlusa.com | 206-824-8883 |
| | Joe Lin | | joelin@ymlusa.com | |
| Wilmington, NC | Denise Jernigan | 800-799-7079 | denisejernigan@ymlusa.com | 910-799-7661 |
| | Karen Basinger | | karenbasinger@ymlusa.com | |
| Montreal, Canada | Tom Chan | 514-393-9100 | tom.chan@seabridge.ca | 514-393-1515 |
| | Terry Lund | | terry.lund@seabridge.ca | |

7. Q: <u>What should I do if I couldn't receive the B/L proof copy on next working date after I submit the Shipping Instruction</u>?
   A: Please contact Yang Ming Center at mbdc@yml.com.tw or for Los Angeles local shipment, please contact helenmin@ymlusa.com.

2

8. Q: <u>How can I get the Original B/L, Non-negotiable B/L copy or Way B/L?</u>
   A:
   a. The B/L release in America will be kept as current procedure. Yang Ming America's Regional Documentation Coordinators will either release to your messenger or send via mail. The B/L invoicing and payment procedure will be kept as current as well.
   b. Or, if you are the Internet B/L Release customer, please print the B/L from the Internet.

9. Q: <u>From whom should I request "COD – Change of Destination"?</u>
   A: Please contact Yang Ming (America) booking office for this arrangement.

10. Q: <u>Where should I submit the Hazardous cargo documents?</u>
    A: Please forward it to Yang Ming (America) booking office.

11. Q: <u>What is the best way to communicate with the new Yang Ming Documentation Center?</u>
    A: E-mail directly to our Documentation Center is the best and most efficient way. But, our Yang Ming (America) Regional Documentation Coordinators will be happy to serve your needs as much as possible from local offices.

Please visit our customer-driven web site today! <http://www.yml.com.tw/>

3



## Search by Port

|  | |
|---|---|
| Searching : | --Type Leading Name of Port-- |
| Calling Port : | NEW YORK, NY, United States of America |
| Duration of Arrival : | 2008/03/19 ~ 2008/04/02 |

**Port : NEW YORK, NY, United States of America**
**Duration : 2008/03/19 ~ 2008/04/02**

| Vessel Name | Comn Voyage | Voyage | YML Voyage | Service | Arrival Date | Arrival Status | Departure Date | Departure Status | Terminal |
|---|---|---|---|---|---|---|---|---|---|
| SAVONA BRIDGE | 0006W 0006E | SIA807W SIA807E | 89228W 89228E | [SIA] - SINGAPORE-INDIA-N.AMERICA SERVICE | 2008/03/19 12:00 | Actual | 2008/03/21 14:07 | Actual | APM TERMINALS |
| HANJIN WILMINGTON | 0071E 0071W | AW1808E AW1808W | HH371E HH371W | [AW1] - ASIA-US EAST COAST SERVICE LOOP-1 | 2008/03/19 14:15 | Actual | 2008/03/21 02:06 | Actual | APM TERMINALS |
| COSCO BREMERHAVEN | 481W 481E | TA1810W TA1810E | 30381W 30381E | [TA1] - TRANS ATLANTIC SERVICE-LOOP 1 | 2008/03/19 19:55 | Actual | 2008/03/20 17:00 | Actual | MAHER TERMINALS (BERTH 64) |
| YM TIANJIN | 0015W 0015E | SIA808W SIA808E | 48315W 48315E | [SIA] - SINGAPORE-INDIA-N.AMERICA SERVICE | 2008/03/20 17:28 | Actual | 2008/03/22 01:00 | Actual | APM TERMINALS |
| YM SINGAPORE | 002E 002W | AW3808E AW3808W | 12802E 12802W | [AW3] - ASIA-US EAST COAST SERVICE LOOP-3 | 2008/03/22 03:30 | Actual | 2008/03/23 00:00 | Actual | MAHER TERMINALS (BERTH 64) |
| HANSA COMMODORE | 135N 136S | ESA807N ESA812S | HE535N HE536S | [ESA] - US E.COAST/E.COAST S.AMERICA | 2008/03/22 12:06 | Actual | 2008/03/23 01:42 | Actual | MAHER TERMINALS (BERTH 64) |
| COSCO MELBOURNE | 032E 032W | AW2808E AW2808W | CEJ32E CEJ32W | [AW2] - ASIA-US EAST COAST SERVICE LOOP-2 | 2008/03/24 04:45 | Actual | 2008/03/25 06:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| MSC ENDURANCE | 9A 9R | TA6809W TA6809E | MHP09W MHP09E | [TA6] - TRANS-ATLANTIC SERVICE-LOOP6 | 2008/03/24 08:00 | Estimated | 2008/03/25 04:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| VICTORIA BRIDGE | 019E 019W | AW4809E AW4809W | 32919E 32919W | [AW4] - ASIA-US EAST COAST SERVICE LOOP-4 | 2008/03/25 13:00 | Estimated | 2008/03/26 23:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| MSC KOREA | 633A 633R | TA6810W TA6810E | MJK33W MJK33E | [TA6] - TRANS-ATLANTIC SERVICE-LOOP6 | 2008/03/26 08:00 | Estimated | 2008/03/27 07:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| HANJIN KAOHSIUNG | 133W 133E | TA1811W TA1811E | H5653W H5653E | [TA1] - TRANS ATLANTIC SERVICE-LOOP 1 | 2008/03/27 10:00 | Estimated | 2008/03/28 06:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| NEWPORT | 0706W | SIA809W | 67339W | [SIA] - SINGAPORE- | 2008/03/28 Estimated | | 2008/03/29 Estimated | | APM |

