UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

SOMPO JAPAN INSURANCE COMPANY OF    :
AMERICA and SOMPO JAPAN INSURANCE,
INC.,                               :

            Plaintiffs,      :      **OPINION**

        - against -          :      07 Civ. 11276 (DC)

YANG MING MARINE TRANSPORT CORP.,   :

            Defendant.       :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**   MALOOF BROWN & EAGAN LLC
            By:  David T. Maloof, Esq.
                 Thomas M. Eagan, Esq.
            411 Theodore Fremd Avenue, Suite 190
            Rye, New York  10580-1411
              Attorneys for Plaintiffs

            KEENAN COHEN & HOWARD P.C.
            By:  Charles L. Howard, Esq.
                 Paul D. Keenan, Esq.
            One Pitcairn Place, Suite 2400
            Jenkintown, Pennsylvania  19046
                 - and -
            GUTTERMAN & ASSOCIATES
            By:  Barry N. Gutterman, Esq.
            The Lincoln Building
            60 East 42nd Street, 46th Floor
            New York, New York  10165
              Attorneys for Defendant

**CHIN, District Judge**

On April 18, 2006, three cargo shipments insured by

plaintiffs Sompo Japan Insurance Company of America and Sompo

Japan Insurance, Inc. (together "Sompo") were damaged when the

train carrying the cargo derailed in Texas.  Sompo asserts twelve

claims against defendant Yang Ming Transport Corporation ("Yang

Ming") -- the company that arranged for the transport of the

cargo aboard the train -- to recover for the damage.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/08

Yang Ming moves to dismiss nine of the twelve counts against it. First it moves to dismiss the claims brought under the Carmack Amendment ("Carmack")[1] pursuant to Fed. R. Civ. P. 12(b)(6); second, if the Carmack claims survive, it moves to dismiss the common law negligence and breach of bailment claims as preempted; and, third, if the Carmack claims survive, it moves to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3). For the reasons that follow, defendant's 12(b)(6) motion is denied with respect to the Carmack claims, the common law claims are dismissed as preempted, and defendant's motion to dismiss for improper venue is granted. As the remaining three claims arise from the same nucleus of common fact as the Carmack claims, they are dismissed sua sponte for improper venue.

## **BACKGROUND**

### **A. Facts**

The relevant facts are described in detail in the Court's March 20, 2008, decision in a related case, Sompo Japan Insurance Co. v. Norfolk Southern Railway Co., 540 F. Supp. 2d 486 (S.D.N.Y. 2008) (the "related case"), and are not disputed.

To summarize, in late March and early April 2006, the Kuboto, Unisia, and Hoshizaki companies arranged to ship tractors, auto parts, ice makers, and sushi cases from Japan by

---

[1] Congress added the Carmack Amendment to the Interstate Commerce Act (the "ICA") in 1906 to create "a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co., 456 F.3d 54, 58 (2d Cir. 2006) (internal quotations and citation omitted).

boat to the Port of Long Beach, California, and then by train to destinations inland in the eastern United States. (Compl. ¶¶ 6, 12, 17). Sompo insured these cargo shipments. (Id. ¶¶ 3, 9, 15).

Sompo's insureds hired Yang Ming to arrange for the shipment of their cargo from Asia to their final destinations. (Id. ¶¶ 8, 14, 19). Yang Ming arranged for both the ocean passage of the cargo from Asia to California and the rail transportation from California to the final domestic destinations. (Id.; see Barton Decl. Ex. 2). The cargo was transported under Yang Ming through bills of lading. (Compl. ¶¶ 6, 12, 17).

The cargo was first delivered in good condition to Yang Ming in Japan, and loaded aboard the M/V CHEROKEE BRIDGE. (Id. ¶¶ 6, 12, 17). The cargo was then transported across the Pacific Ocean on the M/V CHEROKEE BRIDGE, discharged in the Port of Long Beach, California, and placed on rail lines owned and operated by the BNSF Railway. Sompo Japan Ins. Co., 540 F. Supp. 2d at 489-90. For the final rail leg of the trip, Yang Ming retained Norfolk Southern Railways Corporation ("NSRC"). Id. at 490. In Dallas, Texas, the containers were interchanged from BNSF Railway to NSRC for the final leg of carriage inland. Id. Sompo's insureds had no dealings or contracts with NSRC or any other railroad operator regarding the transport of their cargo -- rather, Yang Ming was their contact. Id. at 491.