EXHIBIT 7
3/25/2008

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| BRIDGE | 0706E | SIA809E | 67339E | INDIA-N.AMERICA SERVICE | 07:00 | | 06:00 | | TERMINALS |
| YM SANTOS | 137N 138S | ESA808N ESA813S | 22837N 22838S | [ESA] - US E.COAST/E.COAST S.AMERICA | 2008/03/28 19:00 | Estimated | 2008/03/29 04:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| HANJIN OSAKA | 0119E 0119W | AW1809E AW1809W | 61442E 61442W | [AW1] - ASIA-US EAST COAST SERVICE LOOP-1 | 2008/03/29 09:00 | Estimated | 2008/03/30 13:00 | Estimated | APM TERMINALS |
| YM HAMBURG | 025E 025W | AW3809E AW3809W | 44925E 44925W | [AW3] - ASIA-US EAST COAST SERVICE LOOP-3 | 2008/03/30 03:00 | Estimated | 2008/03/31 08:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| TENG HE | 133E 133W | AW2809E AW2809W | 50329E 50329W | [AW2] - ASIA-US EAST COAST SERVICE LOOP-2 | 2008/03/30 15:00 | Estimated | 2008/03/31 14:00 | Estimated | MAHER TERMINALS (BERTH 64) |
| MANHATTAN BRIDGE | 100W 100E | TA1812W TA1812E | 67900W 67900E | [TA1] - TRANS ATLANTIC SERVICE-LOOP 1 | 2008/03/31 04:00 | Planned | 2008/04/01 00:00 | Planned | MAHER TERMINALS (BERTH 64) |
| VENICE BRIDGE | 022E 022W | AW4810E AW4810W | 84622E 84622W | [AW4] - ASIA-US EAST COAST SERVICE LOOP-4 | 2008/04/01 15:00 | Planned | 2008/04/02 18:00 | Planned | MAHER TERMINALS (BERTH 64) |
| HANJIN SHANGHAI | 0096E 0096W | AW1810E AW1810W | 61796E 61796W | [AW1] - ASIA-US EAST COAST SERVICE LOOP-1 | 2008/04/02 16:00 | Planned | 2008/04/03 20:00 | Planned | APM TERMINALS |



**YANG MING MARINE TRANSPORT CORP.**
Copyright © Yang Ming All rights reserved.

# Select A Case

**This person is a party in 7 cases.**

| | | | |
|---|---|---|---|
| 1:86-cv-06884-PKL | Yangming Marine v. Rpc Corp | filed 09/05/86 | closed 06/27/90 |
| 1:87-cv-01191-WK | Yangming Marine v. Leco Int'l | filed 02/24/87 | closed 03/28/90 |
| 1:88-cv-00502-KMW | Marine Indem. INS. v. Yangming Marine Tran | filed 01/25/88 | closed 05/18/90 |
| 1:88-cv-00613-CSH | Yangming Marine Tran v. State Bank of India | filed 01/28/88 | closed 06/01/90 |
| 1:88-cv-03680-JSM | INS. CO. of North Am v. S Star, et al | filed 05/26/88 | closed 06/26/90 |
| 1:88-cv-05500-KTD | Yangming Marine Tran v. Bond Int'l, Inc. | filed 08/08/88 | closed 01/04/90 |
| 1:90-cv-03244-JES | Chengs Enterprises v. Mv Ming Pleasure | filed 05/14/90 | closed 09/21/90 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/25/2008 11:17:58 | | | |
| **PACER Login:** | mb0224 | **Client Code:** | 2503.81 |
| **Description:** | Search | **Search Criteria:** | Last Name: Yangming |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |



# Select A Case

**This person is a party in 2 cases.**

1:01-cv-09077-LAK     Yangming Marine Corp v. Cohen, et al     filed 10/12/01    closed 05/06/02

1:02-cv-00255-DC     Wicsun Trading, Inc. v. M/V Amazonas, et al     filed 01/10/02    closed 12/05/02