On April 18, 2006, the NSRC train carrying the cargo derailed in Texas. The derailment damaged various cargo on

- 3 -

board, including the Kuboto tractors, Unisia auto parts, and Hoshizaki ice makers and sushi cases. Id. at 489.

## B. Procedural History

On April 4, 2007, Sompo filed the related case against NSRC, Norfolk Southern Corporation, and The Kansas City Southern Railway Company to recover for the damage to the cargo, alleging that defendants owned and/or operated the railroads and rail lines along which the cargo was transported.[2] On December 14, 2007, Sompo filed the instant action against Yang Ming, seeking damages for each of the three shipments for (1) violations under 49 U.S.C. § 11706, a provision of Carmack, (2) common law negligence, (3) common law breach of bailment, and (4) breach of contract and breach of duties under the Carriage of Goods By Sea Act ("COGSA"). Sompo's complaint alleges that Yang Ming was the "delivering rail carrier" under Carmack, and therefore liable under Carmack.

On February 25, 2008, Yang Ming moved to dismiss the Carmack claims pursuant to Rule 12(b)(6). If the Carmack claims survive the motion, Yang Ming asks that the Court dismiss the common law claims as preempted, and alternatively moves to dismiss the Carmack claims for improper venue pursuant to Rule 12(b)(3). On June 16, 2008, I held oral argument. I now consider defendant's motion.

---

[2]     On March 20, 2008, I granted summary judgment in favor of Sompo in the related case, concluding that the railroad defendants had not limited their liability under Carmack. Sompo Japan Ins. Co., 540 F. Supp. 2d at 501.

- 4 -

## DISCUSSION

## A. Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted

I conclude that plaintiffs have stated Carmack claims against Yang Ming upon which relief may be granted, and dismiss the preempted common law negligence and breach of bailment claims.

### 1. Applicable Law

#### a. Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion to dismiss, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in its favor. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996); see Erickson v. Pardus, 127 S. Ct. 2197, 2199 (2007) (per curiam); Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

In its recent decision in Bell Atlantic Corp., the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-47 (1957), adopting in its place a "plausibility" standard. Bell Atl. Corp., 127 S. Ct. at 1969. As interpreted by the Second Circuit, Bell Atlantic Corp. did not announce a "universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

The question is whether the pleading alleges "'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1974).

### b. **Liability Under 49 U.S.C. § 11706**

The central issue before the Court is whether an intermediary shipping company like Yang Ming, that arranges for rail transportation but does not actually operate a railroad, can be held liable under the rail carrier provision of Carmack. If it cannot be held liable, the Carmack claims against it cannot proceed.

Part A, Subtitle IV, of Title 49 of the United States Code covers rail transportation. Section 11706(a) of Title 49 -- a provision of Carmack -- provides:

> A rail carrier providing transportation or service subject to the jurisdiction of the Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this subsection is for the actual loss or injury to the property caused by --
>
> > (1) the receiving rail carrier;
> >
> > (2) the delivering rail carrier; or
> >
> > (3) another rail carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent

> foreign country when transported under a
> through bill of lading.

49 U.S.C. § 11706(a).

The definition of the term "rail carrier" is found at
49 U.S.C. § 10102(5), which provides that a "'rail carrier' means
a person providing common carrier railroad transportation for
compensation." 49 U.S.C. § 10102(5) (emphasis added). The term
"receiving rail carrier" is only found in § 11706, and is not
specifically defined anywhere in Title 49. The term "delivering
rail carrier," on the other hand, is specifically defined in §
11706(a), which provides that a "delivering rail carrier is
deemed to be the rail carrier performing the line-haul
transportation nearest the destination but does not include a
rail carrier providing only a switching service at the
destination." 49 U.S.C. § 11706(a) (emphasis added).

## 2. **Application**

Sompo has pled facts sufficient to support a claim for
relief against Yang Ming under Carmack.