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/25/2008 11:18:10 | | | |
| **PACER Login:** | mb0224 | **Client Code:** | 2503.81 |
| **Description:** | Search | **Search Criteria:** | Last Name: Yangming |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# Select A Case

**This person is a party in 8 cases.**

| | | | |
|---|---|---|---|
| 1:86-cv-07357-KMW | Yangming Marine Tran v. HI-Tech Merchants | filed 09/24/86 | closed 10/15/90 |
| 1:88-cv-01318-CSH | Yangming Marine Tran v. Formost Int'l Inc. | filed 02/25/88 | closed 04/09/90 |
| 1:88-cv-07488-SWK | Yangming Marine Tran v. Mark II Imports | filed 10/21/88 | closed 07/03/90 |
| 1:89-cv-06104-PNL | Blue Anchor Line v. Yangming Marine Tran | filed 09/14/89 | closed 04/09/90 |
| 1:90-cv-01111-MBM | Seaboard Seed CO. v. Reederei | filed 02/20/90 | closed 05/04/90 |
| 1:90-cv-02306-RJW | Commonwealth Metal C v. M.V. Ming Energy | filed 04/04/90 | closed 03/05/91 |
| 1:95-cv-02629-SAS | Seneca Delco Corp. v. M/V "Hanjin Hong...", et al | filed 04/17/95 | closed 02/13/96 |
| 1:96-cv-07738-DLC | Hartford Fire Ins. v. SS "An Chun", et al | filed 10/11/96 | closed 01/14/98 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/25/2008 11:18:17 | | | |
| **PACER Login:** | mb0224 | **Client Code:** | 2503.81 |
| **Description:** | Search | **Search Criteria:** | Last Name: Yangming |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# Select A Case

**This person is a party in 22 cases.**

| | | | |
|---|---|---|---|
| 1:00-cv-01629-MBM | Mutual Marine Office v. M/V Ming Longevity, et al | filed 03/02/00 | closed 09/20/02 |
| 1:00-cv-02064-MBM | Royal & Sunalliance v. M/V Med Taipei, et al | filed 03/17/00 | closed 04/21/00 |
| 1:00-cv-04420-VM | ERC Frankona v. Rorun Express Inc., et al | filed 06/15/00 | closed 07/20/00 |
| 1:01-cv-00380-LLS | Diprima Marketing, et al v. M/V "Ming Longevity", et al | filed 01/17/01 | closed 10/10/01 |
| 1:03-cv-04599-DAB | AIG Europe S.p.A. v. M/V Yang Ming Napoli, et al | filed 06/24/03 | closed 11/17/03 |
| 1:90-cv-07531-JES | Yangming Marine v. Mark II Imports, Inc | filed 11/21/90 | closed 01/30/91 |
| 1:90-cv-07801-MJL | Yangming Marine v. Rand International | filed 12/05/90 | closed 02/11/91 |
| 1:91-cv-00464-JES-LB | Handsome Chemical v. M/V Ming Galaxy, et al | filed 01/22/91 | closed 11/20/91 |
| 1:91-cv-00908-KC | Commonwealth Metal v. M/V "Ming Star", et al | filed 02/06/91 | closed 06/07/91 |
| 1:91-cv-01416-CSH | Yangming Marine v. Mindis Metals, Inc. | filed 02/27/91 | closed 06/18/91 |
| 1:91-cv-05132-CSH | Yangming Marine v. RPX Resins, Inc., et al | filed 07/29/91 | closed 01/10/92 |
| 1:92-cv-02996-PKL | Yangming Marine v. Aruvil Int'l., Inc. | filed 04/24/92 | closed 10/31/94 |
| 1:93-cv-03512-LBS | Bangkok Insurance v. M/V Ming Pleasure, et al | filed 05/25/93 | closed 01/14/94 |

| | | | |
|---|---|---|---|
| 1:93-cv-05793-RWS | Scottenstein Stores v. The M/V Ming Peace, et al | filed 08/18/93 | closed 09/23/94 |
| 1:93-cv-06602-MGC | The Hartford Fire, et al v. M/V "Hanjin Kobe", et al | filed 09/21/93 | closed 01/12/94 |
| 1:93-cv-06984-RPP | Yangming Marine v. Metal Exports | filed 10/06/93 | closed 12/09/93 |
| 1:93-cv-07539-TPG | McGee & Co., Inc. v. M/V Ming Plenty, et al | filed 11/03/93 | closed 06/06/94 |
| 1:93-cv-08572-WK | Yangming Marine v. Golden Recycling | filed 12/13/93 | closed 03/17/94 |
| 1:93-cv-08693-RPP | Yangming Marine v. Midas Maritime, Inc. | filed 12/16/93 | closed 03/16/94 |
| 1:94-cv-02664-DC | The Quiltex Company v. M.V. "Ming Europe", et al | filed 04/13/94 | closed 06/26/96 |
| 1:96-cv-03506-LAP-MHD | Wal-Mart Stores v. M/V Ming Progress, et al | filed 05/10/96 | closed 07/30/96 |
| 1:99-cv-05806-DFE | American Home Assur. v. M/V Tower Bridge, et al | filed 07/21/99 | closed 06/01/00 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/25/2008 11:18:25 | | | |
| PACER Login: | mb0224 | Client Code: | 2503.81 |
| Description: | Search | Search Criteria: | Last Name: Yangming |
| Billable Pages: | 2 | Cost: | 0.16 |