### a. **Yang Ming May Be Held Liable Under 49 U.S.C. § 11706**

Yang Ming argues that it is not a delivering rail
carrier for purposes of Carmack, and, therefore, the Carmack
claims against it must be dismissed. Yang Ming contends that it
cannot be a delivering rail carrier because it did not provide
the line-haul transportation nearest the destination, nor did it
ever have possession of the freight. Yang Ming also argues that
the Court's holding in the related case that NSRC was the

delivering rail carrier precludes a finding in this case that Yang Ming is the delivering rail carrier.

I agree that Yang Ming is not a delivering rail carrier as defined in § 11706(a), because it was not the rail carrier performing the line-haul transportation nearest the destination. The narrow definition of delivering rail carrier found in § 11706(a) and my opinion in the related case do preclude such a finding. Sompo does not allege in its complaint that Yang Ming performed any line-haul rail transportation.

But the determination of the delivering rail carrier's identity is not dispositive as to the question of whether liability can be imposed on Yang Ming under Carmack. As explained above, § 11706(a) provides that "a rail carrier providing transportation" shall issue a bill of lading, and may be held liable for damage "caused by" the receiving rail carrier, delivering rail carrier, or another rail carrier over whose line or route the property is transported. The definition of "rail carrier" at § 10102(5) and the use of that term in § 11706(a) indicate that Congress did not intend to restrict liability to only those that operate rail lines or trains, and extended it to those who book or arrange the rail transportation for payment.

Under the plain meaning of § 11706(a), therefore, rail carriers that merely provide transportation may be liable, even though the loss or injury was caused by an entity that transported the cargo or over whose line the cargo was transported. The plain language of Carmack contemplates the

possibility of multiple rail carrier defendants being held liable for one rail operator's errors. Subsections (1)-(3) of § 11706(a), which defendant focuses so heavily on in its motion papers, merely address who <u>caused</u> the damage, but not who may be held <u>responsible</u> for that damage.

Yang Ming, although it does not operate a rail line, is nonetheless a "rail carrier" pursuant to § 10102(5) because it provided (i.e., arranged for) the rail transportation to Sompo's insureds for compensation. Yang Ming issued the bill of lading, placing it squarely under the ambit of § 11706(a). Although the damage to the cargo was caused while the cargo was in NSRC's possession, Yang Ming may nonetheless be liable.

This conclusion is dictated not only by the statutory language, but also a host of other reasons.

As an initial matter, this holding comports with the Second Circuit's holding in <u>Sompo Japan Insurance Co. v. Union Pacific Railroad Co.</u>, 456 F.3d 54 (2d Cir. 2006). The <u>Sompo</u> court held that "Carmack applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading." <u>See</u> <u>Sompo</u>, 456 F.3d at 75. As I noted in my decision in the related case, the Second Circuit does not qualify its holding, nor does it exclude intermediary shipping companies from its scope.

Three recent decisions in this court -- <u>Rexroth Hydraudyne B.V. v. Ocean World Lines, Inc.</u>, No. 06 Civ. 5549 (LAK), 2007 WL 541958 (S.D.N.Y. Feb. 14, 2007); <u>Swiss National</u>

Insurance Co. v. Blue Anchor Line, No. 07 Civ. 9423 (LBS), 2008 WL 2434124 (S.D.N.Y. June 10, 2008); and, most recently, Royal & Sun Alliance Insurance PLC v. Ocean World Lines, Inc., No. 07 Civ. 2889 (AKH), 2008 WL 3854556 (S.D.N.Y. Aug. 19, 2008) -- have addressed liability for intermediaries under Carmack and the scope of Sompo.[3] These decisions have resulted in conflicting holdings.

Yang Ming argues that Rexroth should guide. In Rexroth, Judge Kaplan concluded that the Second Circuit's opinion in Sompo was "an exceptional instructive opinion that resolved a difficult question concerning the liability of a rail carrier," but that it did not address whether an intermediary shipping company may be held liable under the rail carrier provision of Carmack. Rexroth Hydraudyne, 2007 WL 541958, at *2 (concluding that Sompo does not shed light on liability for a non-vessel operating common carrier or other non-rail carriers). Judge Kaplan did not address, however, whether intermediary shipping companies are themselves "rail carriers" under Carmack, and there is no indication that this argument was advanced by the parties.

Most recently, in Royal & Sun Alliance, Judge Hellerstein addressed liability for a non-vessel operating common carrier ("NVOCC") under the motor carrier provision of Carmack. In that case, an NVOCC engaged an ocean carrier, which in turn

---

[3]     By letter dated June 20, 2008, plaintiffs alerted the Court to Judge Sand's decision in Swiss National. This case was decided only four days after oral argument in the instant case. By letter dated August 26, 2008, plaintiffs also alerted the Court to Royal & Sun Alliance, decided on August 19, 2008.

engaged a motor carrier to transport the cargo. See Royal & Sun Alliance, 2008 WL 3854556, at *2 (noting that NVOCCs engage ocean vessel-operating common carriers, which in turn engage rail and truck common carriers). Judge Hellerstein concluded that NVOCCs are not by their terms "motor carriers" under Carmack, even though an NVOCC might engage a company that might then engage a rail carrier to complete the delivery that the NVOCC was charged with arranging. Id. at *13. In considering the application of Sompo, he concluded that NVOCCs, unlike the defendant rail carrier in Sompo, do not "provide transportation or service" under Carmack, even if the NVOCC issued a bill of lading for the inland portions of carriage. Id. at *15. He also noted that the ocean carrier, and not the NVOCC, engaged and contracted with the motor carrier over whose leg the damage occurred, and, if Carmack were to apply, it would apply to that ocean carrier. Id. at *13. Royal & Sun Alliance is therefore factually distinguishable, because here Yang Ming was the party to directly engage the rail carrier.

In Swiss National, Judge Sand addressed whether NVOCCs can be held liable under the motor carrier provision of Carmack. Explicitly disagreeing with the conclusion in Rexroth, he concluded that Carmack does apply to NVOCCs. Swiss Nat'l Ins. Co., 2008 WL 2434124, at *3. He also noted that while his decision addressed the motor carrier provision of Carmack, his reasoning was entirely applicable to NVOCCs under the rail carrier provision of Carmack, because the language of the two

- 11 -

provisions is "essentially identical."[4]  Id. at *2 n.2 ("[T]he principles in Sompo apply uniformly to both the rail and motor sections of Carmack.").

I agree both with Judge Sand's reasoning in Swiss National, and with plaintiffs' argument that it contains a more direct and thorough analysis of the issue at hand than Rexroth. Furthermore, as explained above, I read Carmack's language differently from Judge Hellerstein's reading in Royal & Sun

---

[4]     The Interstate Commerce Commission Termination Act of 1995 divided the Carmack provisions addressing liability of carriers under bills of lading into separate categories for rail carriers, motor carriers/freight forwarders, and pipeline carriers.  See Royal & Sun Alliance, 2008 WL 3854556, at *10. Section 14706(a)(1), which addresses motor carrier liability under Carmack, provides:

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part.  That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading . . . . A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

49 U.S.C. § 14706(a)(1).

- 12 -

Alliance, and decline to adopt the conclusion that Sompo demands liability under Carmack only for entities that actually carry goods. Swiss National's reasoning more closely adheres to the Second Circuit's decision in Sompo, which I am bound to follow.

The conclusion that intermediary shipping companies can be liable under Carmack's rail carrier provision is also supported by decisions from other districts concluding that shipping companies may be receiving or originating carriers under Carmack's motor carrier provision. Yang Ming argues that the motor carrier cases under § 14706(a) are distinguishable because the statutory language in the motor carrier section of Carmack is much broader in its coverage than the rail carrier portion. I reject this argument, and agree with Judge Sand that the language of the two provisions is "essentially identical," requiring uniform application of Sompo in both the motor and rail carrier contexts. Swiss Nat'l Ins. Co., 2008 WL 2434124, at *3 ("[I]t is clear from the substance of Sompo that it was meant to apply to the Carmack Amendment in its entirety, and not just to the rail portion."). Under § 14706(a), both motor carriers who transport goods and those who arrange for motor transportation are covered.

In Kyodo USA Inc. v. COSCO North America, Inc., the California district court concluded that the ocean carrier that issued the through bill of lading could be held liable for damage during the motor leg of cargo transport. Kyodo U.S.A. Inc. v. COSCO N. Am., Inc., No. 01 Civ. 499, 2001 WL 1835158 (C.D. Cal. July 23, 2001). Relying on the proposition that Carmack created

- 13 -

for an initial carrier a "unity of responsibility" for the cargo until its destination, the court noted that the "'initial' or 'receiving' carrier within the meaning of the Carmack Amendment is ordinarily the 'one who first contracts to transport the shipment', because it is that carrier 'with which the shipper does business and to which it looks.'" Id. at *4 n.7 (quoting U.S. v. Miss. Valley Barge Line Co., 285 F.2d 381, 393 (8th Cir. 1960)). Ultimately, Carmack's application to the shipment at the point where the damage occurred -- and not the character of the carrier -- was paramount to the Kyodo court. Id. at **4-5; see Canon USA, Inc. v. Nippon Liner Sys., Ltd., No. 90 Civ. 7350, 1992 WL 82509, at *8 (N.D. Ill. Apr. 17, 1992) (concluding that an ocean carrier that issued a through bill of lading was a "receiving carrier" under Carmack, and could be held liable for damage occurring during the domestic trucking leg of a trip); see also Project Hope v. M/V IBN SINA, 250 F.3d 67, 76 (2d Cir. 2001) (concluding that an NVOCC and a motor carrier could be held jointly and severally liable under Carmack for spoilation of drugs during the motor leg of transport); Miss. Valley Barge Line, 285 F.2d at 393 (concluding that a barge line was the contracting carrier and the initial and receiving rail carrier under a previous version of Carmack).[5]

---

[5]     At oral argument, I inquired whether there were any cases where an intermediary shipping company had been determined to be a receiving rail carrier (as opposed to a receiving motor carrier) under Carmack. By letter to the Court dated June 20, 2008, Sompo alerted the Court to United States v. Mississippi Valley Barge Line Co., 285 F.2d 381 (8th Cir. 1960). Yang Ming argues that this case is inapplicable because it addressed an

- 14 -

The Kyodo court's reasoning is persuasive. While Yang Ming may not be the "delivering rail carrier," as Sompo argues, it is plausible, based on the complaint, that Yang Ming is the "receiving rail carrier," because it took delivery of the cargo in Japan and arranged for transfer to the railroad operators in Long Beach. (See Compl. ¶¶ 6, 12, 17). Although there is no specific definition of "receiving rail carrier" in the statute, as there is for "delivering rail carrier," the common sense meaning of "receiving rail carrier" is an entity providing rail transportation for compensation that receives the cargo from the shippers or, alternatively, arranges for it to be received by the railroad operator. Therefore, under Rule 12(b)(6)'s plausibility standard, Yang Ming may alternatively be held liable under Carmack because it is a receiving rail carrier.

Additionally, the conclusion that Yang Ming is subject to Carmack in the circumstances here is supported by the public policy underlying Carmack. Congress passed Carmack "to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." Reider v. Thompson, 339 U.S. 113, 119 (1950); see also Aaacon Auto Transport, Inc. v. State Farm Mutual Auto. Ins. Co., 537 F.2d 648, 653 (2d Cir. 1976). Shippers do not contract directly with rail transportation

earlier version of Carmack. Plaintiffs argue that it is authoritative, as the Kyodo court relied on it. Because I conclude that the analysis is the same in both the rail and motor carrier contexts, I need not address this dispute.

operators, and they expect the intermediary shipping companies (with which they contract) to be accountable to them. While it is true that the shippers in this case -- or at least their insurer -- were able to search out NSRC, that is not always the case.

Finally, holding that Sompo's Carmack claims against Yang Ming survive comports with my decision in the related case. In the related case I ruled that the shipping companies and the rail providers together were required to offer full Carmack coverage to Sompo's insureds to limit liability. Sompo Japan Ins. Co., 540 F. Supp. 2d at 500. I also noted that shipping companies -- like Yang Ming -- are the parties best suited to offer full Carmack liability to the cargo owners, as they are the only parties contracting with the cargo owners, the intended beneficiaries of Carmack's protections. Id.

I therefore hold that both rail carriers that actually operate railroads as well as intermediaries like Yang Ming that arrange for rail transportation for compensation may be held liable under Carmack. As Sompo has stated a claim upon which relief may be granted against Yang Ming, defendant's motion to dismiss the Carmack claims pursuant to Rule 12(b)(6) is denied.

### b. **Sompo's Common Law Claims Are Preempted**

The parties agree that if the Carmack claims against Yang Ming proceed, they preempt plaintiffs' common law claims. This is squarely supported by the case law. See Project Hope, 250 F.3d at 73 n.6. Sompo admits that it pled the common law

claims simply in the alternative in case the Court dismissed its
Carmack claims, and agrees to dismiss the tort and bailment
claims should I not dismiss the Carmack claims. Accordingly, the
tort and bailment claims are dismissed.

## C. **Motion to Dismiss for Improper Venue**

Because Sompo's Carmack claims survive, I now address
whether the action is properly venued under Carmack's special
venue provision. I conclude it is not, and dismiss the complaint
in its entirety for improper venue.

### 1. **Applicable Law**

#### a. **Rule 12(b)(3) Standard**

On a motion to dismiss for improper venue under Rule
12(b)(3), the burden of proof lies with the plaintiff to show
that venue is proper. French Transit, Ltd. v. Modern Coupon Sys.
Inc., 858 F. Supp. 22, 25 (S.D.N.Y. 1994) (citing Pocahontas
Supreme Coal Co. v. Nat'l Mines Corp., 90 F.R.D. 67, 69 (S.D.N.Y.
1981)). Absent a formal hearing, a plaintiff need only make a
prima facie showing of venue to defeat the motion. Gulf Ins. Co.
v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). All facts must
be construed in a light most favorable to the plaintiff. Exovir,
Inc. v. Mandel, No. 94 Civ. 3546 (KMW), 1995 WL 413256, at *1
(S.D.N.Y. July 12, 1995) (citing Editorial Musical Latino
Americana, S.A. v. Mar Int'l Records, Inc., 829 F. Supp. 62, 64
(S.D.N.Y. 1993)). In ruling on the motion the court may rely on
facts and consider documents outside the complaint.

Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004).

## b. **Venue Statute**

Congress has established both "general venue" statutes, see 28 U.S.C. §§ 1391-92, and "special venue" statutes that expressly cover venue for a particular type of action, see 14D Charles Alan Wright et al., Federal Practice & Procedure §§ 3803-04 (3d ed. 2007). Generally, the purpose of venue statutes is to protect defendants against the risk that plaintiffs will select an unfair or inconvenient place for trial. Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979).

Special venue provisions control over general venue statutes. Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228-29 (1957); Image Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1054 (10th Cir. 2006). In most cases, special venue provisions are permissive, and may be supplemented by the more expansive provisions of the general venue statutes. See Pure Oil Co. v. Suarez, 384 U.S. 202, 207 (1966); Halliburton Energy Servs., Inc. v. NL Indus., Inc., No. 05 Civ. 4160, 2006 WL 3949170, at *7 (S.D. Tex. July 25, 2006) (noting that it is rare for Congress to restrict venue under special venue provisions to preclude application of the general venue statutes). Analysis of a special venue provision must be specific to that particular statute, because in some cases Congress intended to be restrictive. Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 204 (2000).

- 18 -

When a special venue statute is restrictive, and not permissive in nature, the action may only be brought in a district permitted by the restrictive special venue provision. See Pacer Global Logistics, Inc. v. Nat'l Passenger R.R. Corp., 272 F. Supp. 2d 784, 790 (E.D. Wis. 2003). Where a plaintiff asserts multiple claims, venue must be proper as to each of the claims asserted, but a common factual basis between a claim where venue is proper and one where venue is improper may generally defeat dismissal of a claim for improper venue. E.P.A. ex rel. McKeown v. Port Auth., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). This rule does not apply when the improperly venued claim is subject to a special venue provision. Rather, "where a special venue provision lays venue of a claim in certain specified districts, such provision controls venue for all claims arising out of the same nucleus of operative facts." See Pacer Global Logistics, 272 F. Supp. 2d at 790; see also PKWare, Inc. v. Meade, 79 F. Supp. 2d 1007, 1019 (E.D. Wis. 2000) (noting that courts have found the doctrine of pendent venue inconsistent with the requirements of the patent special venue statute).

"Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other. Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap." Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 710 n.8 (1972); see also Cortez Byrd Chips, 529 U.S. at 203.

Venue limits are designed for the convenience of the parties. Therefore, they may be waived. Olberding v. Ill. Cent. R.R. Co., 346 U.S. 338, 340 (1953). Parties may waive objections to restrictive special venue provisions, just as they can to general venue provisions. Radzanower v. Touche Ross & Co., 426 U.S. 148, 151 n.3 (1976); Interstate Commerce Comm'n v. Atl. Coast Line R. Co., 383 U.S. 576, 577, 579, 597 n.8 (1966) (waiver applied to Interstate Commerce Act's venue provisions).

### c.  Carmack's Special Venue Provision

Carmack contains a special venue provision. Prior to 1980, plaintiffs were able to bring their Carmack claims against rail carriers in any judicial district where the carrier operated. See Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd., 462 F. Supp. 2d 1098, 1103 (C.D. Cal. 2006). Congress narrowed Carmack in 1980 to prevent venue that was "virtually uncontrollable and frequently inconvenient" for defendants. H.R. Rep. No. 96-1430, at 102 (1980), reprinted in 1980 U.S.C.C.A.N. 4110. As a result, Carmack's special venue provision is restrictive and not permissive in nature. See, e.g., Halliburton Energy Servs., 2006 WL 3949170, at *7 (Congress intended to restrict venue under Carmack); Pacer Global Logistics, 272 F. Supp. 2d at 788 (Carmack's special venue provision "limits venue to certain specified districts"). The current provision is the exclusive venue provision for actions arising under Carmack. See Basic, Inc. v. Norfolk S. R.R., 684 F. Supp. 123, 124 (E.D. Pa. 1998).

The provision provides:

A civil action under this section may <u>only</u> be brought--

> (i) against the originating rail carrier, in the judicial district in which the point of origin is located;

> (ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located; and

> (iii) against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.

49 U.S.C. § 11706(d)(2)(A) (emphasis added).[6]

## 2. **Application**

Sompo has failed to establish a prima facie case that venue is proper in this district under any of the three sections of 49 U.S.C. § 11706(d)(2)(A).

First, venue is improper under 49 U.S.C. § 11706(d)(A)(2)(i). As previously discussed, it is plausible that Yang Ming is the originating rail carrier under Carmack. Under this analysis, venue would be proper in the judicial district in which the point of origin -- presumably Long Beach, California, where the rail transportation commenced -- and not the Southern District of New York.[7]

---

[6] Prior to 1996, 49 U.S.C. § 11706 was codified as 49 U.S.C. § 11707.

[7] There appears to be a gap in the venue provision. As discussed above, Carmack permits claims against rail carriers who

- 21 -

Second, venue is improper under 49 U.S.C. §
11706(d)(2)(A)(ii). Sompo pleads that Yang Ming is the
delivering rail carrier for purposes of venue. Even if I had
found that Yang Ming was the delivering rail carrier -- which I
did not -- venue would be improper because this is not the
judicial district in which the point of destination is located,
and it is not alleged that Yang Ming owns or operates a railroad
or a route in this district. This was the basis of jurisdiction
over NSRC in the related action.

Finally, venue is improper under 49 U.S.C. §
11706(d)(2)(A)(iii) because Yang Ming is not alleged to have
itself caused the loss or damage to the cargo. Nor, in any
event, is the Southern District of New York the district in which
the "loss or damage is alleged to have occurred."

Sompo argues that dismissal is inappropriate because
the contracts between the shipping companies and Yang Ming
included a forum selection clause, and that Yang Ming waived this
forum selection clause in a letter to Sompo's counsel.
Therefore, Sompo argues, Yang Ming consented to venue in this
district, making venue proper. Sompo further argues that Yang
Ming's alleged waiver of the forum selection clause requires the
Court to apply the general venue statute, and not Carmack's
special venue provision.

---

are not the delivering rail carrier, receiving rail carrier, or
the rail carrier who caused the loss. As a result, Carmack
permits liability against shipping companies like Yang Ming, yet
fails to guarantee plaintiffs a proper venue for pursuing claims
against them unless they are also construed to be the receiving
or originating rail carrier, as they are in this case.

In support of these arguments, Sompo submits the letter
sent by Yang Ming's counsel to Sompo's counsel, which states:
"In the event, that the plaintiffs formally pursue claims against
Yang Ming related to this matter, Yang Ming will agree to waive
the forum selection clause in the Yang Ming bill of lading and to
submit to the jurisdiction of the United States District Courts."
(Barton Decl. Ex. 4).

Sompo's arguments lack merit in several respects.
First, the case law makes clear that forum selection clauses that
result in improper venue under Carmack's special venue provision
are invalid. While the Second Circuit has not specifically
addressed this issue, Sompo concedes that all existing case law
rejects the viability of the forum selection clause. See, e.g.,
Regal-Beloit Corp., 462 F. Supp. 2d at 1098, 1103 (where Carmack
applies, forum selection clauses are rendered unenforceable);
Kyodo, 2001 WL 1835158, at *3 ("Once it is determined that the
Carmack Amendment governs the carrier's liability, it also
governs the enforceability of any forum selection clause
contained in the through bill of lading. . . . Thus, the Carmack
Amendment essentially prohibits enforcement of forum selection
clauses.").

Second, the letter on which Sompo relies does not
indicate that Yang Ming waived its venue objections. Rather, the
letter simply reflects that Yang Ming agrees to waive the forum
selection clause and submit to the jurisdiction of "the district
courts," as opposed to the English courts, as was required by the
forum selection clause. As explained, Yang Ming's concession is

- 23 -

demanded under Carmack. While a party may consent to be sued in a district court that would otherwise be considered an improper venue, thus waiving its objection to venue, the letter makes no mention at all of agreeing to submit to the jurisdiction of a particular district court or waiving its right to object to venue in this Court.

Third, Sompo's argument that the general venue statute should apply is unfounded. Logic dictates that in the event of a waiver of a forum selection clause (not to be confused with a waiver of the right to object to venue), a court must revert back to the controlling special venue provision. Sompo provides no legal authority for the assertion that the general venue statute applies to actions brought under Carmack when there is a waiver of a forum selection clause.

Only plaintiffs' breach of contract claims under COGSA remain. Defendant does not argue that these claims are improperly venued. I cannot cure improper venue for the Carmack claims by exercising supplemental jurisdiction. Claims subject to restrictive special venue provisions are not subject to pendent jurisdiction through properly venued related claims subject to more expansive venue statutes. See Meserole St. Recycling, Inc. v. CSX Transp., Inc., No. 06 Civ. 4652 (CBA), 2007 WL 2891424, at *4 (E.D.N.Y. Sept. 28, 2007). Similarly, because both the Carmack and COGSA claims arise from the same nucleus of operative fact, they are part of a single action. Therefore, plaintiffs' COGSA claims must be brought in the same district court as the Carmack claims, and are dismissed along

with the Carmack claims. See Pacer Global, 272 F. Supp. 2d at 790 ("[W]here a special venue provision lays venue of a claim in certain specified districts, such provision controls venue for all claims arising out the same nucleus of operative facts." (emphasis added)).

Under 28 U.S.C. § 1406(a), a district court may, in the interest of justice, transfer a case to any district in which it could have originally been brought. Sompo has not, however, requested that I transfer the case, and so I decline to exercise my authority. Sompo should therefore refile its case, alleging that it is the receiving carrier under Carmack, in the appropriate district court.

On a final note, if it were within my discretion, I would decline to dismiss this case for improper venue. The purpose of venue statutes is to prevent litigation in an inconvenient forum. Here, the related case against NSRC proceeds in this district, and counsel for NSRC also represents Yang Ming. These cases, and another related action, have been put on parallel discovery tracks at the joint request of the parties. Dismissing this case will likely result in a waste of judicial resources. There is no apparent inconvenience to defendant. Regrettably, however, the case against Yang Ming will proceed on its own, unless Yang Ming waives its objection to venue here.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part. The complaint is

dismissed without prejudice to refiling in a proper district.
The Clerk of the Court shall enter judgment accordingly and close
the case. Each side shall bear its own fees and costs.

SO ORDERED.

Dated:  New York, New York
        September 24, 2008

                                    DENNY CHIN
                                    United States District Judge