# Select A Case

**This person is a party in 2 cases.**

1:93-cv-08883-
PKL                    Yangming Marine v. Welgrow Internationa         filed 12/23/93   closed 10/27/94


1:94-cv-05041-JES      Ewig Int'l. Marine v. M/V Hanjin Jakarta, et    filed 07/12/94   closed 05/03/95
                       al

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/25/2008 11:18:32 | | |
| **PACER Login:** | mb0224 | **Client Code:** | 2503.81 |
| **Description:** | Search | **Search Criteria:** | Last Name: Yangming |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# Select A Case

**This person is a party in 3 cases.**

| | | | |
|---|---|---|---|
| [1:94-cv-06281-MGC](#) | Insu. Co. of No. Am. v. M/V "MING ASIA", et al | filed 09/01/94 | closed 12/28/94 |
| [1:95-cv-00898-DLC](#) | Yangming Mar. Trans. v. Seajet Express (USA) | filed 02/08/95 | closed 06/20/95 |
| [1:96-cv-01699-PKL](#) | Mitsubishi Corp. v. M/V Hanjin Portland, et al | filed 03/07/96 | closed 01/07/98 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/25/2008 11:18:39 | | | |
| **PACER Login:** | mb0224 | **Client Code:** | 2503.81 |
| **Description:** | Search | **Search Criteria:** | Last Name: Yangming |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# Select A Case

**This person is a party in 8 cases.**

| | | | |
|---|---|---|---|
| 1:05-cv-00868-LLS | KORG USA, Inc. v. M.V. "Seto Bridge" et al | filed 01/25/05 | closed 06/10/05 |
| 1:05-cv-01314-BSJ-KNF | Indemnity Insurance Company of North America et al v. Vio Cargo Line et al | filed 02/03/05 | closed 03/24/06 |
| 1:07-cv-01357-RPP-THK | Reed & Barton Corporation v. Unfreight Forwarder Inc. | filed 02/23/07 | closed 10/26/07 |
| 1:07-cv-02889-AKH | Royal & Sun Alliance Insurance, PLC v. Ocean World Lines, Inc. | filed 04/10/07 | |
| 1:07-cv-03180-RPP | Klaussner International, LLC v. M.V. Easline Tianjin et al | filed 04/20/07 | closed 10/26/07 |
| 1:07-cv-07406-LTS-GWG | Energizer S.A. v. M/V YM Green et al | filed 08/20/07 | |
| 1:87-cv-07755-CSH | Yang Ming Marine Tra v. AM. Waste Paper | filed 10/30/87 | closed 06/12/91 |
| 1:90-cv-04228-KMW | Universal Bulb & Pla v. M Minc, et al | filed 06/22/90 | closed 08/01/91 |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/25/2008 10:42:43 | | |
| **PACER Login:** | mb0224 | **Client Code:** | 2503.81 |
| **Description:** | Search | **Search Criteria:** | Last Name: Yang Ming |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# Select A Case

**This person is a party in 6 cases.**

| | | | |
|---|---|---|---|
| 1:01-cv-09273-DAB | Dah Sing Insurance v. Transunion Group, et al | filed 10/19/01 | closed 05/15/02 |
| 1:01-cv-11661-HB | Parfums Boucheron, et al v. M/V Med Taipei, et al | filed 12/21/01 | closed 08/29/02 |
| 1:07-cv-00959-RPP | Indemnity Insurance Company of North America v. C.U. Transport Inc. et al | filed 02/09/07 | closed 02/15/08 |
| 1:92-cv-08270-KMW | Somerset Marine Inc. v. M/V Ming Propitious, et al | filed 11/16/92 | closed 11/12/93 |
| 1:93-cv-04146-CES-LB | Insurance Co. of NA v. Yang Ming Marine, et al | filed 06/17/93 | closed 08/19/93 |
| 1:99-cv-00357-SHS-KNF | Yang Ming Marine v. Ocean Bridge | filed 01/19/99 | closed 09/17/99 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/25/2008 10:43:03 | | | |
| **PACER Login:** | mb0224 | **Client Code:** | 2503.81 |
| **Description:** | Search | **Search Criteria:** | Last Name: Yang Ming |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |